# Tonnage By Plant



More variation in Plant 3 because of Carbon Changes, and Longer to fix equipment (Shakeout, Crane, etc). Sand Mixer rebuild over Christmas took longer than planned.
Improve consistency in Plant 3
Plant 2 is very consistent.
Worked on plant 1 in January

SPEY0004009

# Total Company Manpower



**Headcount May 14-Oct-14**

Roster is updated to active union (for Benefit purposes). Have 23 on "Leave" (Union Paid Short or Long Term Disability). 8 FMLA/WC.
Included Carol, Elin in Salaried HC. Currently 4 Contract.

# HR Summary

- Still have issues with Payroll.  Better but not clean
- **Union Issues**
- Resolved Grievance
- Union Contract  expires 3/15/15.
  - Union met with employees Saturday.
  - Reviewing our proposal to the Union
    - Pension Contributions
    - Saturday and Sunday Pay.
    - Medical.

SPEY0004011

## Purchasing Summary

| Vendor # | Vendor | | Amount | # | Notes |
|---|---|---|---|---|---|
| 22360 | PYRO MINERALS | $ | 184,521.41 | 2 | Sand/Supplies |
| 24349 | ECKMAN INDUSTRIES INC. | $ | 183,528.96 | 3 | Negotiated a 8% decrease and reduction of set-ups. Overall spend will be higher |
| 1910 | AMG RESOURCES CORPORATION | $ | 181,846.40 | 4 | Scrap and Alloys |
| 14391 | HICKMAN WILLIAMS & CO | $ | 169,239.53 | 5 | Scrap and Alloys |
| 24225 | S.L. FUSCO INC. | $ | 105,163.11 | 6 | Scrap and Alloys |
| 27776 | UNIVERSAL SERVICE RECYCLING LLC | $ | 79,457.75 | 7 | Scrap and Alloys |
| 27771 | UNIVERSAL REFRACTORIES INC | $ | 79,113.33 | 8 | Scrap and Alloys |
| 20003 | NINGBO LIONWAY INTL TRADING CO.LTD | $ | 72,091.22 | 9 | |
| 22092 | PROFESSIONAL FINISHING | $ | 69,638.60 | 10 | Have Passed a price increase to us |
| 18700 | MILLER & COMPANY | $ | 59,164.29 | 11 | |
| 8658 | CRANE TECH INC. | $ | 55,247.12 | 12 | Reduced Spend to ~ 15000 by reducing hours. Have cut them off and moved to an alternate source |
| 23895 | SANDERSON SAFETY SUPPLY COMPANY | $ | 54,539.25 | 13 | Working on VMI to reduce internal costs. Costs/SKU will go up because of 3M. |
| 20006 | NINGBO WORLD-LINK INTERNATIONAL | $ | 47,723.89 | 14 | Eliminate |
| 20001 | NINGBO DAMING PRECISION CASTING CO. | $ | 46,755.02 | 15 | Eliminate |
| 19182 | MONTEREY MECHANICAL | $ | 38,792.41 | 16 | Reduced spend by better PO control |
| 22390 | Q.C SERVICES | $ | 35,351.85 | 17 | |
| 7817 | CLEARFLOW VALVES COMPANY | $ | 31,522.82 | 18 | |
| 24874 | FESIL SALES SA | $ | 31,215.29 | 19 | |
| 7660 | CHINA PACIFICARBIDE INC | $ | 27,041.36 | 20 | |
| 10072 | THOMPSON CREEK METALS COMPANY | $ | 26,237.56 | 21 | |
| 340 | ACM MACHINING INC | $ | 25,351.10 | 22 | |
| 758 | AIR & TOOL ENGINEERING CO. | $ | 24,178.82 | 23 | |
| 24362 | SICHUAN Y&J INDUSTRIES CO. LTD | $ | 20,109.53 | 24 | |
| 4150 | BEARING ENGINEERING COMPANY | $ | 19,888.71 | 25 | |
| 8757 | CASS INC | $ | 18,738.44 | 26 | |
| 19843 | AIRGAS USA LLC | $ | 17,845.10 | 27 | |
| 25500 | STEWART TOOL CO. INC. | $ | 17,302.42 | 28 | |
| | TERMINAL MANUFACTURING CO LLC | $ | 16,988.42 | 29 | |

Price Concessions from Eckman, Bordanaro (Charpy, Test Bars).

Significantly reduced Crane Tech.

Reduced Number of Forklifts on Lease and did lease with new vendor.

Sand disposal project is making some progress.

Waste Disposal reduction.

China suppliers will be reduced.

Cost increases 3M (expected), Paint, Foseco, Pyro.

SPEY0004012

# Sand Reclamation

**Sand tonage out of Plant 2 Silo "C" (thermally reclaimed sand)**
**that we have saved, reclaimed and reused in plants 1 and 3**

*Prices provided by Terry Caughwell from Pyro Minerals

*Price includes sand, freight, shipping and handling charges per ton.

Price per ton of new Nevada 55 sand $156.60*/ton

Price per ton of new Nevada 60 sand $139.70*/ton

This table represents the amount of thermally reclaimed sand we have transferred from silo "C" in

plant 2 to the new sand silos in plants 1 and 3.

| Date | Plant 1 $139.70*/ton | Plant 3 $156.60*/ton | Total tonnage () = Trips | Potential Savings | Total |
|------|------|------|------|------|------|
| 12/23/2014 | 8 tons (2) | 16 tons (4) | 24 tons (6) | $1,117.60 + $2,505.60 | $3,623.20 |
| 12/30/2014 | 8 tons (2) | | 8 tons (2) | $1,117.60 | $1,117.60 |
| 1/6/2015 | 8 tons (2) | 12 tons (3) | 20 tons (5) | $1,117.60 + $1,879.20 | $2,996.80 |
| 1/8/2015 | 8 tons (2) | | 8 tons (2) | $1,117.60 | $1,117.60 |
| 1/9/2015 | | 8 tons (2) | 8 tons (2) | $1,252.80 | $1,252.80 |
| 1/14/2015 | 12 tons (3) | 8 tons (2) | 20 tons (5) | $1,676.40 + $1,252.80 | $2,929.20 |
| 1/15/2015 | | 8 tons (2) | 8 tons (2) | $1,252.80 | $1,252.80 |
| 1/16/2015 | 8 tons (2) | | 8 tons (2) | $1,117.60 | $1,117.60 |
| 1/19/2015 | 8 tons (2) | 8 tons (2) | 16 tons (4) | $1,117.60 + $1,252.80 | $2,370.40 |
| | | | | | $17,778.00 |
| | | | | | |
| | | | | | |
| | | | | | |

In 1 months time we have saved $17,778.00 by reclaiming our sand and treating it as new sand for

plants 1 and 3 instead of purchasing it from Pyro minerals.

SPEY0004013

# Sales Summary

- The Backlog has declined to around 19 Million today while consistently being at 30 Million 1st 3 Months.
- Have seen impact with Oil Prices on Orders. Are Getting a lower replenishment rate for orders.
- Developing a game plan to increase orders at different customers.
- McKissick is pursuing an Auction Strategy

SPEY0004014



SALES- Jan 2015

- NOVMEX
- VARCOOR
- MCKISSICK
- FAIRFLD
- KENMEX
- PTRBLT
- KENWRTH
- VARCONE
- NORRISEAL
- OTHER

SPEY0004015



Have had a lot of cancellations in January as our customers are reacting to cancellations.
Fully expect pricing pressures shortly

SPEY0004016

# NOV Orange and Mexicali





Orange has had a drop off from November (Some Dual Sourcing) but a more significant drop off in January reacting to their customers.
Mexicali has been strong thru January but they sent a note talking about cut-backs.
Assuming 200 Tons a month combined for forecast

# Paccar Order History

| Part Number | 09.02.2014 | 12.19.2014 | Change in For |
|---|---|---|---|
| 01-47609 | 5796 | 310 | -95% |
| 01-51749 | 1512 | 956 | -37% |
| 02-03124 | 480 | 290 | -40% |
| 03-02550 | 141 | 35 | -75% |
| 03-02555 | 111 | 3 | -97% |
| 03-04951M024 | 632 | 512 | -19% |
| 03-05467 | 126 | 42 | -67% |
| 03-06024 | 142 | 56 | -61% |
| 03-06233M001 | 588 | 436 | -26% |
| 03-08383 | 193 | 153 | -21% |
| 15-05004 | 135 | 86 | -36% |
| C07-1011 | 781 | 490 | -37% |
| C07-1013R | 809 | 530 | -34% |
| C11-1021 | 449 | 32 | -93% |
| C11-1022 | 329 | 132 | -60% |
| C11-1035 | 475 | 179 | -62% |
| C11-1036 | 475 | 179 | -62% |
| C11-6020M02 | 468 | 324 | -31% |
| C78-6004 | 388 | 188 | -52% |
| C78-6005R | 391 | 188 | -52% |
| C78-6008 | 780 | 176 | -77% |
| C78-6008R | 780 | 251 | -68% |
| C78-6009 | 430 | 176 | -59% |
| C78-6009R | 430 | 176 | -59% |
| K208-1497 | 2234 | 1258 | -44% |
| K208-1497R | 2234 | 1138 | -49% |
| K208-1498R | 1825 | 1330 | -27% |

Paccar has a second source added on about 20-25 part numbers that have come aboard.
Affecting shipments to US Locations (Ohio, Denton TX).
Have pushed back on a couple of parts. Trying to finalize a deal to maintain a 300 ton/month ship rate. Meeting in March.

SPEY0004018

# Paccar Ship History

Overall Paccar Shipments. Dropped about 75 Tons Sep-Dec (January was 220)



Most Drop off is in US locations Denton, Chillicothe



Case: 19-04057   Doc# 86-8   Filed: 10/02/20   Entered: 10/02/20 14:29:05   Page 11 of 99

621

SPEY0004019

## Projected Sales rest of 2015

150 Tons Orange/Mex. 50 Tons Other NOV, 100 Tons other Oil (McKissic, Fairfield).
Paccar, Gilling and other Non Oil 300 Tons (Should be OK, but need to press Paccar

| | Backlog Tons | Past Due complete | Additional Oil PO's expected | Non Oil (Paccar, Gillig, others) | Total Projected | $ Value Add |
|---|---|---|---|---|---|---|
| | | | 150 tons Orange, Mex, 50 tons other NOV, 100 others | Non Paccar, Non oil averages 100 tons/month | | |
| Past Due | 355 | | | | | |
| February Open | 700 | 150 | 0 | 50 | 900 | $ 9,000,000.00 |
| March | 450 | 150 | 50 | 250 | 900 | $ 9,000,000.00 |
| April | 272 | | 125 | 250 | 647 | $ 6,250,000.00 |
| May | 190 | | 175 | 275 | 640 | $ 6,250,000.00 |
| June | 50 | | 250 | 350 | 650 | $ 6,250,000.00 |
| July | | | 300 | 350 | 650 | $ 6,250,000.00 |
| August | | | 300 | 350 | 650 | $ 6,250,000.00 |
| September | | | 300 | 350 | 650 | $ 6,250,000.00 |
| October | | | 300 | 350 | 650 | $ 6,250,000.00 |
| November | | | 300 | 350 | 650 | $ 6,250,000.00 |
| December | | | 300 | 350 | 650 | $ 6,250,000.00 |

SPEY0004020

# Quality Metrics

- On-Time delivery
- Scrap rate
- First Pass Yield and Weld time / Part
- Quality PPM, Returns
- Continuous improvement



**On Time Delivery (Trucking and Non- Trucking)**

| | Jan-14 | Feb-14 | Mar-14 | Apr-14 | May-14 | Jun-14 | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Trucking | 72% | 75% | 80% | 73% | 78% | 70% | 72% | 78% | 77% | 78% | 79% | 72% | 76% |
| Non Trucking | 44% | 52% | 54% | 60% | 54% | 40% | 43% | 39% | 32% | 44% | 58% | 61% | 50% |
| Total | 66% | 68% | 72% | 68% | 69% | 63% | 63% | 65% | 67% | 69% | 74% | 69% | 68% |

Case: 19-04057   Doc# 86-8   Filed: 10/02/20   Entered: 10/02/20 14:29:05   Page **624** of 99

SPEY0004022



### Overall Average Scrap %
### Rolling 12 Months

| | Jan-14 | Feb-14 | Mar-14 | Apr-14 | May-14 | Jun-14 | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AVERAGE | 3.5% | 4.0% | 4.5% | 2.9% | 2.3% | 5.2% | 6.9% | 4.8% | 3.3% | 5.1% | 4.4% | 4.4% | 5.7% |
| Goal | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% |



## Plant 1 Scrap %
## Rolling 12 Months

| | Jan-14 | Feb-14 | Mar-14 | Apr-14 | May-14 | Jun-14 | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PLANT 1 | 4.6% | 4.4% | 8.5% | 4.8% | 3.1% | 9.6% | 13.2% | 9.2% | 6.1% | 5.5% | 4.0% | 2.7% | 5.9% |
| Goal | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% |

SPEY0004024



**Plant 2 Scrap %**
**Rolling 12 Months**

| | Jan-14 | Feb-14 | Mar-14 | Apr-14 | May-14 | Jun-14 | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PLANT 2 | 4.6% | 4.4% | 3.4% | 3.8% | 1.9% | 4.1% | 3.6% | 3.9% | 3.3% | 3.9% | 4.6% | 4.7% | 6.8% |
| Goal | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% |



## Plant 3 Scrap %
### Rolling 12 Months

|  | Jan-14 | Feb-14 | Mar-14 | Apr-14 | May-14 | Jun-14 | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PLANT 3 | 2.2% | 3.6% | 2.9% | 1.4% | 2.1% | 3.7% | 5.9% | 3.5% | 2.0% | 5.6% | 4.6% | 5.1% | 4.7% |
| Goal | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% | 2.5% |



SPEY0004027



SPEY0004028





Plant 3 - Weld Min/Part



## Quality Objective
## Quality Rating , 3500 PPM Or less defective
## Rolling 12 months

AUG 2014:
ACCUMULATED
CASTINGS FROM

PACCAR CANADA
01-47609, 234 PCS
FOR BENDING

|  | Jan-14 | Feb-14 | Mar-14 | Apr-14 | May-14 | Jun-14 | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PPM | 3231 | 7117 | 2488 | 1783 | 2253 | 2158 | 1631 | 6776 | 485 | 1518 | 572 | 232 | 5705 |
| PPM Goal | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 |

SPEY0004031

# Product improvement activity

- .200931-C
  - Improved product design for better castability and eliminated additional machining.





SPEY0004033

Capital investment projects

SPEY0004034

## 1. Plant 1 Heat Treat Ovens – Repairs

| 1 | 1 | PLANT 1 | Structural repairs on plant 1 ovens to become useable just like plant 3 ovens. | Heat treat capacity and the 2 ovens at plant one are not functional. Reduce Transportation of Parts | Besides added capacity A-line castings requiring normalize and temper could stay at plant 1. Also P1 castings requiring weld could stay at plant 1 for stress. (Note: New oven costs $372K) | 100K + (80K refractory) |
|---|---|---|---|---|---|---|

- Release by EOM.

SPEY0004035

## 2. Plant 3: Continuous sand mixer for Core room:

| 2 | 63 | PLANT 3 | Continuous mixer for P3 core room. | Quality, Capacity, efficiency | Improve capacity through additional core station dedicated to 60:40 Chromite Sand Mix. Quality improvement by eliminating contamination from Silicon sand. Possibility to replace Zircon sand in more cores. Back up for Kloster on the mold line. | 100K |
|---|---|---|---|---|---|---|

- Evaluating different options with vendors. Have put on hold because of Economic Conditions, but need to complete before we pick back up

SPEY0004036

### 3. Plant 3: Additional Air Compressor

| 3 | 62 | PLANT 3 | New air compressor | Capacity, reduce downtime, Back-up. Also possibility of cold air supply for welders. | Downtime, Capacity. Also, Cost benefit through elimination of battery pack maintenance of welding air supply. Cold air supply also improves working conditions for welding operation | 75K |
|---|----|---------|--------------------|--------------------------------------------------------------------------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-----|

- Complete.

SPEY0004037

## 4. Plant 2: Ventilation Hoods for Core Room, S-19, S-26

| 4 | 56 | PLANT 2 | Ventilation hoods for core room, S-19 and S-26 | Improve working condition. Environmental concerns due to Odor during day hours. | Handle this in the environmental project. A movement forward in our effort to be environmentally safe and show our employees that we care about their work environment. | WIP |
|---|----|---------|------------------------------------------------|---------------------------------------------------------------------------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-----|

Have reviewed with the Engineering Firm. It is feasible, but the issue appears to be that the carbon unit may not have the capacity to handle the additional volume. Still reviewing options

## 5. Plant 3: Pouring Room Expansion (Bottleneck)

| | | | | | | |
|---|---|---|---|---|---|---|
| 5 | 64 | PLANT 3 | Pouring Floor Expansion | Bottle neck. Castings poured are required to be held in Mold for certain period of time. To increase production in P3, more space needs to be opened up for storage of cooling molds. | P3 Revenue = +10%. | 150K |

- Permits will be required. Have reviewed proposal with BAAMD.  Finalize Proposal in January/February

SPEY0004039

6. Plant 3: Increase throughput on Floor

- Additonal 72x72 and 84x84 flasks ordered.  84 Flasks in. Reduces bottleneck on specific mold sizes
- Creating 72x72 upsets (Run these molds Flaskless).  Fabricated.  In process of trying.
- Higher capacity mold dryer installed on floor molding
    - Lower dry time
    - Reduce surface defects.



SPEY0004040



PRO-FORMA AND PLAN REVIEW

Case: 19-04057    Doc# 86-8    Filed: 10/02/20    Entered: 10/02/20 14:29:05    Page 33 of 99

SPEY0004041

## Projected Sales rest of 2015

150 Tons Orange/Mex. 50 Tons Other NOV, 100 Tons other Oil (McKissic, Fairfield).
Paccar, Gilling and other Non Oil 300 Tons (Should be OK, but need to press Paccar

| | Backlog Tons | Past Due complete | Additional Oil PO's expected | Non Oil (Paccar, Gillig, others) | Total Projected | $ Value Add |
|---|---|---|---|---|---|---|
| | | | 150 tons Orange, Mex, 50 tons other NOV, 100 others | Non Paccar, Non oil averages 100 tons/month | | |
| Past Due | 355 | | | | | |
| February Open | 700 | 150 | 0 | 50 | 900 | $ 9,000,000.00 |
| March | 450 | 150 | 50 | 250 | 900 | $ 9,000,000.00 |
| April | 272 | | 125 | 250 | 647 | $ 6,250,000.00 |
| May | 190 | | 175 | 275 | 640 | $ 6,250,000.00 |
| June | 50 | | 250 | 350 | 650 | $ 6,250,000.00 |
| July | | | 300 | 350 | 650 | $ 6,250,000.00 |
| August | | | 300 | 350 | 650 | $ 6,250,000.00 |
| September | | | 300 | 350 | 650 | $ 6,250,000.00 |
| October | | | 300 | 350 | 650 | $ 6,250,000.00 |
| November | | | 300 | 350 | 650 | $ 6,250,000.00 |
| December | | | 300 | 350 | 650 | $ 6,250,000.00 |

# Pro-Forma Revenue and Hr assumptions

| Month | Hrs | Tons Shipped | Tons Poured | Hrs/Ton Shipped | Hrs/Ton Poured | Revenue | Revenue/Ton |
|---|---|---|---|---|---|---|---|
| September | 75550 | 1001 | 970 | 75 | 77.9 | $ 9,517,738.00 | $ 9,508.23 |
| October | 84481 | 1063 | 1056 | 79 | 80.0 | $ 10,168,823.00 | $ 9,566.16 |
| November | 70804 | 863 | 883 | 82 | 80.2 | $ 8,168,172.00 | $ 9,464.86 |
| December | 73086 | 730 | 810 | 100 | 90.2 | $ 7,055,017.00 | $ 9,664.41 |
| January | 79984 | 843 | 970 | 95 | 82.5 | $ 8,395,200.00 | $ 9,958.72 |
| February | 74100 | 900 | 915 | 82 | 81.0 | $ 8,550,000.00 | $ 9,500.00 |
| March | 70400 | 900 | 775 | 78 | 90.8 | $ 8,550,000.00 | $ 9,500.00 |
| April | 55250 | 650 | 650 | 85 | 85 | $ 6,175,000.00 | $ 9,500.00 |
| May | 55250 | 650 | 650 | 85 | 85 | $ 6,175,000.00 | $ 9,500.00 |
| June | 55250 | 650 | 650 | 85 | 85 | $ 6,175,000.00 | $ 9,500.00 |
| July | 55250 | 650 | 650 | 85 | 85 | $ 6,175,000.00 | $ 9,500.00 |

Assuming 650 Tons per month sales.  As Paccar is a bigger component of sales Revenue will be lower.

Run Molding hard and start reductions in 4 Weeks.

Post Pour to follow in 2-3 weeks.  Past Due is still pretty high.

Hours are calculated.  Can get there with current Labor and 4 days/week (currently 6 days/wk) This will still protect us if there is a quick upturn.

However to maintain efficiencies would likely have a reduction of ~50 (60K savings in Pension)

Case: 19-04057    Doc# 86-8    Filed: 10/02/20    Entered: 10/02/20 14:29:05    Page 35 of 99

SPEY0004043

# Pro-Forma Revenue and Hr assumptions

| Month | Hrs | Tons Shipped | Tons Poured | Hrs/Ton Shipped | Hrs/Ton Poured | Revenue | Revenue/Ton |
|-------|-----|--------------|-------------|-----------------|----------------|---------|-------------|
| September | 75550 | 1001 | 970 | 75 | 77.9 | $ 9,517,738.00 | $ 9,508.23 |
| October | 84481 | 1063 | 1056 | 79 | 80.0 | $ 10,168,823.00 | $ 9,566.16 |
| November | 70804 | 863 | 883 | 82 | 80.2 | $ 8,168,172.00 | $ 9,464.86 |
| December | 73086 | 730 | 810 | 100 | 90.2 | $ 7,055,017.00 | $ 9,664.41 |
| January | 79984 | 843 | 970 | 95 | 82.5 | $ 8,395,200.00 | $ 9,958.72 |
| February | 74100 | 900 | 915 | 82 | 81.0 | $ 8,550,000.00 | $ 9,500.00 |
| March | 70400 | 900 | 775 | 78 | 90.8 | $ 8,550,000.00 | $ 9,500.00 |
| April | 55250 | 650 | 650 | 85 | 85 | $ 6,175,000.00 | $ 9,500.00 |
| May | 55250 | 650 | 650 | 85 | 85 | $ 6,175,000.00 | $ 9,500.00 |
| June | 55250 | 650 | 650 | 85 | 85 | $ 6,175,000.00 | $ 9,500.00 |
| July | 55250 | 650 | 650 | 85 | 85 | $ 6,175,000.00 | $ 9,500.00 |

Assuming 650 Tons per month sales. As Paccar is a bigger component of sales Revenue will be lower.

Run Molding hard and start reductions in 4 Weeks.

Post Pour to follow in 2-3 weeks. Past Due is still pretty high.

Hours are calculated. Can get there with current Labor and 4 days/week (currently 6 days/wk) This will still protect us if there is a quick upturn.

However to maintain efficiencies would likely have a reduction of ~50 (60K savings in Pension)

SPEY0004044

# Labor Pro-Forma

| Month | Hrs | Revenue/Ton | $ DL Cost | Ind Labor | WC | Benefit Costs | Total Labor |
|---|---|---|---|---|---|---|---|
| September | 75550 | $ 9,508.23 | $ 1,842,417 | $ 30,759 | $ 251,724 | $ 911,501 | $ 3,036,401 |
| October | 84481 | $ 9,566.16 | $ 1,825,710 | $ 32,221 | $ 251,724 | $ 765,846 | $ 2,875,501 |
| November | 70804 | $ 9,464.86 | $ 1,850,895 | $ 30,944 | $ 251,724 | $ 812,010 | $ 2,945,573 |
| December | 73086 | $ 9,664.41 | $ 1,790,400 | $ 31,000 | $ 300,000 | $ 1,150,000 | $ 3,271,400 |
| January | 79984 | $ 9,958.72 | $ 1,737,098 | $ 31,000 | $ 300,000 | $ 909,839 | $ 2,977,937 |
| February | 74100 | $ 9,500.00 | $ 1,609,945 | $ 31,001 | $ 300,001 | $ 909,839 | $ 2,850,786 |
| March | 70400 | $ 9,500.00 | $ 1,529,988 | $ 31,001 | $ 300,001 | $ 909,839 | $ 2,770,829 |
| April | 55250 | $ 9,500.00 | $ 1,202,597 | $ 31,002 | $ 300,002 | $ 811,263 | $ 2,344,864 |
| May | 55250 | $ 9,500.00 | $ 1,202,597 | $ 31,002 | $ 300,002 | $ 811,263 | $ 2,344,864 |
| June | 55250 | $ 9,500.00 | $ 1,202,597 | $ 31,003 | $ 300,003 | $ 811,263 | $ 2,344,866 |
| July | 55250 | $ 9,500.00 | $ 1,202,597 | $ 31,003 | $ 300,003 | $ 811,263 | $ 2,344,866 |

100K Benefit improvement and 600K from Hours.

SPEY0004045

# Material and other expenses

| Month | Tons Shipped | Tons Poured | Material Cost (25% of Sales) | R&M | Power | Other | Total OP Exp | Operating Margin | SG&A | Other Income Loss | Profit before Taxes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| September | 1001 | 970 | $ 2,798,505.00 | $ 454,692.00 | $ 356,948.00 | $ 474,355.00 | $ 7,120,901 | $ 2,396,837 | $ 600,000 | $ 150,000 | $ 1,646,837 |
| October | 1063 | 1056 | $ 2,354,541.00 | $ 399,628.00 | $ 749,873.00 | $ 574,309.00 | $ 6,947,852 | $ 3,220,971 | $ 600,000 | $ 150,000 | $ 2,470,971 |
| November | 863 | 883 | $ 1,773,955.00 | $ 626,553.00 | $ 344,413.00 | $ 345,614.00 | $ 6,036,108 | $ 2,132,064 | $ 600,000 | $ 150,000 | $ 1,382,064 |
| December | 730 | 810 | $ 1,809,000 | $ 469,000.00 | $ 621,000.00 | $ 450,000.00 | $ 6,620,400 | $ 434,617 | $ 600,000 | $ 150,000 | $ (315,383) |
| January | 843 | 970 | $ 2,098,800 | $ 485,968 | $ 518,059 | $ 461,070 | $ 6,541,834 | $ 1,853,366 | $ 600,000 | $ 150,000 | $ 1,103,366 |
| February | 900 | 915 | $ 2,137,500 | $ 485,968 | $ 518,059 | $ 461,070 | $ 6,453,383 | $ 2,096,618 | $ 600,000 | $ 150,000 | $ 1,346,618 |
| March | 900 | 775 | $ 2,137,500 | $ 437,371.43 | $ 414,446.80 | $ 414,962.55 | $ 6,175,110 | $ 2,374,890 | $ 600,000 | $ 150,000 | $ 1,624,890 |
| April | 650 | 650 | $ 1,543,750 | $ 437,371 | $ 414,447 | $ 414,963 | $ 5,155,395 | $ 1,019,605 | $ 600,000 | $ 150,000 | $ 269,605 |
| May | 650 | 650 | $ 1,543,750 | $ 437,371 | $ 414,447 | $ 414,963 | $ 5,155,395 | $ 1,019,605 | $ 600,000 | $ 150,000 | $ 269,605 |
| June | 650 | 650 | $ 1,543,750 | $ 437,371 | $ 414,447 | $ 414,963 | $ 5,155,397 | $ 1,019,603 | $ 600,000 | $ 150,000 | $ 269,603 |
| July | 650 | 650 | $ 1,543,750 | $ 437,371 | $ 414,447 | $ 414,963 | $ 5,155,397 | $ 1,019,603 | $ 600,000 | $ 150,000 | $ 269,603 |

Material follows as a % of Tons Poured.
Power is assumed at 90% (losing efficiency at lower production).
Others are averaged and assumed same.
Union Contract will affect this

SPEY0004046

# EXHIBIT "30"

**From**: Krishnan Venkatesan [kvenkatesan@pacificsteel.com]
**Sent**: 1/22/2015 7:40:18 PM
**To**: Jeff Stone [jeffrey.stone@speysideequity.com]; Eric Wiklendt [eric.wiklendt@speysideequity.com]
**Subject**: FW: 2015 Orange Market Outlook
**Attachments**: 2015 Orange Market Outlook.docx

Jeff

Ok.  Official word from NOV orange.  This is in keeping with their order pattern for the last few weeks.  We have seen dropped orders on Mckissic and Norrisseal for some parts and Nov Holland also appears to be slowing down (they were air shipping parts in December and don't seem to be concerned that the port situation has meant no pickups in January). The backlog for  Mexicali remains strong with daily conf. calls on increasing production but not sure how long that will last.

So, need an aggressive plan to go after Non-Oil customers if this lasts for several quarters.  Let's review sometime.

**From:** Sanchez, Phillip A [mailto:Phillip.Sanchez@nov.com]
**Sent:** Thursday, January 22, 2015 3:10 PM
**Cc:** Ozog, Janusz; Anderson, Hope M
**Subject:** 2015 Orange Market Outlook

**All,**

Please view the attached memo from Hope Anderson, our director of materials at NOV Orange in regards to the oil market news and its impact. If you have any questions, please let either Hope, Janusz or myself know.

Thanks,

*Philip Sanchez*
Associate Buyer

National Oilwell Varco - Rig Solutions
743 N. Eckhoff St
Orange, CA 92868
P: 714-704-0888

SPEY0006223



Rig Systems and Aftermarket
743 N. Eckhoff Street
Orange, CA 92868 USA
Phone: 714 978 1900

[ FILLIN \* MERGEFORMAT ]

Dear Valued NOV Orange Supplier:

As crude oil prices have fallen to below $50 a barrel, the energy producers' reactions have been to decrease production and postpone new drilling projects. Where NOV Orange has taken an aggressive posture to meet past years' increasing demand trends, we are now scaling back our drilling equipment production plan to align with our customers' requests to defer deliveries. The forecast information you will see going forward will be a direct reflection of the changes we have made to our plan in just the past two weeks.

NOV Orange will experience a decline in the workload through our manufacturing cells and must actively review opportunities to backsource work that was previously offloaded to our external and internal suppliers. Therefore, in addition to the reduction in load that translates linearly to our supply base, some of our suppliers may experience a further decline due to Orange's backsourcing efforts.

Our strategy is to ensure that we maintain a flexible and responsive supply chain. We may consolidate work into our top performers to preserve supply chain connectivity. Your performance plays a significant role in that strategy.

For those of you that are on purchasing programs reliant on forecast information (such as the Pull System program), we will adhere to our agreements based on product lead-time and forecast data. Many of you that have been with us side by side through oil market downturns know that we have worked well with you in the past to take what you have produced per the agreement and you, in turn, have often compromised and held inventory for some period of time.

During this period of market volatility, we will use this opportunity to take a quick breath and refocus our energies on design for manufacturability to help reduce costs, process enhancements and automation, lead-time reduction programs, and taking our overall supply chain performance to a higher level. We will look to our high performing, strategic suppliers to participate in these efforts.

Regards,

Hope Anderson
Director of Materials
National Oilwell Varco
Orange, CA

651
SPEY0006224

# EXHIBIT "31"



PACIFIC STEEL CASTING COMPANY LLC    W0
GENERAL ACCOUNT
1333 2ND ST
BERKELEY CA 94710-1317

**Questions?**

Call your Customer Service Officer or Client Services
**1-800-AT WELLS** (1-800-289-3557)
5:00 AM TO 6:00 PM Pacific Time Monday - Friday

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (182)
PO Box 63020
San Francisco, CA 94163

---

## Account summary

### WellsOne® Account

| Account number | Beginning balance | Total credits | Total debits | Ending balance |
|---|---|---|---|---|
| 4391337029 | $446.00 | $7,060,346.28 | -$3,257,297.15 | $3,803,495.13 |

## Credits

### Deposits

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| 09/26 | 09/29 | 193.65 | Reversal of Check Posted 9-26-14 Refer to Maker Our Ref: 9-26-14 00000000 |
| 09/26 | 09/29 | 976.60 | Reversal of Check Posted 9-26-14 Refer to Maker Our Ref: 9-26-14 00000000 |
| 09/26 | 09/29 | 406.29 | Reversal of Check Posted 9-26-14 Refer to Maker Our Ref: 9-26-14 00000000 |
| 09/26 | 09/29 | 8,319.00 | Reversal of Check Posted 9-26-14 Refer to Maker Our Ref: 9-26-14 00000000 |
| 09/26 | 09/29 | 1,040.00 | Reversal of Check Posted 9-26-14 Refer to Maker Our Ref: 9-26-14 00000000 |
| 09/26 | 09/29 | 1,434.56 | Reversal of Check Posted 9-26-14 Refer to Maker Our Ref: 9-26-14 00000000 |
| 09/26 | 09/29 | 735.75 | Reversal of Check Posted 9-26-14 Refer to Maker Our Ref: 9-26-14 00000000 |
| 09/26 | 09/29 | 3,741.26 | Reversal of Check Posted 9-26-14 Refer to Maker Our Ref: 9-26-14 00000000 |
| | | **$16,847.11** | **Total deposits** |

### Electronic deposits/bank credits

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 09/05 | 650,000.00 | WT Seq107934 Siena Funding LLC /Org=Siena Funding LLC Srf# IN14090510351325 Trn#140905107934 Rfb# 000001068 |
| | 09/11 | 600,000.00 | WT Seq100291 Siena Funding LLC /Org=Siena Funding LLC Srf# IN14091110333499 Trn#140911100291 Rfb# 000001087 |
| | 09/16 | 800,000.00 | WT Seq105264 Siena Funding LLC /Org=Siena Funding LLC Srf# IN14091610251187 Trn#140916105264 Rfb# 000001102 |
| | 09/17 | 500,000.00 | WT Seq#99577 Siena Funding LLC /Org=Siena Funding LLC Srf# IN14091711111861 Trn#140917099577 Rfb# 000001105 |
| | 09/23 | 800,000.00 | WT Seq101124 Siena Funding LLC /Org=Siena Funding LLC Srf# IN14092311072974 Trn#140923101124 Rfb# 000001123 |

Case: 19-04057   Doc# 86-8   Filed: 10/02/20   Entered: 10/02/20 14:29:05   Page 53 of 99

TR_FTS-000137780
CONFIDENTIAL



### Electronic deposits/bank credits (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 09/25 | 2,345,463.41 | WT Seq119032 Siena Funding LLC /Org=Siena Funding LLC Srf# IN14092510100229 Trn#140925119032 Rfb# 000001134 |
| | 09/26 | 108,072.91 | WT Seq102460 Siena Funding LLC /Org=Siena Funding LLC Srf# IN14092610365395 Trn#140926102460 Rfb# 000001138 |
| | 09/29 | 1,197,077.25 | WT Seq126222 Siena Funding LLC /Org=Siena Funding LLC Srf# IN14092911440109 Trn#140929126222 Rfb# 000001150 |
| | 09/30 | 42,885.60 | WT Seq156410 Siena Funding LLC /Org=Siena Funding LLC Srf# IN14093010541278 Trn#140930156410 Rfb# 000001158 |
| | | **$7,043,499.17** | **Total electronic deposits/bank credits** |
| | | **$7,060,346.28** | **Total credits** |

## Debits

### Electronic debits/bank debits

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 09/05 | 50,000.00 | Withdrawal Made In A Branch/Store |
| | 09/11 | 390.43 | Client Analysis Srvc Chrg 140910 Svc Chge 0814 000004391337029 |
| | 09/11 | 267,504.32 | WT Seq145032 Pacific Steel Casting C /Bnf=Pacific Steel Casting CO Srf# IN14091110031767 Trn#140911145032 Rfb# 000000003 |
| | 09/11 | 20,000.00 | WT Seq145017 Pacific Steel Casting C /Bnf=Pacific Steel Casting CO Srf# IN14091110042342 Trn#140911145017 Rfb# 000000004 |
| | 09/12 | 280,935.48 | WT Fed#03102 PNC Bank, National /Ftr/Bnf=Speyside Equity Iwire Srf# IN14091109353532 Trn#140911145376 Rfb# 000000002 |
| | 09/12 | 62,460.55 | WT Fed#03094 Jpmorgan Chase Ban /Ftr/Bnf=Jeffrey A Stone OR Jodie Stone Srf# IN14091109341396 Trn#140911145369 Rfb# 000000001 |
| | 09/12 | 63,509.12 | WT Seq108390 Pacific Steel Casting C /Bnf=Pacific Steel Casting CO Srf# IN14091210274824 Trn#140912108390 Rfb# 000000005 |
| | 09/15 | 5,812.43 | WT Fed#07961 Deutsche Bank /Ftr/Bnf=Fprs Depository Account Srf# IN14091513165529 Trn#140915148410 Rfb# 000000006 |
| | 09/17 | 319,971.45 | WT Seq#53289 Pacific Steel Casting C /Bnf=Pacific Steel Casting CO Srf# IN14091708233338 Trn#140917053289 Rfb# 000000007 |
| | 09/17 | 22,546.59 | WT Seq#53284 Pacific Steel Casting C /Bnf=Pacific Steel Casting CO Srf# IN14091708242436 Trn#140917053284 Rfb# 000000008 |
| | 09/19 | 138,024.99 | WT Fed#03069 Fifth Third Bank ( /Ftr/Bnf=Atwell, LLC Srf# IN14091815043389 Trn#140918148495 Rfb# 000000010 |
| | 09/19 | 9,100.00 | WT Seq#00411 Terminal Manufacturing /Bnf=Terminal Manufacturing CO., LLC Srf# IN14091812194715 Trn#140919000411 Rfb# 000000009 |
| | 09/22 | 49,182.58 | WT Fed#06931 City National Bank /Ftr/Bnf=Pyro Minerals, Inc. Srf# IN14092212594129 Trn#140922124260 Rfb# 000000013 |
| | 09/22 | 12,477.60 | WT Fed#06932 Bank of America, N /Ftr/Bnf=Eckman Industries, Inc. Srf# IN14092212590576 Trn#140922124253 Rfb# 000000012 |
| | 09/22 | 1,070.80 | WT Fed#02245 Deutsche Bank /Ftr/Bnf=Fprs Depository Account Srf# IN14092206523692 Trn#140922051903 Rfb# 000000011 |
| | 09/23 | 126.48 | Superior Press Printing Chrg J2241238Ch00000 0000000 Pacific Steel |

Case: 19-04057   Doc# 86-8   Filed: 10/02/20   Entered: 10/02/20 14:29:05   Page 44
of 99

TR_FS_000137781
CONFIDENTIAL



## Electronic debits/bank debits (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 09/23 | 308,146.76 | WT Fed#07453 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 2692500266Jo Trn#140923070861 Rfb# Nonref |
| | 09/23 | 15,871.53 | WT Fed#01916 USAA Bank /Ftr/Bnf=Neil Brunner Srf# IN14092310282867 Trn#140923084551 Rfb# 000000014 |
| | 09/24 | 34,402.24 | WT Fed#06448 PNC Bank, N.A. /Ftr/Bnf=Amg Resources Corpotaion Srf# IN14092411084466 Trn#140924095291 Rfb# 000000015 |
| | 09/24 | 3,371.86 | WT Fed#04462 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1690800267Jo Trn#140924030942 Rfb# Nonref |
| | 09/25 | 142,696.06 | WT Fed#02544 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 4366900268Jo Trn#140925098954 Rfb# Nonref |
| | 09/25 | 35,674.11 | WT Fed#09898 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 5418300268Jo Trn#140925121320 Rfb# Nonref |
| | 09/25 | 725.00 | WT Fed#06922 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 4994200268Jo Trn#140925112088 Rfb# Nonref |
| | 09/26 | 73,948.48 | WT Fed#03649 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 3992700269Jo Trn#140926076269 Rfb# Nonref |
| | 09/26 | 10,336.49 | WT Fed#08838 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 1575500269Jo Trn#140926033194 Rfb# Nonref |
| | 09/29 | 282,510.73 | WT Fed#06822 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 0873700272Jo Trn#140929036019 Rfb# Nonref |
| | 09/29 | 39,477.78 | WT Fed#06828 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 0873600272Jo Trn#140929036030 Rfb# Nonref |
| | 09/29 | 33,300.49 | WT Fed#06819 Umpqua Bank /Ftr/Bnf=Sanderson Srf# IN14092913263570 Trn#140929151483 Rfb# 000000016 |
| | 09/29 | 725.00 | WT Fed#07776 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1172200272Jo Trn#140929039881 Rfb# Nonref |
| | 09/30 | 40,103.86 | WT Fed#01648 Bank of America, N /Ftr/Bnf=Eckman Industries, Inc. Srf# IN14093007311518 Trn#140930099596 Rfb# 000000017 |

|  | **$2,324,403.21** | **Total electronic debits/bank debits** |

## Checks paid

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 200501 | 13,536.09 | 09/22 | 200515 | 6,146.58 | 09/23 | 200532 * | 1,040.00 | 09/26 |
| 200502 | 6,137.96 | 09/25 | 200517 * | 3,179.07 | 09/22 | 200533 | 1,434.56 | 09/26 |
| 200503 | 1,585.06 | 09/23 | 200518 | 749.92 | 09/23 | 200534 | 17,427.63 | 09/30 |
| 200504 | 9,134.00 | 09/22 | 200519 | 35,947.46 | 09/23 | 200535 | 735.75 | 09/26 |
| 200505 | 28,857.29 | 09/22 | 200520 | 1,603.72 | 09/23 | 200537 * | 625.70 | 09/23 |
| 200506 | 7,646.10 | 09/22 | 200522 * | 193.65 | 09/26 | 200538 | 3,741.26 | 09/26 |
| 200507 | 2,383.37 | 09/22 | 200523 | 7,652.26 | 09/30 | 200539 | 7,145.30 | 09/26 |
| 200508 | 19,600.00 | 09/25 | 200524 | 84.64 | 09/26 | 200540 | 1,120.00 | 09/30 |
| 200509 | 490,068.68 | 09/22 | 200525 | 501.68 | 09/29 | 200542 * | 10,032.66 | 09/29 |
| 200511 * | 18,393.74 | 09/25 | 200526 | 976.60 | 09/26 | 200543 | 8,335.06 | 09/29 |
| 200512 | 9,711.40 | 09/19 | 200527 | 406.29 | 09/26 | 200544 | 4,285.72 | 09/23 |
| 200513 | 3,695.65 | 09/19 | 200528 | 14,377.50 | 09/23 | 200546 * | 1,803.46 | 09/29 |
| 200514 | 24,713.89 | 09/23 | 200529 | 8,319.00 | 09/26 | 201000 * | 150,747.89 | 09/29 |

Case: 19-04057   Doc# 86-8   Filed: 10/02/20   Entered: 10/02/20 14:29:05   Page 45 of 99

TR_FS_000137782
CONFIDENTIAL



## Checks paid *(continued)*

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|--------|--------|------|--------|--------|------|--------|--------|------|
| 201023 * | 2,049.85 | 09/29 | 201047 * | 6,767.50 | 09/30 | | | |

**$932,893.94**   **Total checks paid**

*\* Gap in check sequence.*

**$3,257,297.15**   **Total debits**

## Daily ledger balance summary

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 09/03 | 446.00 | 09/16 | 1,299,833.67 | 09/24 | 1,001,754.55 |
| 09/05 | 600,446.00 | 09/17 | 1,457,315.63 | 09/25 | 3,142,384.83 |
| 09/11 | 912,551.25 | 09/19 | 1,296,783.59 | 09/26 | 3,149,325.66 |
| 09/12 | 505,646.10 | 09/22 | 679,248.01 | 09/29 | 3,833,680.78 |
| 09/15 | 499,833.67 | 09/23 | 1,039,528.65 | 09/30 | 3,803,495.13 |

**Average daily ledger balance**   **$1,393,921.15**

Did you know you can have check images delivered to a secure folder on the Commercial Electronic Office® (CEO) portal? Talk with your banker for more information about our Image File Import service.

©2010 Wells Fargo Bank, N.A.
All rights reserved. Member FDIC.

Case: 19-04057   Doc# 86-8   Filed: 10/02/20   Entered: 10/02/20 14:29:05   Page 46 of 99

TR_FS_000137783
CONFIDENTIAL

# WellsOne® Account

Account number: **4391337029** ■ January 1, 2015 - January 31, 2015 ■ Page 1 of 7



PACIFIC STEEL CASTING COMPANY LLC       W0
GENERAL ACCOUNT
1333 2ND ST
BERKELEY CA 94710-1317

**Questions?**

Call your Customer Service Officer or Client Services
**1-800-AT WELLS** (1-800-289-3557)
5:00 AM TO 6:00 PM Pacific Time Monday - Friday

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (182)
PO Box 63020
San Francisco, CA 94163

---

## Account summary

### WellsOne® Account

| Account number | Beginning balance | Total credits | Total debits | Ending balance |
|---|---|---|---|---|
| 4391337029 | $3,247,836.73 | $10,379,670.08 | -$12,192,388.54 | $1,435,118.27 |

## Credits

### Electronic deposits/bank credits

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 01/06 | 182,012.08 | WT Seq106530 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15010610071394 Trn#150106106530 Rfb# 000001660 |
| | 01/07 | 810,261.28 | WT Seq101906 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15010710330325 Trn#150107101906 Rfb# 000001665 |
| | 01/08 | 462,111.14 | WT Seq112554 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15010809472324 Trn#150108112554 Rfb# 000001676 |
| | 01/09 | 292,154.02 | WT Seq107191 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15010910034787 Trn#150109107191 Rfb# 000001683 |
| | 01/12 | 1,079,534.96 | WT Seq110406 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15011208572907 Trn#150112110406 Rfb# 000001691 |
| | 01/13 | 252,587.64 | WT Seq102628 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15011310110284 Trn#150113102628 Rfb# 000001705 |
| | 01/14 | 60,053.69 | WT Seq118587 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15011411301327 Trn#150114118587 Rfb# 000001711 |
| | 01/15 | 260,559.49 | WT Seq124580 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15011512023171 Trn#150115124580 Rfb# 000001718 |
| | 01/16 | 1,600,000.00 | WT Seq114491 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15011610420583 Trn#150116114491 Rfb# 000001728 |
| | 01/20 | 520,000.00 | WT Seq161004 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15012010351240 Trn#150120161004 Rfb# 000001732 |
| | 01/21 | 56,665.04 | WT Seq121192 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15012111443675 Trn#150121121192 Rfb# 000001754 |
| | 01/22 | 2,800,000.00 | WT Seq121896 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15012209533484 Trn#150122121896 Rfb# 000001766 |

(182)
Sheet Seq = 0006459
Sheet 00001 of 00007

Case: 19-04057    Doc# 86-8    Filed: 10/02/20    Entered: 10/02/20 14:29:05    Page 47 of 99

TR_FRB_000177875
CONFIDENTIAL



## Electronic deposits/bank credits (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 01/23 | 200,000.00 | WT Seq125578 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15012309504437 Trn#150123125578 Rfb# 000001776 |
| | 01/26 | 1,800,000.00 | WT Seq102725 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15012609360764 Trn#150126102725 Rfb# 000001783 |
| | 01/26 | 2,256.77 | WT Seq#59482 WF Return Wires IN Proc /Org= Srf# 2015012300129996 Trn#150126059482 Rfb# |
| | 01/26 | 1,473.97 | WT Seq137214 WF Return Wires IN Proc /Org= Srf# 2015012300130255 Trn#150126137214 Rfb# |
| | | **$10,379,670.08** | **Total electronic deposits/bank credits** |
| | | **$10,379,670.08** | **Total credits** |

## Debits

### Electronic debits/bank debits

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 01/02 | 4,120.20 | ADP Payroll Fees ADP - Fees 150102 3D8Pg 4412807 Pacific Steel Casting |
| | 01/02 | 1,141.19 | ADP Payroll Fees ADP - Fees 150102 108Pg 4412804 Pacific Steel Casting |
| | 01/02 | 252.02 | ADP Payroll Fees ADP - Fees 150102 108Pk 4412825 Pacific Steel Casting |
| | 01/06 | 258,892.88 | WT Fed#05855 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 4959000006Jo Trn#150106119829 Rfb# Nonref |
| | 01/07 | 116,368.66 | WT Fed#05915 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 0676200007Jo Trn#150107028008 Rfb# Nonref |
| | 01/07 | 19,761.29 | WT Fed#07109 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1158700007Jo Trn#150107032103 Rfb# Nonref |
| | 01/07 | 8,594.77 | WT Fed#05911 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 0676100007Jo Trn#150107028001 Rfb# Nonref |
| | 01/07 | 4,581.46 | WT Fed#07117 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1158800007Jo Trn#150107032106 Rfb# Nonref |
| | 01/09 | 9,916.00 | B & L Informatio ACH Debit 150109 4970970838 Pacific Steel Castings |
| | 01/09 | 3,145.40 | Efboardofequaliz Boe E-File 150108 00059347589 ELF*00020741391*0000000314540*00059347589*2015010 |
| | 01/09 | 1,215.18 | ADP Payroll Fees ADP - Fees 150109 108Pg 4683305 Pacific Steel Casting |
| | 01/12 | 4,658.11 | Client Analysis Srvc Chrg 150109 Svc Chge 1214 000004391337029 |
| | 01/12 | 27,116.92 | Efboardofequaliz Boe E-File 150109 00054881737 ELF*00020749155*0000002711692*00054881737*2015010 |
| | 01/12 | 8,913.54 | Efboardofequaliz Boe E-File 150109 00054962727 ELF*00020794174*0000000891354*00054962727*2015010 |
| | 01/13 | 57,078.70 | WT Fed#06764 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1240700013Jo Trn#150113034053 Rfb# Nonref |
| | 01/14 | 329,408.15 | WT Fed#08788 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1476500014Jo Trn#150114033304 Rfb# Nonref |
| | 01/14 | 151,085.66 | WT Fed#07568 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 1153600014Jo Trn#150114029104 Rfb# Nonref |
| | 01/14 | 48,854.50 | WT Fed#07543 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 1153500014Jo Trn#150114029084 Rfb# Nonref |

Case: 19-04057   Doc# 86-8   Filed: 10/02/20   Entered: 10/02/20 14:29:05   Page 48 of 99

TR_FTS_000177876
CONFIDENTIAL



---

### Electronic debits/bank debits (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 01/14 | 5,449.29 | WT Fed#08785 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1476600014Jo Trn#150114033303 Rfb# Nonref |
| | 01/15 | 16,501.97 | WT Fed#07487 Bank of China, Los /Ftr/Bnf=China Pacificarbide Inc Srf# IN15010808104047 Trn#150115055381 Rfb# 000000056 |
| | 01/15 | 4,775.32 | WT Fed#05482 Banque Internation /Ftr/Bnf=Fesil Sales SA Srf# IN15011511290491 Trn#150115134079 Rfb# 000000057 |
| | 01/16 | 1,325,093.00 | WT Fed#00351 PNC Bank, National /Ftr/Bnf=Speyside Equity Iwire Srf# IN15011613221140 Trn#150116154674 Rfb# 000000058 |
| | 01/16 | 1,325,093.00 | WT Fed#00365 Illinois National /Ftr/Bnf=Alcast Company Srf# IN15011613225741 Trn#150116154715 Rfb# 000000059 |
| | 01/16 | 155,646.00 | WT Fed#08345 Jpmorgan Chase Ban /Ftr/Bnf=Jeffrey A Stone OR Jodie Stone Srf# IN15011613232999 Trn#150116150000 Rfb# 000000060 |
| | 01/16 | 1,150.96 | ADP Payroll Fees ADP - Fees 150116 108Pg 4945626 Pacific Steel Casting |
| | 01/16 | 247.91 | ADP Payroll Fees ADP - Fees 150116 108Pk 4945641 Pacific Steel Casting |
| | 01/16 | 239.14 | ADP Payroll Fees ADP - Fees 150116 108Ph 4945630 Pacific Steel Casting |
| | 01/20 | 2,256.77 | WT Fed#00889 Deutsche Bank /Ftr/Bnf=Fprs Depository Account Srf# IN15011905522992 Trn#150120001953 Rfb# 000000061 |
| | 01/20 | 1,473.97 | WT Fed#00926 Deutsche Bank /Ftr/Bnf=Fprs Depository Account Srf# IN15011905525726 Trn#150120001949 Rfb# 000000062 |
| | 01/21 | 360,761.61 | WT Fed#08585 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1361700021Jo Trn#150121037385 Rfb# Nonref |
| | 01/21 | 153,021.80 | WT Fed#07173 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 1074000021Jo Trn#150121033048 Rfb# Nonref |
| | 01/21 | 15,037.03 | WT Fed#07181 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 1073900021Jo Trn#150121033052 Rfb# Nonref |
| | 01/21 | 4,991.79 | WT Fed#08594 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1361800021Jo Trn#150121037427 Rfb# Nonref |
| | 01/22 | 793,800.00 | WT Fed#02470 PNC Bank, National /Ftr/Bnf=Speyside Equity Iwire Srf# IN15012210444569 Trn#150122105960 Rfb# 000000065 |
| | 01/22 | 793,800.00 | WT Fed#02469 Illinois National /Ftr/Bnf=Alcast Company Srf# IN15012210450615 Trn#150122106011 Rfb# 000000066 |
| | 01/22 | 200,000.00 | WT Fed#06982 Jpmorgan Chase Ban /Ftr/Bnf=Jeffrey A Stone OR Jodie Stone Srf# IN15012210453415 Trn#150122106096 Rfb# 000000067 |
| | 01/22 | 100,000.00 | WT Fed#07669 Monroe Bank & Trus /Ftr/Bnf=Eric Wiklendt Srf# IN15012211162762 Trn#150122108393 Rfb# 000000068 |
| | 01/22 | 6,208.40 | WT Fed#00469 Bank of America /Ftr/Bnf=Professional Finishing Srf# IN15012211472311 Trn#150122116461 Rfb# 000000069 |
| | 01/22 | 13,903.21 | WT Fed#08323 Banque Internation /Ftr/Bnf=Fesil Sales SA Srf# IN15012209090595 Trn#150122110215 Rfb# 000000063 |
| | 01/23 | 14,700.00 | WT Fed#02816 Bank of China, Los /Ftr/Bnf=China Pacificarbide Inc Srf# IN15012209492466 Trn#150122157382 Rfb# 000000064 |
| | 01/23 | 5,974.85 | ADP Payroll Fees ADP - Fees 150123 8Gqiz 5138479 Pacific Steel Casting |
| | 01/23 | 1,398.32 | ADP Payroll Fees ADP - Fees 150123 108Pg 5318255 Pacific Steel Casting |
| | 01/23 | 977.20 | ADP Payroll Fees ADP - Fees 150123 3D8Pg 5318262 Pacific Steel Casting |
| | 01/27 | 2,256.77 | WT Fed#07043 Deutsche Bank /Ftr/Bnf=Fprs Depository Account Srf# IN15012709130959 Trn#150127062892 Rfb# 000000070 |

Case: 19-04057   Doc# 86-8   Filed: 10/02/20   Entered: 10/02/20 14:29:05   Page 49 of 99

TR_PS_000177877
CONFIDENTIAL



## Electronic debits/bank debits (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 01/27 | 1,473.97 | WT Fed#07053 Deutsche Bank /Ftr/Bnf=Fprs Depository Account Srf# IN15012709133475 Trn#150127062918 Rfb# 000000071 |
| | 01/28 | 377,199.03 | WT Fed#09984 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1163100028Jo Trn#150128036567 Rfb# Nonref |
| | 01/28 | 143,036.74 | WT Fed#08788 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 0948500028Jo Trn#150128032671 Rfb# Nonref |
| | 01/28 | 4,615.07 | WT Fed#09981 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1163200028Jo Trn#150128036560 Rfb# Nonref |
| | 01/29 | 11,948.41 | WT Fed#08427 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 1190800029Jo Trn#150129033036 Rfb# Nonref |
| | 01/29 | 725.00 | WT Fed#00457 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1607800029Jo Trn#150129037638 Rfb# Nonref |
| | 01/30 | 3,846.15 | ADP Payroll Fees ADP - Fees 150130 3D8Pg 6025635 Pacific Steel Casting |
| | 01/30 | 1,395.36 | ADP Payroll Fees ADP - Fees 150130 108Pg 6025632 Pacific Steel Casting |
| | 01/30 | 360.93 | ADP Payroll Fees ADP - Fees 150130 108Pk 6025649 Pacific Steel Casting |
| | 01/30 | 101.80 | ADP Payroll Fees ADP - Fees 150130 108Ph 6025637 Pacific Steel Casting |
| | | **$6,904,565.40** | **Total electronic debits/bank debits** |

## Checks paid

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 201580 | 100.00 | 01/15 | 202180 | 1,094.25 | 01/13 | 202210 | 24,661.42 | 01/12 |
| 201758 * | 8,600.00 | 01/05 | 202181 | 3,677.45 | 01/05 | 202211 | 2,059.50 | 01/13 |
| 201850 * | 9,134.00 | 01/05 | 202182 | 7,501.50 | 01/07 | 202212 | 49,966.98 | 01/13 |
| 201855 * | 83,848.33 | 01/13 | 202183 | 6,454.57 | 01/06 | 202213 | 1,699.00 | 01/13 |
| 201859 * | 3,567.60 | 01/06 | 202184 | 1,440.45 | 01/06 | 202214 | 6,874.86 | 01/12 |
| 201927 * | 4,946.93 | 01/08 | 202185 | 751.58 | 01/06 | 202215 | 11,380.56 | 01/20 |
| 201934 * | 55,536.99 | 01/13 | 202186 | 1,056.00 | 01/06 | 202216 | 6,978.37 | 01/12 |
| 201952 * | 3,153.90 | 01/06 | 202187 | 4,650.00 | 01/06 | 202217 | 572.93 | 01/13 |
| 201978 * | 2,550.60 | 01/12 | 202189 * | 1,016.78 | 01/05 | 202218 | 1,433.35 | 01/13 |
| 201987 * | 16,484.03 | 01/06 | 202190 | 1,578.37 | 01/06 | 202219 | 2,608.70 | 01/12 |
| 201990 * | 293.40 | 01/07 | 202191 | 115.00 | 01/02 | 202220 | 22,473.62 | 01/13 |
| 202019 * | 55,422.76 | 01/20 | 202193 * | 2,529.96 | 01/02 | 202221 | 2,362.50 | 01/14 |
| 202030 * | 8,333.33 | 01/08 | 202194 | 1,291.13 | 01/12 | 202222 | 430.14 | 01/15 |
| 202038 * | 8,161.75 | 01/06 | 202195 | 2,042.93 | 01/05 | 202223 | 182,064.34 | 01/13 |
| 202046 * | 8,127.38 | 01/09 | 202196 | 1,975.35 | 01/02 | 202224 | 8,249.53 | 01/15 |
| 202110 * | 10,628.00 | 01/12 | 202197 | 2,283.36 | 01/05 | 202225 | 2,094.23 | 01/14 |
| 202113 * | 735.75 | 01/02 | 202198 | 7,582.62 | 01/07 | 202226 | 292.15 | 01/12 |
| 202116 * | 7,892.75 | 01/07 | 202199 | 36,292.23 | 01/09 | 202227 | 3,142.98 | 01/13 |
| 202121 * | 63.92 | 01/02 | 202200 | 25,827.49 | 01/12 | 202229 * | 15,353.87 | 01/12 |
| 202140 * | 5,207.95 | 01/08 | 202201 | 216,012.54 | 01/08 | 202230 | 112.00 | 01/12 |
| 202148 * | 57,555.42 | 01/09 | 202202 | 47,466.80 | 01/08 | 202231 | 1.00 | 01/20 |
| 202149 | 3,123.11 | 01/14 | 202203 | 3,552.06 | 01/12 | 202232 | 405.00 | 01/13 |
| 202153 * | 5,499.99 | 01/06 | 202204 | 3,261.44 | 01/13 | 202233 | 4,771.00 | 01/16 |
| 202163 * | 1,522.72 | 01/08 | 202205 | 4,119.88 | 01/13 | 202234 | 507.92 | 01/23 |
| 202170 * | 71,683.96 | 01/12 | 202206 | 12,915.77 | 01/12 | 202235 | 2,650.00 | 01/12 |
| 202171 | 109,959.00 | 01/05 | 202207 | 10,677.60 | 01/13 | 202236 | 26,997.80 | 01/12 |
| 202178 * | 16,001.00 | 01/05 | 202208 | 10,235.36 | 01/12 | 202237 | 31,800.00 | 01/13 |
| 202179 | 28,170.45 | 01/05 | 202209 | 4,757.20 | 01/16 | 202238 | 5,966.27 | 01/21 |

Case: 19-04057    Doc# 86-8    Filed: 10/02/20    Entered: 10/02/20 14:29:05    Page 50 of 99

TR_FS_000177878
CONFIDENTIAL



*Checks paid* (continued)

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 202239 | 5,261.34 | 01/13 | 202290 | 3,516.27 | 01/15 | 202342 | 6,668.32 | 01/26 |
| 202240 | 1,076.24 | 01/13 | 202291 | 12,263.00 | 01/14 | 202343 | 462.27 | 01/20 |
| 202242 * | 37,335.88 | 01/13 | 202292 | 7,169.25 | 01/12 | 202344 | 5,328.97 | 01/20 |
| 202243 | 1,137.64 | 01/12 | 202293 | 34,297.00 | 01/14 | 202345 | 2,655.00 | 01/21 |
| 202244 | 1,880.00 | 01/13 | 202294 | 522.78 | 01/12 | 202346 | 17,040.00 | 01/27 |
| 202245 | 4,513.10 | 01/14 | 202295 | 8,412.28 | 01/21 | 202348 * | 1,197.00 | 01/23 |
| 202246 | 1,976.63 | 01/14 | 202296 | 1,860.00 | 01/12 | 202349 | 16,340.83 | 01/20 |
| 202247 | 2,196.42 | 01/16 | 202297 | 8,174.00 | 01/13 | 202350 | 22,834.81 | 01/23 |
| 202248 | 4,240.56 | 01/16 | 202298 | 1,070.00 | 01/13 | 202351 | 5,632.51 | 01/21 |
| 202249 | 2,656.60 | 01/16 | 202299 | 745.17 | 01/12 | 202352 | 10,023.32 | 01/20 |
| 202250 | 5,493.60 | 01/12 | 202300 | 7,260.34 | 01/13 | 202353 | 157.33 | 01/20 |
| 202251 | 7,907.97 | 01/13 | 202301 | 38.95 | 01/14 | 202354 | 12,037.29 | 01/20 |
| 202252 | 441.68 | 01/13 | 202302 | 2,830.47 | 01/13 | 202355 | 845.84 | 01/20 |
| 202253 | 10,147.91 | 01/13 | 202303 | 1,196.14 | 01/13 | 202356 | 6,450.00 | 01/21 |
| 202254 | 225.00 | 01/14 | 202304 | 4,312.50 | 01/13 | 202357 | 1,013.05 | 01/21 |
| 202255 | 944.00 | 01/13 | 202305 | 8,066.00 | 01/13 | 202358 | 1,469.91 | 01/20 |
| 202256 | 2,901.76 | 01/13 | 202306 | 1,419.42 | 01/12 | 202359 | 1,377.69 | 01/21 |
| 202257 | 2,419.12 | 01/12 | 202307 | 435.94 | 01/13 | 202360 | 5,150.26 | 01/21 |
| 202258 | 54,530.52 | 01/14 | 202308 | 2,399.69 | 01/14 | 202361 | 49,919.69 | 01/21 |
| 202259 | 11,800.16 | 01/13 | 202309 | 1,556.01 | 01/12 | 202362 | 7,253.00 | 01/20 |
| 202260 | 1,501.02 | 01/20 | 202310 | 2,791.27 | 01/14 | 202363 | 1,320.00 | 01/27 |
| 202261 | 5,503.96 | 01/13 | 202311 | 232.79 | 01/14 | 202364 | 250.16 | 01/26 |
| 202262 | 1,620.00 | 01/16 | 202312 | 1,536.00 | 01/12 | 202365 | 2,266.27 | 01/20 |
| 202263 | 3,319.00 | 01/12 | 202313 | 525.00 | 01/15 | 202366 | 5,622.35 | 01/21 |
| 202264 | 5,519.00 | 01/15 | 202314 | 6,160.00 | 01/13 | 202367 | 1,050.19 | 01/21 |
| 202265 | 4,122.89 | 01/12 | 202315 | 12,975.00 | 01/12 | 202368 | 23,827.53 | 01/20 |
| 202266 | 3,485.00 | 01/14 | 202316 | 462.55 | 01/13 | 202369 | 49,304.30 | 01/15 |
| 202267 | 379,458.20 | 01/15 | 202317 | 6,094.14 | 01/12 | 202370 | 1,102.50 | 01/15 |
| 202268 | 3,883.13 | 01/16 | 202318 | 500.00 | 01/13 | 202371 | 570.08 | 01/26 |
| 202269 | 23,078.74 | 01/15 | 202320 * | 776.63 | 01/13 | 202372 | 386.54 | 01/20 |
| 202270 | 1,085.85 | 01/16 | 202321 | 10,086.25 | 01/12 | 202373 | 14,836.07 | 01/20 |
| 202271 | 9,651.00 | 01/12 | 202323 * | 17,885.07 | 01/12 | 202374 | 68,640.18 | 01/20 |
| 202272 | 6,946.74 | 01/12 | 202324 | 57,996.39 | 01/13 | 202376 * | 182.86 | 01/20 |
| 202273 | 261.20 | 01/12 | 202325 | 37,476.00 | 01/20 | 202377 | 7,574.22 | 01/16 |
| 202274 | 2,240.00 | 01/28 | 202326 | 15,900.00 | 01/28 | 202378 | 414.20 | 01/21 |
| 202275 | 14,563.52 | 01/12 | 202327 | 3,034.00 | 01/20 | 202379 | 443.11 | 01/21 |
| 202276 | 9,134.00 | 01/20 | 202328 | 497.95 | 01/20 | 202380 | 14,165.34 | 01/21 |
| 202277 | 3,281.58 | 01/29 | 202329 | 3,463.54 | 01/21 | 202381 | 4,175.00 | 01/20 |
| 202278 | 20,803.86 | 01/12 | 202330 | 22,178.57 | 01/20 | 202382 | 437.33 | 01/22 |
| 202279 | 1,108.21 | 01/12 | 202331 | 2,476.24 | 01/23 | 202383 | 99,732.75 | 01/20 |
| 202280 | 4,491.65 | 01/13 | 202332 | 11,095.80 | 01/20 | 202384 | 30,569.67 | 01/22 |
| 202281 | 38,294.22 | 01/13 | 202333 | 9,082.84 | 01/20 | 202385 | 638.97 | 01/20 |
| 202282 | 1,361.40 | 01/15 | 202334 | 8,621.62 | 01/20 | 202386 | 8,394.07 | 01/20 |
| 202283 | 61,815.15 | 01/14 | 202335 | 4,904.46 | 01/29 | 202387 | 11,804.17 | 01/20 |
| 202284 | 12,150.00 | 01/14 | 202336 | 16,790.14 | 01/21 | 202388 | 1,074.57 | 01/22 |
| 202285 | 92,305.56 | 01/26 | 202337 | 293.30 | 01/23 | 202389 | 775.00 | 01/20 |
| 202286 | 1,335.25 | 01/13 | 202338 | 487,291.97 | 01/20 | 202390 | 429.50 | 01/20 |
| 202287 | 11,691.61 | 01/12 | 202339 | 117,805.00 | 01/21 | 202391 | 143.99 | 01/20 |
| 202288 | 1,919.29 | 01/14 | 202340 | 70,691.10 | 01/21 | 202392 | 8,333.33 | 01/26 |
| 202289 | 1,479.60 | 01/12 | 202341 | 1,435.46 | 01/21 | 202393 | 1,068.00 | 01/20 |

Case: 19-04057   Doc# 86-8   Filed: 10/02/20   Entered: 10/02/20 14:29:05   Page 51
of 99

TR_FRB_000177879
CONFIDENTIAL



**Checks paid** (continued)

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 202394 | 8,411.00 | 01/20 | 202431 | 6,594.32 | 01/22 | 202469 | 3,661.00 | 01/26 |
| 202395 | 4,450.00 | 01/21 | 202432 | 622.28 | 01/23 | 202471 * | 50,041.20 | 01/27 |
| 202396 | 5,401.50 | 01/21 | 202433 | 1,025.30 | 01/26 | 202472 | 162,204.60 | 01/22 |
| 202397 | 483.44 | 01/21 | 202435 * | 12,184.59 | 01/21 | 202473 | 2,184.15 | 01/28 |
| 202398 | 4,980.00 | 01/26 | 202436 | 5,763.26 | 01/21 | 202474 | 10,293.70 | 01/22 |
| 202399 | 1,188.21 | 01/21 | 202437 | 233.80 | 01/27 | 202475 | 6,587.18 | 01/27 |
| 202400 | 2,475.66 | 01/22 | 202438 | 1,791.60 | 01/26 | 202476 | 375.46 | 01/26 |
| 202401 | 457.38 | 01/21 | 202439 | 10,761.61 | 01/29 | 202477 | 5,234.54 | 01/26 |
| 202402 | 2,295.00 | 01/21 | 202440 | 22,279.29 | 01/27 | 202478 | 7,407.34 | 01/27 |
| 202403 | 956.99 | 01/21 | 202442 * | 52,106.80 | 01/28 | 202479 | 4,335.07 | 01/26 |
| 202404 | 3,351.97 | 01/23 | 202443 | 448.60 | 01/26 | 202480 | 7,351.32 | 01/28 |
| 202405 | 23,827.32 | 01/20 | 202444 | 10,051.40 | 01/29 | 202481 | 10,798.30 | 01/26 |
| 202406 | 432.48 | 01/26 | 202445 | 1,772.34 | 01/26 | 202482 | 30,757.70 | 01/27 |
| 202407 | 29,424.72 | 01/20 | 202446 | 1,180.76 | 01/27 | 202483 | 1,273.78 | 01/26 |
| 202409 * | 373.35 | 01/27 | 202447 | 4,142.00 | 01/27 | 202484 | 298.56 | 01/27 |
| 202410 | 7,837.32 | 01/20 | 202448 | 25,225.87 | 01/26 | 202485 | 6,597.91 | 01/26 |
| 202411 | 4,380.00 | 01/21 | 202449 | 3,550.68 | 01/27 | 202487 * | 942.00 | 01/26 |
| 202412 | 223.75 | 01/20 | 202450 | 80,136.57 | 01/26 | 202488 | 10,425.00 | 01/26 |
| 202413 | 49,307.75 | 01/22 | 202451 | 5,450.00 | 01/28 | 202490 * | 11,518.56 | 01/26 |
| 202414 | 8,535.29 | 01/22 | 202452 | 13,813.32 | 01/26 | 202491 | 6,815.51 | 01/26 |
| 202415 | 7,925.00 | 01/22 | 202453 | 2,195.88 | 01/26 | 202492 | 990.00 | 01/28 |
| 202416 | 661.25 | 01/20 | 202454 | 16,450.00 | 01/27 | 202493 | 567.67 | 01/28 |
| 202417 | 8,522.10 | 01/15 | 202455 | 5,471.81 | 01/26 | 202494 | 8,714.95 | 01/28 |
| 202418 | 16,753.73 | 01/20 | 202456 | 3,351.97 | 01/26 | 202495 | 7,615.30 | 01/27 |
| 202419 | 5,185.52 | 01/23 | 202457 | 1,167.01 | 01/29 | 202496 | 393.22 | 01/28 |
| 202420 | 2,910.67 | 01/21 | 202458 | 14,037.65 | 01/23 | 202497 | 112,400.00 | 01/22 |
| 202421 | 277.00 | 01/20 | 202459 | 2,623.56 | 01/26 | 202498 | 1,485.00 | 01/30 |
| 202422 | 438.69 | 01/20 | 202460 | 3,266.66 | 01/26 | 202501 * | 9,285.00 | 01/29 |
| 202423 | 38,123.80 | 01/20 | 202461 | 2,883.19 | 01/27 | 202519 * | 5,585.22 | 01/30 |
| 202424 | 95.00 | 01/28 | 202462 | 12,388.94 | 01/28 | 202555 * | 84,864.87 | 01/29 |
| 202425 | 22.60 | 01/21 | 202463 | 2,000.00 | 01/26 | 202556 | 26,981.50 | 01/29 |
| 202426 | 950.00 | 01/21 | 202464 | 9,931.43 | 01/26 | 202557 | 7,922.30 | 01/29 |
| 202427 | 3,135.00 | 01/15 | 202465 | 5,041.79 | 01/26 | 202574 * | 2,650.50 | 01/30 |
| 202428 | 450.00 | 01/26 | 202466 | 3,041.11 | 01/22 | 202583 * | 1,500.00 | 01/30 |
| 202429 | 116,344.00 | 01/21 | 202467 | 351.51 | 01/26 | 202586 * | 3,425.42 | 01/29 |
| 202430 | 77,823.00 | 01/22 | 202468 | 3,070.30 | 01/26 | 202589 * | 4,656.52 | 01/30 |

**$5,287,823.14**     **Total checks paid**

*  Gap in check sequence.

**$12,192,388.54**     **Total debits**

## Daily ledger balance summary

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 12/31 | 3,247,836.73 | 01/09 | 3,976,102.86 | 01/20 | 1,368,280.41 |
| 01/02 | 3,236,903.34 | 01/12 | 4,640,648.07 | 01/21 | 420,312.50 |
| 01/05 | 3,054,962.37 | 01/13 | 4,153,879.52 | 01/22 | 848,454.18 |
| 01/06 | 2,926,339.33 | 01/14 | 3,478,476.70 | 01/23 | 974,897.12 |
| 01/07 | 3,564,024.16 | 01/15 | 3,233,456.72 | 01/26 | 2,444,494.26 |
| 01/08 | 3,742,645.03 | 01/16 | 1,997,442.29 | 01/27 | 2,268,603.17 |

Case: 19-04057    Doc# 86-8    Filed: 10/02/20    Entered: 10/02/20 14:29:05    Page 52
of 99

TR_FS_000177880
CONFIDENTIAL



---

***Daily ledger balance summary***   (continued)

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 01/28 | 1,635,370.28 | 01/29 | 1,456,699.75 | 01/30 | 1,435,118.27 |
| | **Average daily ledger balance** | | **$2,513,167.70** | | |



# IMPORTANT ACCOUNT INFORMATION

We want to inform you that at least 30 calendar days' notice is required when you terminate Treasury Management Services. This applies only to Treasury Management agreements that do not already include it and takes effect immediately. This provision will support Wells Fargo's treatment of funds in account(s) associated with Treasury Management Services under new federal regulations implementing liquidity standards. Please note: Access to your accounts and Treasury Management Services is not affected in any way.

If you have questions about this notice, please contact your bank representative, or call the number listed at the top of your statement.

©2010 Wells Fargo Bank, N.A.
All rights reserved. Member FDIC.

Case: 19-04057    Doc# 86-8    Filed: 10/02/20    Entered: 10/02/20 14:29:05    Page 53
of 99

TR_FS_000177881
CONFIDENTIAL

# WellsOne® Account



PACIFIC STEEL CASTING COMPANY LLC      W0
GENERAL ACCOUNT
1333 2ND ST
BERKELEY CA 94710-1317

**Questions?**

Call your Customer Service Officer or Client Services
**1-800-AT WELLS** (1-800-289-3557)
5:00 AM TO 6:00 PM Pacific Time Monday - Friday

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (182)
PO Box 63020
San Francisco, CA 94163

## Account summary

### WellsOne® Account

| Account number | Beginning balance | Total credits | Total debits | Ending balance |
|---|---|---|---|---|
| 4391337029 | $1,477,718.47 | $9,031,803.67 | -$9,715,200.11 | $794,322.03 |

## Credits

**Electronic deposits/bank credits**

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 04/01 | 296,244.13 | WT Seq139299 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15040111151747 Trn#150401139299 Rfb# 000002220 |
| | 04/02 | 403,477.01 | WT Seq127045 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15040210383631 Trn#150402127045 Rfb# 000002227 |
| | 04/03 | 217,360.62 | WT Seq#84404 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15040310061450 Trn#150403084404 Rfb# 000002236 |
| | 04/06 | 568,231.77 | WT Seq#93699 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15040609410715 Trn#150406093699 Rfb# 000002243 |
| | 04/08 | 232,828.73 | WT Seq112386 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15040810365249 Trn#150408112386 Rfb# 000002274 |
| | 04/09 | 443,971.38 | WT Seq110948 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15040911250685 Trn#150409110948 Rfb# 000002279 |
| | 04/10 | 100,445.73 | WT Seq117583 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15041010451397 Trn#150410117583 Rfb# 000002287 |
| | 04/13 | 379,342.79 | WT Seq115440 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15041310561508 Trn#150413115440 Rfb# 000002296 |
| | 04/14 | 2,500,000.00 | WT Seq114163 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15041411194831 Trn#150414114163 Rfb# 000002304 |
| | 04/15 | 200,000.00 | WT Seq135944 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15041510230345 Trn#150415135944 Rfb# 000002312 |
| | 04/17 | 200,000.00 | WT Seq110613 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15041709533351 Trn#150417110613 Rfb# 000002328 |
| | 04/20 | 500,000.00 | WT Seq119707 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15042010590049 Trn#150420119707 Rfb# 000002336 |

Case: 19-04057    Doc# 86-8    Filed: 10/02/20    Entered: 10/02/20 14:29:05    Page 54 of 99
TR_PSC_000138025
CONFIDENTIAL



*Electronic deposits/bank credits* (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 04/21 | 600,000.00 | WT Seq102492 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15042110101381 Trn#150421102492 Rfb# 000002348 |
| | 04/22 | 300,000.00 | WT Seq115863 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15042210174733 Trn#150422115863 Rfb# 000002356 |
| | 04/23 | 100,000.00 | WT Seq116534 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15042311144672 Trn#150423116534 Rfb# 000002360 |
| | 04/27 | 500,000.00 | WT Seq120163 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15042710420857 Trn#150427120163 Rfb# 000002376 |
| | 04/28 | 500,000.00 | WT Seq117463 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15042809574760 Trn#150428117463 Rfb# 000002391 |
| | 04/29 | 890,726.11 | WT Seq133631 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15042911475782 Trn#150429133631 Rfb# 000002396 |
| | 04/30 | 99,175.40 | WT Seq141746 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15043010482096 Trn#150430141746 Rfb# 000002406 |
| | | **$9,031,803.67** | **Total electronic deposits/bank credits** |
| | | **$9,031,803.67** | **Total credits** |

## Debits

### Electronic debits/bank debits

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 04/01 | 283,748.36 | WT Fed#00015 The Northern Trust /Ftr/Bnf=Sentry Insurance A Mutual Company Srf# IN15040113394143 Trn#150401180563 Rfb# 000000100 |
| | 04/01 | 9,121.05 | WT Fed#00722 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 1129800091Jo Trn#150401038346 Rfb# Nonref |
| | 04/01 | 8,134.35 | WT Fed#00429 Banque Internation /Ftr/Bnf=Fesil Sales SA Srf# IN15040110494586 Trn#150401181495 Rfb# 000000099 |
| | 04/03 | 40,000.00 | Withdrawal Made In A Branch/Store |
| | 04/03 | 1,255.88 | ADP Payroll Fees ADP - Fees 150403 108Pg 9312153 Pacific Steel Casting |
| | 04/07 | 212,149.29 | WT Fed#07302 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1229500097Jo Trn#150407033773 Rfb# Nonref |
| | 04/08 | 99,576.80 | WT Fed#07748 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 0713600098Jo Trn#150408031988 Rfb# Nonref |
| | 04/08 | 59,177.48 | WT Fed#08887 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1014100098Jo Trn#150408035672 Rfb# Nonref |
| | 04/08 | 4,738.29 | WT Fed#08880 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1014200098Jo Trn#150408035673 Rfb# Nonref |
| | 04/09 | 31,839.83 | WT Fed#07200 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 0859000099Jo Trn#150409030694 Rfb# Nonref |
| | 04/09 | 1,233.33 | WT Fed#00145 Deutsche Bank /Ftr/Bnf=Fprs Depository Account Srf# IN15040814485315 Trn#150409000258 Rfb# 000000103 |
| | 04/09 | 978.79 | WT Fed#00144 Deutsche Bank /Ftr/Bnf=Fprs Depository Account Srf# IN15040814481510 Trn#150409000255 Rfb# 000000102 |
| | 04/09 | 725.00 | WT Fed#08905 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1216100099Jo Trn#150409035303 Rfb# Nonref |

Case: 19-04057   Doc# 86-8   Filed: 10/02/20   Entered: 10/02/20 14:29:05   Page 55
of 99
TR_FCS_000138026
CONFIDENTIAL



## *Electronic debits/bank debits* (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 04/09 | 3,279.64 | Efboardofequaliz Boe E-File 150408 00056386658 ELF*00021724793*0000000327964*00056386658*2015040 |
| | 04/10 | 10,516.00 | B & L Informatio ACH Debit 150410 4974923961 Pacific Steel Castings |
| | 04/10 | 255.02 | ADP Payroll Fees ADP - Fees 150410 108Pk 9765414 Pacific Steel Casting |
| | 04/10 | 208.36 | ADP Payroll Fees ADP - Fees 150410 108Pg 9765395 Pacific Steel Casting |
| | 04/13 | 4,280.45 | Client Analysis Srvc Chrg 150410 Svc Chge 0315 000004391337029 |
| | 04/13 | 915.00 | Efboardofequaliz Boe E-File 150410 00060557893 ELF*00022037020*0000000091500*00060557893*2015041 |
| | 04/14 | 1,190,700.00 | WT Fed#06538 Illinois National /Ftr/Bnf=Alcast Company Srf# IN15041412233927 Trn#150414148197 Rfb# 000000104 |
| | 04/14 | 648,247.00 | WT Fed#06605 PNC Bank, National /Ftr/Bnf=Speyside Equity Iwire Srf# IN15041412350368 Trn#150414148407 Rfb# 000000107 |
| | 04/14 | 208,072.00 | WT Fed#06563 Jpmorgan Chase Ban /Ftr/Bnf=Jeffrey A Stone OR Jodie Stone Srf# IN15041412334226 Trn#150414148281 Rfb# 000000106 |
| | 04/14 | 109,688.00 | WT Fed#06664 Bank of America, N /Ftr/Bnf=Krishnan Venkatesan Srf# IN15041412412160 Trn#150414148547 Rfb# 000000108 |
| | 04/14 | 104,036.00 | WT Fed#06722 Monroe Bank & Trus /Ftr/Bnf=Eric Wiklendt Srf# IN15041412262593 Trn#150414148671 Rfb# 000000105 |
| | 04/15 | 234,552.35 | WT Fed#00882 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1284500105Jo Trn#150415038692 Rfb# Nonref |
| | 04/15 | 87,918.97 | WT Fed#09401 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 0815600105Jo Trn#150415034170 Rfb# Nonref |
| | 04/15 | 4,641.88 | WT Fed#00875 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1284600105Jo Trn#150415038684 Rfb# Nonref |
| | 04/17 | 5,503.75 | WT Fed#06783 Deutsche Bank /Ftr/Bnf=Fprs Depository Account Srf# IN15041709220945 Trn#150417149006 Rfb# 000000109 |
| | 04/17 | 1,310.28 | ADP Payroll Fees ADP - Fees 150417 108Pg 0022267 Pacific Steel Casting |
| | 04/21 | 25,000.00 | WT Seq119466 Wells Fargo Bank, NA /Bnf=Wfbc Incoming Cash Srf# IN15042113044257 Trn#150421119466 Rfb# 000000110 |
| | 04/22 | 209,632.63 | WT Fed#05123 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1126200112Jo Trn#150422040371 Rfb# Nonref |
| | 04/22 | 75,770.96 | WT Fed#03851 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 0902100112Jo Trn#150422036244 Rfb# Nonref |
| | 04/22 | 3,331.93 | WT Fed#05120 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1126300112Jo Trn#150422040372 Rfb# Nonref |
| | 04/23 | 42,623.23 | WT 150423-090026 China Citic Bank /Bnf=Ningbo World-Link Inteternational Srf# IN15042209350666 Trn#150423090026 Rfb# 000000111 |
| | 04/23 | 27,860.00 | WT 150423-090191 China Everbright Ba /Bnf=Sichuan Y&J Industries CO., Ltd Srf# IN15042209372656 Trn#150423090191 Rfb# 000000112 |
| | 04/23 | 5,109.84 | WT 150423-089234 Bank of China /Bnf=Ningbo Lionway Imp & Exp CO., Ltd Srf# IN15042309322536 Trn#150423089234 Rfb# 000000114 |
| | 04/23 | 4,480.64 | WT Fed#08762 Banque Internation /Ftr/Bnf=Fesil Sales SA Srf# IN15042209382898 Trn#150423090418 Rfb# 000000113 |
| | 04/24 | 10,769.92 | ADP Payroll Fees ADP - Fees 150424 3D8Pg 0387759 Pacific Steel Casting |
| | 04/24 | 2,236.08 | ADP Payroll Fees ADP - Fees 150424 108Pg 0387752 Pacific Steel Casting |
| | 04/24 | 358.88 | ADP Payroll Fees ADP - Fees 150424 108Pk 0387781 Pacific Steel Casting |

Case: 19-04057   Doc# 86-8   Filed: 10/02/20   Entered: 10/02/20 14:29:05   Page 56 of 99



TR_FS_000138027
CONFIDENTIAL



### *Electronic debits/bank debits* (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 04/27 | 17,290.80 | WT 150427-056577 Yinzhou Bank /Bnf=Ningbo Daming Precision Casting CO Srf# IN15042707094424 Trn#150427056577 Rfb# 000000115 |
| | 04/28 | 59,133.84 | WT Fed#08465 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1355900118Jo Trn#150428035673 Rfb# Nonref |
| | 04/29 | 30,356.15 | WT Fed#09336 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 0905500119Jo Trn#150429035206 Rfb# Nonref |
| | 04/29 | 21,734.48 | WT Fed#00887 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1209400119Jo Trn#150429039067 Rfb# Nonref |
| | 04/29 | 8,860.30 | WT Fed#09324 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 0905400119Jo Trn#150429035196 Rfb# Nonref |
| | 04/29 | 50,000.00 | WT Seq117913 Pacific Steel Casting C /Bnf=Pacific Steel Casting CO Srf# IN15042907360415 Trn#150429117913 Rfb# 000000116 |
| | 04/30 | 217,644.16 | WT Fed#04590 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1673400120Jo Trn#150430047475 Rfb# Nonref |
| | 04/30 | 73,545.72 | WT Fed#02461 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 1047600120Jo Trn#150430041353 Rfb# Nonref |
| | 04/30 | 15,419.10 | WT Fed#04803 Bank of China, Los /Ftr/Bnf=China Pacificarbide Inc Srf# IN15043008061475 Trn#150430168605 Rfb# 000000117 |
| | 04/30 | 1,974.18 | WT Fed#04741 Jpmorgan Chase Ban /Ftr/Bnf=Triton Capital Partners Ltd Srf# IN15043008065976 Trn#150430168358 Rfb# 000000118 |
| | 04/30 | 1,633.99 | WT Fed#04579 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1673500120Jo Trn#150430047483 Rfb# Nonref |
| | 04/30 | 7,179.12 | WT Fed#04683 Banque Internation /Ftr/Bnf=Fesil Sales SA Srf# IN15043008074689 Trn#150430168127 Rfb# 000000119 |

| | | **$4,278,749.10** | **Total electronic debits/bank debits** |

### Checks paid

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 202891 | 280.00 | 04/01 | 203243 * | 2,785.37 | 04/07 | 203296 * | 1,595.82 | 04/03 |
| 203071 * | 14.80 | 04/02 | 203246 * | 67,100.00 | 04/09 | 203297 | 4,891.72 | 04/02 |
| 203084 * | 294.30 | 04/03 | 203248 * | 35.01 | 04/02 | 203299 * | 7,805.55 | 04/03 |
| 203189 * | 10,952.42 | 04/06 | 203250 * | 6,036.00 | 04/08 | 203300 | 7,500.00 | 04/01 |
| 203215 * | 4,526.40 | 04/13 | 203254 * | 735.75 | 04/02 | 203303 * | 780.00 | 04/06 |
| 203216 | 795.00 | 04/08 | 203258 * | 2,279.56 | 04/02 | 203305 * | 19,091.39 | 04/07 |
| 203217 | 4,980.00 | 04/01 | 203262 * | 3,391.22 | 04/01 | 203306 | 2,730.00 | 04/08 |
| 203219 * | 1,683.88 | 04/06 | 203263 | 14,815.00 | 04/02 | 203307 | 6,926.92 | 04/09 |
| 203220 | 6,365.29 | 04/01 | 203264 | 1,523.83 | 04/01 | 203308 | 1,460.60 | 04/06 |
| 203221 | 2,874.00 | 04/02 | 203266 * | 526.48 | 04/13 | 203309 | 7,980.92 | 04/07 |
| 203222 | 28,737.12 | 04/02 | 203267 | 22,652.50 | 04/01 | 203310 | 557.50 | 04/13 |
| 203226 * | 32,471.68 | 04/09 | 203270 * | 3,166.67 | 04/08 | 203311 | 2,788.81 | 04/07 |
| 203227 | 15,103.04 | 04/02 | 203271 | 1,872.15 | 04/02 | 203312 | 33,014.08 | 04/07 |
| 203228 | 3,300.00 | 04/03 | 203277 * | 75,465.57 | 04/03 | 203313 | 10,450.90 | 04/07 |
| 203229 | 2,616.00 | 04/03 | 203279 * | 497.28 | 04/01 | 203314 | 2,505.33 | 04/06 |
| 203232 * | 381.50 | 04/02 | 203281 * | 2,620.00 | 04/09 | 203315 | 490.00 | 04/07 |
| 203234 * | 2,355.36 | 04/01 | 203284 * | 14,496.36 | 04/02 | 203316 | 3,727.41 | 04/06 |
| 203235 | 448.43 | 04/01 | 203285 | 126.07 | 04/01 | 203317 | 6,946.76 | 04/07 |
| 203238 * | 413.49 | 04/10 | 203289 * | 10,727.23 | 04/01 | 203318 | 207.10 | 04/15 |
| 203240 * | 777.61 | 04/01 | 203292 * | 2,722.16 | 04/08 | 203319 | 128,275.62 | 04/06 |

Case: 19-04057    Doc# 86-8    Filed: 10/02/20    Entered: 10/02/20 14:29:05    Page 57 of 99

TR_FTS_000138028
CONFIDENTIAL



*Checks paid* (continued)

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 203320 | 9,100.00 | 04/07 | 203371 | 180.00 | 04/16 | 203427 | 4,852.09 | 04/15 |
| 203321 | 6,625.00 | 04/07 | 203372 | 2,791.27 | 04/07 | 203428 | 420.00 | 04/13 |
| 203322 | 429.93 | 04/08 | 203373 | 2,245.74 | 04/02 | 203429 | 642.24 | 04/15 |
| 203323 | 5,162.38 | 04/06 | 203374 | 1,450.00 | 04/09 | 203430 | 717.75 | 04/13 |
| 203324 | 922.23 | 04/07 | 203375 | 895.40 | 04/06 | 203431 | 99.75 | 04/14 |
| 203325 | 3,333.30 | 04/06 | 203376 | 1,765.05 | 04/07 | 203432 | 341.50 | 04/17 |
| 203326 | 16,245.66 | 04/06 | 203377 | 53,333.00 | 04/07 | 203433 | 114.31 | 04/15 |
| 203327 | 3,946.95 | 04/06 | 203378 | 750.00 | 04/28 | 203434 | 10,894.22 | 04/13 |
| 203328 | 2,917.39 | 04/08 | 203379 | 201.34 | 04/10 | 203435 | 1,557.26 | 04/14 |
| 203329 | 3,134.24 | 04/07 | 203380 | 19,481.80 | 04/07 | 203436 | 12,486.37 | 04/13 |
| 203330 | 59,750.00 | 04/09 | 203381 | 2,850.00 | 04/09 | 203437 | 6,250.00 | 04/15 |
| 203331 | 539.55 | 04/07 | 203382 | 2,760.73 | 04/08 | 203438 | 556.32 | 04/21 |
| 203332 | 1,116.00 | 04/06 | 203383 | 20,000.00 | 04/09 | 203439 | 5,493.60 | 04/13 |
| 203333 | 1,013.05 | 04/06 | 203384 | 8,325.75 | 04/08 | 203440 | 427.81 | 04/14 |
| 203334 | 1,748.59 | 04/07 | 203385 | 12,000.00 | 04/07 | 203441 | 15,937.61 | 04/17 |
| 203335 | 240.03 | 04/08 | 203386 | 196.00 | 04/02 | 203442 | 292.17 | 04/13 |
| 203336 | 50.00 | 04/03 | 203387 | 11,055.77 | 04/13 | 203443 | 1,620.00 | 04/17 |
| 203337 | 10,502.00 | 04/10 | 203389 * | 552.48 | 04/08 | 203444 | 13,346.94 | 04/13 |
| 203338 | 1,908.80 | 04/08 | 203390 | 9,134.00 | 04/09 | 203445 | 32,727.25 | 04/13 |
| 203339 | 957.60 | 04/06 | 203391 | 6,160.00 | 04/06 | 203446 | 7,756.54 | 04/13 |
| 203340 | 618.70 | 04/06 | 203392 | 20,500.00 | 04/06 | 203447 | 8,361.26 | 04/17 |
| 203341 | 336,837.85 | 04/06 | 203396 * | 505,006.76 | 04/13 | 203448 | 4,663.00 | 04/16 |
| 203342 | 14,269.92 | 04/06 | 203397 | 30,484.22 | 04/10 | 203449 | 7,582.22 | 04/13 |
| 203343 | 6,534.00 | 04/07 | 203398 | 9,114.57 | 04/13 | 203450 | 980.24 | 04/14 |
| 203344 | 38,171.11 | 04/06 | 203399 | 27,767.79 | 04/13 | 203451 | 11,612.80 | 04/17 |
| 203345 | 8,264.71 | 04/06 | 203400 | 2,283.56 | 04/14 | 203452 | 3,544.25 | 04/14 |
| 203347 * | 221.31 | 04/07 | 203401 | 3,256.51 | 04/13 | 203453 | 24,385.33 | 04/22 |
| 203348 | 15,084.28 | 04/07 | 203402 | 48.99 | 04/13 | 203454 | 194.20 | 04/14 |
| 203349 | 1,712.12 | 04/08 | 203403 | 4,329.88 | 04/08 | 203455 | 3,533.12 | 04/10 |
| 203350 | 1,769.85 | 04/09 | 203404 | 2,508.00 | 04/08 | 203456 | 52.30 | 04/15 |
| 203351 | 1,915.00 | 04/09 | 203405 | 363.43 | 04/09 | 203457 | 192.35 | 04/15 |
| 203352 | 7,170.29 | 04/06 | 203406 | 895.57 | 04/13 | 203458 | 98.97 | 04/15 |
| 203353 | 2,468.20 | 04/07 | 203408 * | 173.46 | 04/13 | 203459 | 4,562.65 | 04/15 |
| 203354 | 11,593.99 | 04/06 | 203409 | 4,022.59 | 04/14 | 203460 | 1,183.66 | 04/15 |
| 203355 | 8,033.02 | 04/13 | 203410 | 1,280.00 | 04/14 | 203461 | 5.58 | 04/16 |
| 203356 | 4,929.22 | 04/07 | 203411 | 581.48 | 04/14 | 203462 | 6,862.25 | 04/13 |
| 203357 | 14,152.37 | 04/03 | 203412 | 1,725.00 | 04/20 | 203463 | 5,013.23 | 04/13 |
| 203358 | 4,204.14 | 04/08 | 203413 | 564.08 | 04/14 | 203464 | 35,514.76 | 04/14 |
| 203359 | 1,183.66 | 04/08 | 203414 | 13,551.65 | 04/13 | 203465 | 129.95 | 04/14 |
| 203360 | 81.69 | 04/09 | 203416 * | 3,311.25 | 04/14 | 203466 | 4,728.22 | 04/14 |
| 203361 | 381.13 | 04/10 | 203417 | 4,121.83 | 04/14 | 203467 | 11,265.70 | 04/13 |
| 203362 | 1,227.99 | 04/06 | 203418 | 5,108.35 | 04/14 | 203468 | 562.00 | 04/13 |
| 203363 | 3,489.20 | 04/06 | 203419 | 1,792.61 | 04/14 | 203469 | 1,040.30 | 04/15 |
| 203364 | 619.07 | 04/08 | 203420 | 3,000.00 | 04/14 | 203470 | 10,682.00 | 04/14 |
| 203365 | 1,925.21 | 04/07 | 203421 | 2,539.05 | 04/17 | 203471 | 125.00 | 04/15 |
| 203366 | 1,523.08 | 04/06 | 203422 | 2,520.00 | 04/14 | 203472 | 1,332.53 | 04/14 |
| 203367 | 10,480.00 | 04/09 | 203423 | 477,079.40 | 04/21 | 203473 | 7,782.93 | 04/14 |
| 203368 | 3,339.68 | 04/06 | 203424 | 127,670.00 | 04/17 | 203474 | 1,149.50 | 04/13 |
| 203369 | 4,350.00 | 04/07 | 203425 | 194,138.99 | 04/13 | 203475 | 8,333.33 | 04/15 |
| 203370 | 164.16 | 04/07 | 203426 | 2,250.00 | 04/14 | 203476 | 330.23 | 04/13 |

Case: 19-04057   Doc# 86-8   Filed: 10/02/20   Entered: 10/02/20 14:29:05   Page 58
of 99

TR_FS_000138029
CONFIDENTIAL



*Checks paid* (continued)

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 203477 | 6,075.00 | 04/13 | 203530 | 1,455.29 | 04/22 | 203582 | 1,251.90 | 04/28 |
| 203479 * | 750.00 | 04/28 | 203531 | 39,810.83 | 04/22 | 203583 | 857.82 | 04/30 |
| 203480 | 13,837.66 | 04/13 | 203532 | 14,251.96 | 04/20 | 203584 | 3,924.31 | 04/28 |
| 203481 | 4,854.13 | 04/13 | 203533 | 66,791.18 | 04/20 | 203586 * | 832.82 | 04/29 |
| 203482 | 13,022.00 | 04/20 | 203534 | 10,946.65 | 04/20 | 203587 | 1,987.09 | 04/27 |
| 203483 | 6,750.00 | 04/13 | 203535 | 8,585.12 | 04/27 | 203588 | 11,110.00 | 04/27 |
| 203484 | 895.56 | 04/14 | 203536 | 2,932.95 | 04/21 | 203592 * | 9,290.20 | 04/29 |
| 203485 | 529.20 | 04/15 | 203537 | 7,075.54 | 04/20 | 203593 | 1,155.96 | 04/27 |
| 203486 | 2,603.93 | 04/13 | 203538 | 1,188.75 | 04/21 | 203594 | 318.28 | 04/27 |
| 203487 | 20.19 | 04/14 | 203539 | 25,605.12 | 04/22 | 203595 | 3,775.52 | 04/27 |
| 203488 | 7,310.00 | 04/09 | 203540 | 19,929.60 | 04/21 | 203597 * | 210.24 | 04/29 |
| 203489 | 11,833.17 | 04/16 | 203541 | 26,092.57 | 04/21 | 203598 | 476.43 | 04/29 |
| 203490 | 739,254.00 | 04/27 | 203542 | 50,254.46 | 04/20 | 203599 | 14,193.50 | 04/29 |
| 203492 * | 1,706.00 | 04/21 | 203543 | 2,875.88 | 04/17 | 203600 | 3,550.00 | 04/28 |
| 203493 | 15,958.59 | 04/21 | 203544 | 7,206.14 | 04/22 | 203601 | 2,208.42 | 04/28 |
| 203494 | 5,741.21 | 04/21 | 203545 | 1,023.68 | 04/23 | 203602 | 46,766.14 | 04/29 |
| 203495 | 11,763.85 | 04/21 | 203546 | 8,302.31 | 04/20 | 203603 | 1,673.74 | 04/27 |
| 203496 | 4,403.17 | 04/21 | 203547 | 7,346.15 | 04/21 | 203606 * | 160.00 | 04/27 |
| 203497 | 3,349.00 | 04/23 | 203548 | 5,742.90 | 04/20 | 203607 | 3,900.00 | 04/29 |
| 203498 | 23,722.93 | 04/21 | 203549 | 1,939.72 | 04/21 | 203608 | 286.44 | 04/27 |
| 203500 * | 3,010.15 | 04/20 | 203550 | 899.48 | 04/24 | 203609 | 1,275.00 | 04/29 |
| 203501 | 17,360.00 | 04/22 | 203551 | 429.50 | 04/21 | 203610 | 3,325.84 | 04/28 |
| 203502 | 1,995.25 | 04/22 | 203552 | 956.30 | 04/24 | 203611 | 453.33 | 04/28 |
| 203503 | 11,996.40 | 04/20 | 203553 | 2,800.00 | 04/22 | 203612 | 1,000.00 | 04/29 |
| 203504 | 381.50 | 04/23 | 203554 | 392.77 | 04/20 | 203613 | 526.48 | 04/29 |
| 203505 | 35,492.26 | 04/20 | 203555 | 7,415.92 | 04/20 | 203614 | 2,344.97 | 04/27 |
| 203506 | 650.00 | 04/24 | 203556 | 147,744.69 | 04/20 | 203615 | 54,984.18 | 04/27 |
| 203507 | 3,250.00 | 04/23 | 203557 | 897.66 | 04/21 | 203616 | 6,974.13 | 04/27 |
| 203508 | 855.97 | 04/22 | 203558 | 5,245.08 | 04/20 | 203617 | 1,608.30 | 04/30 |
| 203509 | 15,156.27 | 04/24 | 203559 | 4,249.52 | 04/21 | 203618 | 6,811.65 | 04/24 |
| 203510 | 674.10 | 04/21 | 203560 | 6,300.81 | 04/20 | 203619 | 1,400.00 | 04/28 |
| 203511 | 384.24 | 04/21 | 203561 | 11,790.00 | 04/21 | 203620 | 11,515.86 | 04/28 |
| 203512 | 237.40 | 04/23 | 203562 | 800.00 | 04/20 | 203621 | 4,273.20 | 04/30 |
| 203513 | 17,940.00 | 04/22 | 203563 | 800.00 | 04/20 | 203622 | 17,055.38 | 04/27 |
| 203514 | 6,015.77 | 04/21 | 203564 | 9,374.05 | 04/17 | 203625 * | 7,613.83 | 04/27 |
| 203515 | 3,683.97 | 04/22 | 203565 | 806.00 | 04/21 | 203628 * | 83.62 | 04/28 |
| 203516 | 309.21 | 04/22 | 203567 * | 1,706.00 | 04/27 | 203629 | 145.85 | 04/28 |
| 203517 | 377.62 | 04/21 | 203568 | 6,835.17 | 04/27 | 203630 | 73.22 | 04/28 |
| 203518 | 8,784.70 | 04/22 | 203569 | 490.51 | 04/27 | 203631 | 181.31 | 04/28 |
| 203519 | 787.96 | 04/21 | 203570 | 26,312.92 | 04/28 | 203632 | 5,282.60 | 04/27 |
| 203520 | 1,275.00 | 04/20 | 203571 | 3,788.00 | 04/27 | 203633 | 398.34 | 04/27 |
| 203521 | 1,563.32 | 04/22 | 203573 * | 16,995.32 | 04/27 | 203634 | 44.39 | 04/27 |
| 203522 | 20,788.74 | 04/22 | 203574 | 3,182.59 | 04/27 | 203635 | 165.21 | 04/28 |
| 203523 | 3,059.71 | 04/20 | 203575 | 9,044.98 | 04/28 | 203636 | 103.52 | 04/28 |
| 203524 | 2,578.70 | 04/16 | 203576 | 41,658.43 | 04/29 | 203637 | 6,923.60 | 04/27 |
| 203525 | 1,225.83 | 04/20 | 203577 | 9,888.06 | 04/27 | 203638 | 509.01 | 04/27 |
| 203526 | 2,917.27 | 04/20 | 203578 | 2,040.00 | 04/30 | 203639 | 1,740.00 | 04/28 |
| 203527 | 2,819.50 | 04/22 | 203579 | 13,800.95 | 04/29 | 203640 | 156.74 | 04/29 |
| 203528 | 1,193.00 | 04/22 | 203580 | 2,381.61 | 04/28 | 203641 | 7,315.21 | 04/30 |
| 203529 | 15,306.50 | 04/21 | 203581 | 1,962.00 | 04/28 | 203642 | 224.98 | 04/29 |

Case: 19-04057    Doc# 86-8    Filed: 10/02/20    Entered: 10/02/20 14:29:05    Page 59
of 99

TR_FTS_000138030
CONFIDENTIAL



---

*Checks paid* (continued)

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|--------|--------|------|--------|--------|------|--------|--------|------|
| 203643 | 395.51 | 04/28 | 203653 | 28,296.24 | 04/28 | 203662 | 186.20 | 04/23 |
| 203644 | 2,900.00 | 04/28 | 203654 | 521.76 | 04/28 | 203663 | 3,080.00 | 04/27 |
| 203646 * | 429.50 | 04/28 | 203655 | 3,968.56 | 04/27 | 203681 * | 2,170.85 | 04/30 |
| 203647 | 392.00 | 04/23 | 203656 | 38,500.55 | 04/28 | 203720 * | 176,493.73 | 04/30 |
| 203648 | 3,125.50 | 04/23 | 203658 * | 1,324.24 | 04/27 | 203721 | 21,304.63 | 04/30 |
| 203650 * | 20.00 | 04/27 | 203659 | 1,320.00 | 04/23 | 203723 * | 13,133.30 | 04/30 |
| 203651 | 1,819.36 | 04/27 | 203660 | 33,099.09 | 04/27 | 203762 * | 3,143.14 | 04/30 |
| 203652 | 762.17 | 04/27 | 203661 | 11,344.52 | 04/27 | | | |
| | **$5,436,451.01** | | **Total checks paid** | | | | | |

* Gap in check sequence.

| | **$9,715,200.11** | **Total debits** |
|---|---|---|

---

## Daily ledger balance summary

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 03/31 | 1,477,718.47 | 04/10 | 1,534,991.05 | 04/22 | 877,489.42 |
| 04/01 | 1,408,460.02 | 04/13 | 979,464.24 | 04/23 | 883,350.43 |
| 04/02 | 1,726,133.28 | 04/14 | 1,122,515.84 | 04/24 | 786,955.08 |
| 04/03 | 1,796,958.41 | 04/15 | 967,219.14 | 04/27 | 317,500.06 |
| 04/06 | 1,722,870.30 | 04/16 | 945,438.69 | 04/28 | 598,943.38 |
| 04/07 | 1,280,055.67 | 04/17 | 958,292.51 | 04/29 | 1,244,883.08 |
| 04/08 | 1,310,575.77 | 04/20 | 1,111,861.39 | 04/30 | 794,322.03 |
| 04/09 | 1,491,040.00 | 04/21 | 1,045,455.41 | | |
| | **Average daily ledger balance** | **$1,168,638.97** | | | |

©2010 Wells Fargo Bank, N.A.
All rights reserved. Member FDIC.

Case: 19-04057   Doc# 86-8   Filed: 10/02/20   Entered: 10/02/20 14:29:05   Page 60
of 99

TR_FS_000138031
CONFIDENTIAL

# WellsOne® Account



PACIFIC STEEL CASTING COMPANY LLC      W0
GENERAL ACCOUNT
1333 2ND ST
BERKELEY CA 94710-1317

**Questions?**

Call your Customer Service Officer or Client Services
**1-800-AT WELLS** (1-800-289-3557)
5:00 AM TO 6:00 PM Pacific Time Monday - Friday

*Online: wellsfargo.com*

*Write:* Wells Fargo Bank, N.A. (182)
      PO Box 63020
      San Francisco, CA 94163

## Account summary

### WellsOne® Account

| Account number | Beginning balance | Total credits | Total debits | Ending balance |
|---|---|---|---|---|
| 4391337029 | $187,464.84 | $7,086,300.17 | -$7,248,765.01 | $25,000.00 |

## Credits

### Electronic deposits/bank credits

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 06/01 | 150,000.00 | WT Seq147588 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15060111053041 Trn#150601147588 Rfb# 000002621 |
| | 06/02 | 1,500,000.00 | WT Seq141399 Wells Fargo Bank, NA /Org=Pacific Steel Casting Company LLC Srf# Ec15060273492889 Trn#150602141399 Rfb# 7580418 |
| | 06/02 | 6,789.16 | Fidelity Hist Rtn 150602 70295 002 Pacific Steel Casting |
| | 06/02 | 32,216.24 | ZBA Funding Account Transfer From 4391337037 |
| | 06/03 | 905,138.89 | WT Seq117843 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15060309382513 Trn#150603117843 Rfb# 000002655 |
| | 06/03 | 6,789.16 | WT Seq147799 WF Return Wires In Proc /Org= Srf# 2015060200117830 Trn#150603147799 Rfb# |
| | 06/04 | 231,038.77 | WT Seq110580 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15060409554621 Trn#150604110580 Rfb# 000002659 |
| | 06/05 | 110,466.20 | WT Seq114748 Siena Funding LLC /Org=Siena Funding LLC Srf# IN15060510080055 Trn#150605114748 Rfb# 000002671 |
| | 06/10 | 173,810.72 | Wfcf Loan Sweep Credit |
| | 06/11 | 1,458.36 | WT Seq#95360 Wells Fargo Bank, NA /Org=Pacific Steel Casting Company LLC Srf# Ec15061117887193 Trn#150611095360 Rfb# 7610604 |
| | 06/11 | 755,639.32 | Wfcf Loan Sweep Credit |
| | 06/12 | 479,378.46 | Wfcf Loan Sweep Credit |
| | 06/15 | 208,397.24 | Wfcf Loan Sweep Credit |
| | 06/16 | 454,697.75 | Wfcf Loan Sweep Credit |
| | 06/17 | 370,509.48 | Wfcf Loan Sweep Credit |
| | 06/18 | 36,609.71 | Wfcf Loan Sweep Credit |
| | 06/19 | 67,822.23 | Wfcf Loan Sweep Credit |

Case: 19-04057    Doc# 86-8    Filed: 10/02/20    Entered: 10/02/20 14:29:05    Page 61 of 99
TR_FS_000138038
CONFIDENTIAL



*Electronic deposits/bank credits* (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 06/22 | 270,606.77 | Wfcf Loan Sweep Credit |
| | 06/23 | 110,267.34 | Wfcf Loan Sweep Credit |
| | 06/24 | 396,160.91 | Wfcf Loan Sweep Credit |
| | 06/25 | 85,354.05 | Wfcf Loan Sweep Credit |
| | 06/26 | 93,889.17 | Wfcf Loan Sweep Credit |
| | 06/29 | 136,174.73 | WT Seq108081 Wells Fargo Bank, NA /Org=Pacific Steel Casting Company LLC Srf# Ec15062973566717 Trn#150629108081 Rfb# 7663823 |
| | 06/29 | 224,193.71 | Wfcf Loan Sweep Credit |
| | 06/30 | 211,595.70 | WT Seq157699 Wells Fargo Bank, NA /Org=Pacific Steel Casting Company LLC Srf# Ec15063081293954 Trn#150630157699 Rfb# 7670878 |
| | 06/30 | 67,296.10 | Wfcf Loan Sweep Credit |
| | | **$7,086,300.17** | **Total electronic deposits/bank credits** |
| | | **$7,086,300.17** | **Total credits** |

# Debits

## Electronic debits/bank debits

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 06/01 | 6,789.16 | Fidelity Fprs 150529 70295 002 401K (Qmx) Account 70295 002 |
| | 06/03 | 165,398.79 | WT Fed#00056 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1114600154Jo Trn#150603035371 Rfb# Nonref |
| | 06/03 | 54,995.61 | WT Fed#08493 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 0891200154Jo Trn#150603030541 Rfb# Nonref |
| | 06/03 | 2,790.14 | WT Fed#00053 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1114700154Jo Trn#150603035368 Rfb# Nonref |
| | 06/04 | 496,125.00 | WT Fed#00309 Illinois National /Ftr/Bnf=Alcast Company Srf# IN15060412420363 Trn#150604128204 Rfb# 000000142 |
| | 06/04 | 461,396.25 | WT Fed#00298 PNC Bank, National /Ftr/Bnf=Speyside Equity Iwire Srf# IN15060412450689 Trn#150604128172 Rfb# 000000143 |
| | 06/04 | 116,250.00 | WT Fed#00243 Jpmorgan Chase Ban /Ftr/Bnf=Jeffrey A Stone OR Jodie Stone Srf# IN15060413025160 Trn#150604128023 Rfb# 000000146 |
| | 06/04 | 65,332.50 | WT Fed#00268 Bank of America, N /Ftr/Bnf=Krishnan Venkatesan Srf# IN15060412583859 Trn#150604128095 Rfb# 000000145 |
| | 06/04 | 58,125.00 | WT Fed#00290 Monroe Bank & Trus /Ftr/Bnf=Eric Wiklendt Srf# IN15060412502487 Trn#150604128147 Rfb# 000000144 |
| | 06/05 | 80,000.00 | WT Fed#02653 Jpmorgan Chase Ban /Ftr/Bnf=Triton Capital Partners Ltd Srf# IN15060511581534 Trn#150605134117 Rfb# 000000148 |
| | 06/05 | 12,000.00 | WT Fed#01001 Charles Schwab Ban /Ftr/Bnf=Douglas M Lee Srf# IN15060512321730 Trn#150605128759 Rfb# 000000150 |
| | 06/05 | 7,000.00 | WT Fed#08010 Charles Schwab Ban /Ftr/Bnf=Douglas M Lee Srf# IN15060508023242 Trn#150605061635 Rfb# 000000147 |
| | 06/05 | 500,000.00 | WT Seq134179 Wells Fargo Bank, NA /Bnf=Wfbc Incoming Cash Srf# IN15060512001693 Trn#150605134170 Rfb# 000000149 |
| | 06/05 | 1,039.73 | ADP Payroll Fees ADP - Fees 150605 108Pg 2897536 Pacific Steel Casting |
| | 06/05 | 260.08 | ADP Payroll Fees ADP - Fees 150605 108Pk 2897559 Pacific Steel Casting |

Case: 19-04057   Doc# 86-8   Filed: 10/02/20   Entered: 10/02/20 14:29:05   Page 62 of 99

TR_FIS_000138039
CONFIDENTIAL



## Electronic debits/bank debits (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 06/05 | 1,499.71 | ZBA Funding Account Transfer to 4391337037 |
| | 06/10 | 145,526.10 | WT Fed#09007 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1266200161Jo Trn#150610034536 Rfb# Nonref |
| | 06/10 | 52,745.31 | WT Fed#07507 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 1013500161Jo Trn#150610030271 Rfb# Nonref |
| | 06/10 | 2,681.89 | WT Fed#09002 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1266300161Jo Trn#150610034534 Rfb# Nonref |
| | 06/10 | 10,516.00 | B & L Informatio ACH Debit 150610 4977716957 Pacific Steel Castings |
| | 06/10 | 2,063.00 | Efboardofequaliz Boe E-File 150609 00057447254 ELF*00022576140*0000000206300*00057447254*2015060 |
| | 06/10 | 684.76 | Efboardofequaliz Boe E-File 150609 00057559459 ELF*00022663006*0000000068476*00057559459*2015060 |
| | 06/11 | 4,013.67 | Client Analysis Srvc Chrg 150610 Svc Chge 0515 000004391337029 |
| | 06/11 | 64,950.54 | WT Fed#09137 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1481500162Jo Trn#150611033990 Rfb# Nonref |
| | 06/12 | 320,937.09 | WT Fed#06023 The Northern Trust /Ftr/Bnf=Sentry Insurance A Mutual Company Srf# IN15061107562133 Trn#150612140457 Rfb# 000000151 |
| | 06/12 | 33,194.93 | WT Fed#09728 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 0880400163Jo Trn#150612033530 Rfb# Nonref |
| | 06/12 | 725.00 | WT Fed#00737 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1359900163Jo Trn#150612036489 Rfb# Nonref |
| | 06/12 | 789.25 | ADP Payroll Fees ADP - Fees 150612 108Pg 3165625 Pacific Steel Casting |
| | 06/12 | 18,439.25 | ZBA Funding Account Transfer to 4391337037 |
| | 06/15 | 12,350.35 | ZBA Funding Account Transfer to 4391337037 |
| | 06/16 | 3,387.00 | ZBA Funding Account Transfer to 4391337037 |
| | 06/17 | 131,839.03 | WT Fed#09252 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 0965500168Jo Trn#150617032821 Rfb# Nonref |
| | 06/17 | 61,762.50 | WT Fed#08006 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 0748100168Jo Trn#150617028860 Rfb# Nonref |
| | 06/17 | 1,163.64 | WT Fed#09251 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 0965600168Jo Trn#150617032823 Rfb# Nonref |
| | 06/17 | 1,083.23 | ZBA Funding Account Transfer to 4391337037 |
| | 06/18 | 546.29 | Superior Press Print Chrg Jun 18 J3125644DD00000 * *1*The Chexpress Cx30 Is The |
| | 06/18 | 6,789.16 | WT Fed#06979 Deutsche Bank /Ftr/Bnf=Fprs Depository Account Srf# IN15061813461304 Trn#150618143968 Rfb# 000000154 |
| | 06/18 | 6,060.16 | WT Fed#08821 Deutsche Bank /Ftr/Bnf=Fprs Depository Account Srf# IN15061810013069 Trn#150618119233 Rfb# 000000152 |
| | 06/18 | 967.18 | WT Fed#08833 Deutsche Bank /Ftr/Bnf=Fprs Depository Account Srf# IN15061810035806 Trn#150618119259 Rfb# 000000153 |
| | 06/18 | 1,726.02 | ZBA Funding Account Transfer to 4391337037 |
| | 06/19 | 1,853.37 | ADP Payroll Fees ADP - Fees 150619 108Pg 3463634 Pacific Steel Casting |
| | 06/19 | 264.19 | ADP Payroll Fees ADP - Fees 150619 108Pk 3463659 Pacific Steel Casting |
| | 06/19 | 6,651.15 | ZBA Funding Account Transfer to 4391337037 |
| | 06/22 | 2,576.86 | ZBA Funding Account Transfer to 4391337037 |
| | 06/23 | 213.83 | ZBA Funding Account Transfer to 4391337037 |

Case: 19-04057    Doc# 86-8    Filed: 10/02/20    Entered: 10/02/20 14:29:05    Page 63
of 99
TR_FS_000138040
CONFIDENTIAL



## Electronic debits/bank debits (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 06/24 | 140,614.76 | WT Fed#08526 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1415900175Jo Trn#150624032663 Rfb# Nonref |
| | 06/24 | 50,568.37 | WT Fed#07036 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 1164000175Jo Trn#150624028257 Rfb# Nonref |
| | 06/24 | 2,171.46 | WT Fed#08525 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1416000175Jo Trn#150624032666 Rfb# Nonref |
| | 06/24 | 60.00 | ZBA Funding Account Transfer to 4391337037 |
| | 06/25 | 42,060.80 | WT 150625-092218 China Citic Bank /Bnf=Ningbo World-Link Inteternational Srf# IN15062409062874 Trn#150625092218 Rfb# 000000156 |
| | 06/25 | 13,346.40 | WT 150625-092147 Bank of China /Bnf=Ningbo Lionway Imp & Exp CO., Ltd Srf# IN15062409031275 Trn#150625092147 Rfb# 000000155 |
| | 06/25 | 7,209.82 | ZBA Funding Account Transfer to 4391337037 |
| | 06/26 | 62,557.03 | WT Fed#00687 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1282000177Jo Trn#150626038368 Rfb# Nonref |
| | 06/26 | 9,957.22 | ADP Payroll Fees ADP - Fees 150626 3D8Pg 3788182 Pacific Steel Casting |
| | 06/26 | 770.31 | ADP Payroll Fees ADP - Fees 150626 108Pg 3788176 Pacific Steel Casting |
| | 06/26 | 8,947.37 | ZBA Funding Account Transfer to 4391337037 |
| | 06/29 | 31,681.77 | WT Fed#08952 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Srf# 0969300180Jo Trn#150629039441 Rfb# Nonref |
| | 06/29 | 6,048.91 | WT Fed#05515 Deutsche Bank /Ftr/Bnf=Fprs Depository Account Srf# IN15062913443325 Trn#150629175580 Rfb# 000000157 |
| | 06/29 | 3,984.81 | WT Fed#05824 Charles Schwab Ban /Ftr/Bnf=Douglas M Lee Srf# IN15062913470222 Trn#150629176671 Rfb# 000000160 |
| | 06/29 | 879.65 | WT Fed#05589 Deutsche Bank /Ftr/Bnf=Fprs Depository Account Srf# IN15062913450418 Trn#150629176671 Rfb# 000000158 |
| | 06/29 | 725.00 | WT Fed#00830 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1652100180Jo Trn#150629044842 Rfb# Nonref |
| | 06/29 | 9,512.44 | WT Fed#06266 Banque Internation /Ftr/Bnf=Fesil Sales SA Srf# IN15062913463433 Trn#150629178007 Rfb# 000000159 |
| | 06/29 | 1,974.67 | ZBA Funding Account Transfer to 4391337037 |
| | 06/30 | 125,364.91 | WT Fed#07808 Jpmorgan Chase Ban /Drw/Bnf=ADP Tax Services Inc Wire Impound Srf# 1462400181Jo Trn#150630051827 Rfb# Nonref |
| | 06/30 | 1,071.50 | ZBA Funding Account Transfer to 4391337037 |
| | | **$3,445,009.92** | **Total electronic debits/bank debits** |

## Checks paid

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 203590 | 467.50 | 06/26 | 203965 | 17,242.14 | 06/08 | 203980 | 727.62 | 06/02 |
| 203626 * | 4,216.61 | 06/09 | 203967 * | 35.00 | 06/05 | 203981 | 3,262.50 | 06/04 |
| 203750 * | 8,333.33 | 06/01 | 203968 | 1,749.83 | 06/02 | 203982 | 316.48 | 06/08 |
| 203849 * | 8,333.33 | 06/01 | 203969 | 13,179.10 | 06/06 | 203983 | 4,522.01 | 06/01 |
| 203957 * | 12,722.25 | 06/05 | 203970 | 2,271.41 | 06/09 | 203984 | 15,508.56 | 06/05 |
| 203958 | 357.51 | 06/08 | 203973 * | 228.44 | 06/08 | 203985 | 5,379.96 | 06/08 |
| 203959 | 1,706.00 | 06/08 | 203974 | 126.00 | 06/08 | 203986 | 4,211.63 | 06/08 |
| 203960 | 3,535.69 | 06/11 | 203975 | 70,214.55 | 06/08 | 203987 | 812.52 | 06/08 |
| 203961 | 1,339.19 | 06/08 | 203977 * | 22,500.00 | 06/05 | 203988 | 1,017.70 | 06/08 |
| 203962 | 26,869.69 | 06/05 | 203978 | 634.52 | 06/08 | 203989 | 3,448.67 | 06/08 |
| 203964 * | 1,976.91 | 06/08 | 203979 | 3,701.01 | 06/12 | 203991 * | 13,855.20 | 06/08 |

Case: 19-04057    Doc# 86-8    Filed: 10/02/20    Entered: 10/02/20 14:29:05    Page 64 of 99

TR_FTS_000138041
CONFIDENTIAL



## *Checks paid* (continued)

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 203992 | 6,843.76 | 06/02 | 204060 | 912.20 | 06/08 | 204110 | 1,525.00 | 06/05 |
| 203993 | 2,362.75 | 06/05 | 204061 | 5,250.00 | 06/08 | 204111 | 2,352.54 | 06/12 |
| 203995 * | 613.75 | 06/08 | 204062 | 6,375.49 | 06/12 | 204112 | 429.50 | 06/09 |
| 203997 * | 3,650.00 | 06/09 | 204063 | 1,002.40 | 06/08 | 204113 | 1,182.93 | 06/08 |
| 204001 * | 2,508.51 | 06/05 | 204064 | 4,887.32 | 06/08 | 204114 | 81.97 | 06/10 |
| 204003 * | 1,400.00 | 06/08 | 204065 | 3,500.00 | 06/04 | 204115 | 410.02 | 06/03 |
| 204005 * | 6,738.58 | 06/05 | 204066 | 6,327.65 | 06/05 | 204116 | 18,770.70 | 06/08 |
| 204006 | 1,505.20 | 06/05 | 204067 | 1,810.04 | 06/04 | 204117 | 1,425.00 | 06/05 |
| 204007 | 1,992.56 | 06/09 | 204068 | 488.50 | 06/12 | 204119 * | 12,310.01 | 06/08 |
| 204008 | 14,052.41 | 06/09 | 204069 | 877.04 | 06/05 | 204120 | 1,139.15 | 06/08 |
| 204009 | 603.00 | 06/08 | 204070 | 8,227.42 | 06/08 | 204121 | 5,119.39 | 06/08 |
| 204010 | 2,475.00 | 06/04 | 204071 | 3,682.78 | 06/08 | 204122 | 4,500.75 | 06/08 |
| 204011 | 20,025.60 | 06/08 | 204072 | 17,332.74 | 06/08 | 204123 | 524.15 | 06/08 |
| 204012 | 11,887.98 | 06/08 | 204073 | 800.00 | 06/08 | 204124 | 7,500.00 | 06/08 |
| 204013 | 17,086.59 | 06/08 | 204074 | 1,724.63 | 06/08 | 204125 | 7,357.64 | 06/08 |
| 204016 * | 798.74 | 06/10 | 204075 | 1,800.00 | 06/17 | 204127 * | 6,160.00 | 06/10 |
| 204019 * | 3,454.20 | 06/04 | 204076 | 85.31 | 06/08 | 204128 | 2,059.01 | 06/08 |
| 204020 | 283.71 | 06/08 | 204077 | 6,612.62 | 06/08 | 204129 | 7,592.08 | 06/05 |
| 204021 | 7,260.20 | 06/09 | 204078 | 2,954.94 | 06/10 | 204131 * | 6,328.78 | 06/11 |
| 204023 * | 1,117.57 | 06/05 | 204079 | 1,354.75 | 06/15 | 204132 | 2,292.36 | 06/11 |
| 204024 | 410.63 | 06/04 | 204080 | 19,132.26 | 06/09 | 204133 | 3,176.39 | 06/16 |
| 204025 | 1,454.98 | 06/08 | 204081 | 1,950.00 | 06/02 | 204134 | 3,643.88 | 06/10 |
| 204026 | 850.16 | 06/05 | 204082 | 1,338.04 | 06/12 | 204135 | 2,745.28 | 06/10 |
| 204028 * | 3,838.00 | 06/08 | 204083 | 1,899.05 | 06/02 | 204136 | 15,711.85 | 06/12 |
| 204029 | 2,300.00 | 06/04 | 204084 | 2,040.36 | 06/03 | 204137 | 731.14 | 06/11 |
| 204030 | 22,535.40 | 06/09 | 204085 | 265.01 | 06/08 | 204138 | 2,729.73 | 06/12 |
| 204031 | 6,789.00 | 06/05 | 204086 | 910.88 | 06/08 | 204139 | 253.28 | 06/12 |
| 204032 | 429.50 | 06/08 | 204087 | 2,847.00 | 06/08 | 204140 | 84,725.63 | 06/11 |
| 204033 | 850.82 | 06/08 | 204088 | 2,930.00 | 06/05 | 204141 | 427.76 | 06/11 |
| 204037 * | 750.00 | 06/15 | 204089 | 94.38 | 06/04 | 204142 | 227.08 | 06/12 |
| 204038 | 15,149.88 | 06/08 | 204090 | 452.85 | 06/11 | 204143 | 751.63 | 06/12 |
| 204040 * | 2,802.32 | 06/05 | 204091 | 10,102.76 | 06/05 | 204144 | 1,277.70 | 06/11 |
| 204041 | 2,600.00 | 06/08 | 204092 | 104,085.34 | 06/04 | 204145 | 29,483.20 | 06/11 |
| 204043 * | 1,438.00 | 06/11 | 204093 | 11,092.59 | 06/02 | 204146 | 7,933.34 | 06/09 |
| 204044 | 2,165.00 | 06/05 | 204094 | 483.99 | 06/04 | 204147 | 308.27 | 06/15 |
| 204045 | 830.02 | 06/16 | 204095 | 930.16 | 06/09 | 204148 | 1,069.66 | 06/11 |
| 204046 | 9,058.40 | 06/08 | 204096 | 4,459.63 | 06/10 | 204149 | 672.32 | 06/10 |
| 204047 | 8,843.00 | 06/08 | 204097 | 15,462.66 | 06/11 | 204150 | 6,074.46 | 06/12 |
| 204048 | 720.00 | 06/15 | 204098 | 3,062.70 | 06/30 | 204151 | 2,075.03 | 06/12 |
| 204049 | 3,836.00 | 06/09 | 204099 | 11,482.58 | 06/01 | 204152 | 5,335.62 | 06/11 |
| 204050 | 644.14 | 06/16 | 204100 | 231.85 | 06/08 | 204153 | 30,030.64 | 06/11 |
| 204051 | 22,097.44 | 06/08 | 204101 | 3,670.80 | 06/05 | 204154 | 1,890.00 | 06/12 |
| 204052 | 551.25 | 06/05 | 204102 | 21,360.00 | 06/09 | 204155 | 2,133.80 | 06/12 |
| 204053 | 6,898.50 | 06/02 | 204103 | 2,315.00 | 06/08 | 204156 | 2,491.59 | 06/11 |
| 204054 | 2,814.49 | 06/08 | 204104 | 665.00 | 06/10 | 204157 | 2,997.50 | 06/10 |
| 204055 | 9,263.42 | 06/08 | 204105 | 219.76 | 06/08 | 204158 | 109.80 | 06/05 |
| 204056 | 577.35 | 06/04 | 204106 | 27,067.11 | 06/08 | 204159 | 2,940.89 | 06/11 |
| 204057 | 8,999.76 | 06/09 | 204107 | 105.52 | 06/05 | 204160 | 2,683.63 | 06/10 |
| 204058 | 745.98 | 06/12 | 204108 | 1,003.31 | 06/08 | 204161 | 603.60 | 06/12 |
| 204059 | 110,709.73 | 06/05 | 204109 | 14,266.45 | 06/05 | 204162 | 572.28 | 06/10 |

Case: 19-04057    Doc# 86-8    Filed: 10/02/20    Entered: 10/02/20 14:29:05    Page 65
of 99

TR_FTS-000138042
CONFIDENTIAL



*Checks paid* (continued)

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 204163 | 7,780.97 | 06/16 | 204216 | 522.94 | 06/12 | 204268 | 327,410.97 | 06/16 |
| 204164 | 3,763.00 | 06/15 | 204217 | 2,828.72 | 06/15 | 204269 | 68,552.00 | 06/17 |
| 204165 | 387,529.38 | 06/11 | 204218 | 1,306.80 | 06/16 | 204271 * | 1,170.37 | 06/25 |
| 204166 | 42,224.46 | 06/11 | 204219 | 2,498.56 | 06/15 | 204272 | 21,225.21 | 06/22 |
| 204167 | 2,110.92 | 06/10 | 204220 | 530.37 | 06/16 | 204273 | 768.00 | 06/22 |
| 204168 | 6,347.28 | 06/10 | 204221 | 25,753.01 | 06/16 | 204275 * | 1,700.00 | 06/22 |
| 204169 | 10,655.77 | 06/08 | 204222 | 8,845.22 | 06/15 | 204276 | 668.56 | 06/22 |
| 204170 | 707.62 | 06/11 | 204223 | 50,254.60 | 06/17 | 204277 | 32,481.50 | 06/24 |
| 204171 | 5,240.27 | 06/12 | 204224 | 33,420.39 | 06/17 | 204278 | 381.25 | 06/22 |
| 204172 | 5,469.95 | 06/15 | 204225 | 7,010.99 | 06/17 | 204279 | 2,716.22 | 06/22 |
| 204173 | 8,912.49 | 06/19 | 204226 | 11,979.65 | 06/16 | 204280 | 5,365.50 | 06/22 |
| 204174 | 200.03 | 06/10 | 204227 | 187.90 | 06/16 | 204281 | 3,279.25 | 06/23 |
| 204175 | 2,704.90 | 06/05 | 204228 | 7,363.10 | 06/17 | 204282 | 2,652.51 | 06/22 |
| 204176 | 1,213.78 | 06/10 | 204229 | 24,028.00 | 06/22 | 204283 | 1,251.90 | 06/24 |
| 204177 | 601.56 | 06/10 | 204230 | 103.32 | 06/18 | 204284 | 584.83 | 06/26 |
| 204178 | 50,381.00 | 06/11 | 204231 | 8,806.97 | 06/16 | 204285 | 2,055.00 | 06/24 |
| 204179 | 4,042.00 | 06/11 | 204232 | 7,041.58 | 06/19 | 204286 | 21,867.63 | 06/22 |
| 204180 | 25,191.95 | 06/12 | 204233 | 30,595.74 | 06/19 | 204287 | 3,350.00 | 06/23 |
| 204181 | 7,370.21 | 06/15 | 204234 | 841.98 | 06/23 | 204289 * | 878.11 | 06/24 |
| 204182 | 2,643.50 | 06/15 | 204235 | 9,869.02 | 06/12 | 204290 | 8,096.25 | 06/22 |
| 204183 | 522.57 | 06/12 | 204236 | 381.18 | 06/18 | 204291 | 1,940.75 | 06/25 |
| 204184 | 1,950.00 | 06/12 | 204237 | 882.72 | 06/18 | 204292 | 1,822.52 | 06/30 |
| 204185 | 196.39 | 06/08 | 204238 | 3,434.96 | 06/18 | 204293 | 7,139.06 | 06/23 |
| 204186 | 4,523.34 | 06/11 | 204239 | 52.36 | 06/18 | 204294 | 2,429.24 | 06/22 |
| 204187 | 216.44 | 06/10 | 204240 | 194.86 | 06/18 | 204295 | 6,250.00 | 06/22 |
| 204188 | 1,220.52 | 06/12 | 204241 | 99.09 | 06/18 | 204296 | 640.00 | 06/22 |
| 204189 | 620.87 | 06/10 | 204242 | 48.04 | 06/18 | 204297 | 659.08 | 06/24 |
| 204190 | 10,701.50 | 06/11 | 204243 | 6,897.00 | 06/15 | 204298 | 1,944.02 | 06/23 |
| 204191 | 6,699.14 | 06/15 | 204244 | 244.39 | 06/16 | 204299 | 476.00 | 06/24 |
| 204193 * | 12,688.44 | 06/16 | 204245 | 9,218.00 | 06/16 | 204300 | 14,329.90 | 06/24 |
| 204194 | 375.44 | 06/16 | 204246 | 1,474.69 | 06/16 | 204302 * | 141.69 | 06/19 |
| 204195 | 7,760.87 | 06/15 | 204247 | 2,496.37 | 06/18 | 204303 | 1,260.19 | 06/19 |
| 204196 | 7,132.35 | 06/16 | 204248 | 7,294.59 | 06/19 | 204304 | 1,119.82 | 06/22 |
| 204197 | 12,979.79 | 06/15 | 204249 | 200.00 | 06/15 | 204305 | 12,312.57 | 06/22 |
| 204198 | 2,169.30 | 06/16 | 204250 | 2,900.00 | 06/17 | 204306 | 3,816.00 | 06/24 |
| 204199 | 496.21 | 06/22 | 204251 | 510.00 | 06/17 | 204307 | 585.29 | 06/22 |
| 204200 | 2,516.32 | 06/15 | 204252 | 299.75 | 06/22 | 204308 | 334.30 | 06/23 |
| 204201 | 9,362.25 | 06/15 | 204253 | 1,344.00 | 06/12 | 204309 | 1,240.64 | 06/23 |
| 204202 | 6,743.14 | 06/15 | 204254 | 365.68 | 06/15 | 204310 | 2,813.55 | 06/23 |
| 204204 * | 66,509.77 | 06/15 | 204255 | 11,790.00 | 06/16 | 204311 | 13,225.95 | 06/22 |
| 204205 | 2,850.00 | 06/17 | 204257 * | 937.50 | 06/16 | 204312 | 69,447.65 | 06/22 |
| 204207 * | 4,643.04 | 06/15 | 204258 | 750.00 | 06/15 | 204313 | 7,526.69 | 06/22 |
| 204208 | 18,885.11 | 06/25 | 204259 | 3,100.24 | 06/16 | 204314 | 10,601.30 | 06/23 |
| 204209 | 6,511.78 | 06/15 | 204260 | 750.00 | 06/16 | 204315 | 7,470.08 | 06/22 |
| 204210 | 6,831.68 | 06/15 | 204261 | 14,742.33 | 06/16 | 204316 | 2,240.79 | 06/23 |
| 204211 | 1,142.31 | 06/16 | 204262 | 3,819.81 | 06/15 | 204317 | 6,666.74 | 06/23 |
| 204212 | 2,091.00 | 06/15 | 204263 | 7,500.00 | 06/16 | 204318 | 40,182.63 | 06/23 |
| 204213 | 756.14 | 06/16 | 204264 | 9,201.02 | 06/16 | 204319 | 99,064.06 | 06/24 |
| 204214 | 4,349.50 | 06/16 | 204266 * | 732.00 | 06/18 | 204320 | 2,064.91 | 06/26 |
| 204215 | 2,125.00 | 06/15 | 204267 | 12,096.00 | 06/18 | 204321 | 2,527.24 | 06/19 |

Case: 19-04057   Doc# 86-8   Filed: 10/02/20   Entered: 10/02/20 14:29:05   Page 66
of 99

TR_FRG_000138043
CONFIDENTIAL

WELLS FARGO

***Checks paid*** *(continued)*

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 204322 | 63.72 | 06/23 | 204349 | 7,165.00 | 06/22 | 204386 | 85,419.53 | 06/29 |
| 204323 | 83.71 | 06/24 | 204350 | 12,000.00 | 06/22 | 204387 | 4,322.11 | 06/29 |
| 204324 | 83.71 | 06/24 | 204351 | 3,284.39 | 06/24 | 204388 | 8,552.87 | 06/29 |
| 204325 | 165.40 | 06/23 | 204352 | 4,152.94 | 06/22 | 204389 | 625.23 | 06/29 |
| 204326 | 5,388.33 | 06/26 | 204353 | 2,004.95 | 06/29 | 204390 | 7,408.63 | 06/29 |
| 204327 | 11,381.00 | 06/24 | 204354 | 2,817.10 | 06/29 | 204391 | 2,921.46 | 06/30 |
| 204328 | 4,506.14 | 06/29 | 204357 * | 8,480.03 | 06/30 | 204392 | 11,330.72 | 06/30 |
| 204329 | 1,044.14 | 06/24 | 204358 | 11,930.79 | 06/29 | 204393 | 24,534.28 | 06/29 |
| 204330 | 392.80 | 06/25 | 204361 * | 1,476.41 | 06/29 | 204395 * | 1,974.38 | 06/26 |
| 204331 | 31,857.82 | 06/24 | 204362 | 9,197.57 | 06/30 | 204396 | 4,806.17 | 06/30 |
| 204332 | 1,080.25 | 06/22 | 204363 | 88.67 | 06/30 | 204397 | 246.30 | 06/29 |
| 204333 | 7,203.43 | 06/22 | 204364 | 2,170.91 | 06/30 | 204398 | 3,252.15 | 06/29 |
| 204334 | 1,805.63 | 06/23 | 204366 * | 10,354.50 | 06/29 | 204399 | 631.01 | 06/29 |
| 204335 | 889.83 | 06/22 | 204367 | 91,272.03 | 06/29 | 204403 * | 22,535.40 | 06/30 |
| 204336 | 4,603.10 | 06/22 | 204369 * | 209.27 | 06/29 | 204404 | 6,125.95 | 06/29 |
| 204337 | 429.50 | 06/23 | 204370 | 8,370.98 | 06/30 | 204405 | 153.29 | 06/26 |
| 204338 | 1,280.00 | 06/19 | 204371 | 2,075.03 | 06/30 | 204406 | 1,024.00 | 06/26 |
| 204339 | 927.74 | 06/29 | 204372 | 1,508.68 | 06/29 | 204407 | 10,172.81 | 06/29 |
| 204340 | 109.55 | 06/22 | 204373 | 1,899.50 | 06/30 | 204408 | 4,390.03 | 06/30 |
| 204342 * | 705.00 | 06/23 | 204374 | 1,042.00 | 06/29 | 204409 | 47,406.52 | 06/30 |
| 204343 | 12,381.90 | 06/22 | 204375 | 3,040.49 | 06/30 | 204410 | 9,775.00 | 06/30 |
| 204344 | 3,524.35 | 06/22 | 204377 * | 4,700.02 | 06/29 | 204411 | 3,599.80 | 06/30 |
| 204345 | 26,250.00 | 06/23 | 204378 | 5,468.88 | 06/29 | 204412 | 1,706.00 | 06/30 |
| 204346 | 1,048.30 | 06/22 | 204379 | 160.00 | 06/29 | 204415 * | 1,216.00 | 06/30 |
| 204347 | 2,598.88 | 06/22 | 204381 * | 243.03 | 06/29 | 204416 | 2,559.89 | 06/30 |
| 204348 | 348.00 | 06/25 | 204385 * | 15,648.78 | 06/29 | | | |

**$3,803,755.09** **Total checks paid**

** Gap in check sequence.*

**$7,248,765.01** **Total debits**

## Daily ledger balance summary

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 05/31 | 187,464.84 | 06/10 | 25,000.00 | 06/22 | 25,000.00 |
| 06/01 | 298,004.43 | 06/11 | 25,000.00 | 06/23 | 25,000.00 |
| 06/02 | 1,805,848.48 | 06/12 | 25,000.00 | 06/24 | 25,000.00 |
| 06/03 | 2,492,141.61 | 06/15 | 25,000.00 | 06/25 | 25,000.00 |
| 06/04 | 1,403,498.20 | 06/16 | 25,000.00 | 06/26 | 25,000.00 |
| 06/05 | 626,698.21 | 06/17 | 25,000.00 | 06/29 | 25,000.00 |
| 06/08 | 223,752.00 | 06/18 | 25,000.00 | 06/30 | 25,000.00 |
| 06/09 | 105,152.39 | 06/19 | 25,000.00 | | |

**Average daily ledger balance** **$291,116.39**

©2010 Wells Fargo Bank, N.A.
All rights reserved. Member FDIC.

Sheet Seq = 0007814
Sheet 00007 of 00007

**From:** Robert Sylvester <robert.sylvester@speysideequity.com>
**Sent:** Mon, 05 Jan 2015 15:22:21 -0500
**To:** "Kevin Daugherty" <kevin.daugherty@speysideequity.com>, "Jeff Stone" <jeffrey.stone@speysideequity.com>, "Oliver Maier" <oliver.maier@speysideequity.com>, "Eric Wiklendt" <eric.wiklendt@speysideequity.com>, "Steve Wessels" <stevew@alcastcompany.com>
**Subject:** Workers comp refund
**Attachments:**
· attached_file_1.png *(259 kb)*
· attached_file_2.plain *(36 b)*

All -

I deposited the workers comp refund check today. I will disburse the funds to the Alcast members sometime this week.

For the Speyside Fund members, I will net our quarterly capital call against this distribution and send out the difference.



GL7000.rpt

**G/L MONTHLY JOURNAL VOUCHER EDIT**

5/17/2015 9:59:10AM

User Id: kgarretson

Batch:          1

Company ID: PSC

| JV Number | Date | Description | | Reversal Date |
|-----------|------|-------------|---|---------------|
| J 97002998-032 | 4/30/2015 | Reclass tax distribution | | |
| | **Account** | | **Account Description** | **Debit** |
| 39602000 | | Distributions | | 752,647.00 |
| 97002998 | | Income Tax State PSC Admin | | 0.00 |
| | | | **JV Total:** | 752,647.00 |
| | | | **Batch Total:** | 752,647.00 |

Page:          1

# EXHIBIT "32"

**LOAN AND SECURITY AGREEMENT**

**Dated as of August 29, 2014**

between

**SIENA LENDING GROUP LLC,**

**as Lender,**

**PACIFIC STEEL CASTING COMPANY LLC**

**as Borrower**

140690.01017/95211127v.5

# TABLE OF CONTENTS

**Page**

1. LOANS AND LETTERS OF CREDIT. ...................................................................1
   1.1 Amount of Loans / Letters of Credit..........................................................1
   1.2 Reserves re Revolving Loans / Letters of Credit........................................1
   1.3 Protective Advances .................................................................................2
   1.4 Notice of Borrowing; Manner of Revolving Loan Borrowing ...................2
   1.5 Other Provisions Applicable to Letters of Credit. ....................................2
   1.6 Conditions of Making the Loans and Issuing Letters of Credit...................3
   1.7 Repayments............................................................................................4
   1.8 Prepayments / Voluntary Termination / Application of Prepayments...........5
   1.9 Obligations Unconditional .......................................................................6
   1.10 Reversal of Payments...............................................................................7

2. INTEREST AND FEES; LOAN ACCOUNT. ........................................................7
   2.1 Interest. ..................................................................................................7
   2.2 Fees. .......................................................................................................7
   2.3 Computation of Interest and Fees. ............................................................7
   2.4 Loan Account; Monthly Accountings........................................................8
   2.5 Further Obligations; Maximum Lawful Rate. ...........................................8

3. SECURITY INTEREST GRANT / POSSESSORY COLLATERAL / FURTHER
   ASSURANCES.......................................................................................................8
   3.1 Grant of Security Interest.........................................................................8
   3.2 Possessory Collateral. ..............................................................................9
   3.3 Further Assurances. .................................................................................9
   3.4 UCC Financing Statements.....................................................................10

4. CERTAIN PROVISIONS REGARDING ACCOUNTS, INVENTORY,
   COLLECTIONS, APPLICATIONS OF PAYMENTS, INSPECTION RIGHTS, AND
   APPRAISALS......................................................................................................10
   4.1 Lock Boxes and Blocked Accounts. .......................................................10
   4.2 Application of Payments.........................................................................10
   4.3 Notification; Verification.......................................................................11
   4.4 Power of Attorney .................................................................................12
   4.5 Disputes. ...............................................................................................12
   4.6 Invoices. ...............................................................................................13
   4.7 Inventory...............................................................................................13
   4.8 Access to Collateral, Books and Records. ..............................................13
   4.9 Appraisals. ............................................................................................13

5. REPRESENTATIONS, WARRANTIES AND COVENANTS.....................................14
   5.1 Existence and Authority.........................................................................14

140690.01017/95211127v.5

Case: 19-04057    Doc# 86-8    Filed: 10/02/20    Entered: 10/02/20 14:29:05    Page 683
of 99
TR_PS_000174701

| | | |
|---|---|---|
| 5.2 | Names; Trade Names and Styles. | 14 |
| 5.3 | Title to Collateral; Third Party Locations; Permitted Liens. | 14 |
| 5.4 | Accounts and Chattel Paper. | 15 |
| 5.5 | Electronic Chattel Paper. | 15 |
| 5.6 | Capitalization; Investment Property | 15 |
| 5.7 | Commercial Tort Claims. | 17 |
| 5.8 | State of Organization; Location of Collateral. | 17 |
| 5.9 | Financial Statements and Reports; Solvency | 17 |
| 5.10 | Tax Returns and Payments; Pension Contributions. | 18 |
| 5.11 | Compliance with Laws; Intellectual Property; Licenses. | 18 |
| 5.12 | Litigation. | 19 |
| 5.13 | Use of Proceeds. | 20 |
| 5.14 | Insurance. | 20 |
| 5.15 | Financial, Collateral and Other Reporting / Notices. | 20 |
| 5.16 | Litigation Cooperation. | 22 |
| 5.17 | Maintenance of Collateral, Etc. | 22 |
| 5.18 | Material Contracts. | 22 |
| 5.19 | No Default. | 23 |
| 5.20 | No Material Adverse Change. | 23 |
| 5.21 | Full Disclosure. | 23 |
| 5.22 | Sensitive Payments. | 23 |
| 5.23 | Reserved. | 23 |
| 5.24 | Negative Covenants. | 23 |
| 5.25 | Financial Covenants. | 25 |
| 5.26 | Key Executive Policies | 25 |
| 5.27 | [Reserved] | 25 |
| 5.28 | Perpetual Inventory System | 25 |
| 6. | RELEASE, LIMITATION OF LIABILITY AND INDEMNITY. | 26 |
| 6.1 | Release. | 26 |
| 6.2 | Limitation of Liability. | 26 |
| 6.3 | Indemnity. | 26 |
| 7. | EVENTS OF DEFAULT AND REMEDIES. | 26 |
| 7.1 | Events of Default. | 26 |
| 7.2 | Remedies with Respect to Lending Commitments/Acceleration/Etc. | 29 |
| 7.3 | Remedies with Respect to Collateral. | 29 |
| 8. | LOAN GUARANTY. | 33 |
| 8.1 | Guaranty | 33 |
| 8.2 | Guaranty of Payment | 34 |
| 8.3 | No Discharge or Diminishment. | 34 |
| 8.4 | Defenses Waived. | 34 |
| 8.5 | Rights of Subrogation | 35 |
| 8.6 | Reinstatement; Stay of Acceleration | 35 |

140690.01017/95211127v.5

Case: 19-04057     Doc# 86-8     Filed: 10/02/20     Entered: 10/02/20 14:29:05     Page 684
of 99
TR_PS_000174702

|       | 8.7   | Information ..................................................................................................... | 35 |
|-------|-------|-------|-----|
|       | 8.8   | Reserved ....................................................................................................... | 35 |
|       | 8.9   | Maximum Liability ........................................................................................ | 35 |
|       | 8.10  | Contribution ................................................................................................. | 36 |
|       | 8.11  | Multiple Borrowers ...................................................................................... | 36 |

| 9.    | PAYMENTS FREE OF TAXES; OBLIGATION TO WITHHOLD; PAYMENTS ON ACCOUNT OF TAXES ............................................................................... | 36 |
|-------|-------|-----|

| 10.   | GENERAL PROVISIONS ........................................................................................... | 38 |
|-------|-------|-----|
|       | 10.1  | Notices .......................................................................................................... | 38 |
|       | 10.2  | Severability .................................................................................................. | 40 |
|       | 10.3  | Integration ................................................................................................... | 40 |
|       | 10.4  | Waivers ......................................................................................................... | 41 |
|       | 10.5  | Amendment ................................................................................................... | 41 |
|       | 10.6  | Time of Essence ............................................................................................ | 41 |
|       | 10.7  | Expenses, Fee and Costs Reimbursement ...................................................... | 41 |
|       | 10.8  | Benefit of Agreement; Assignability ............................................................. | 42 |
|       | 10.9  | Recordation of Assignment .......................................................................... | 42 |
|       | 10.10 | Participations ............................................................................................... | 42 |
|       | 10.11 | Headings; Construction ................................................................................ | 43 |
|       | 10.12 | USA PATRIOT Act Notification .................................................................. | 43 |
|       | 10.13 | Counterparts; Fax/Email Signatures ............................................................. | 43 |
|       | 10.14 | GOVERNING LAW / CONSENT TO JURISDICTION / WAIVER OF JURY TRIAL ......................................................................................................... | 43 |
|       | 10.15 | Publication ................................................................................................... | 44 |
|       | 10.16 | Usury ............................................................................................................ | 44 |

Disclosure Schedule
Schedule A      Description of Certain Terms
Schedule B      Definitions
Schedule C      Fees
Schedule D      Reporting
Schedule E      Financial Covenants
Exhibit A      Form of Notice of Borrowing
Exhibit B      Closing Checklist
Exhibit C      Client User Form
Exhibit D      Authorized Accounts Form
Exhibit E      Form of Account Debtor Notification
Exhibit F      Form of Compliance Certificate

140690.01017/95211127v.5

<center>**Loan and Security Agreement**</center>

This Loan and Security Agreement (as it may be amended, restated or otherwise modified from time to time, this "***Agreement***") is entered into on August 29, 2014 among (1) SIENA LENDING GROUP LLC ("***Lender***"), and (2) PACIFIC STEEL CASTING COMPANY LLC, a Delaware limited liability company ("***Pacific Steel***" together with any Person joined hereto as a borrower from time to time, the "***Borrowers***" and each a "***Borrower***"). The Schedules and Exhibits to this Agreement are an integral part of this Agreement and are incorporated herein by reference. Terms used, but not defined elsewhere, in this Agreement are defined in Schedule B.

<center>RECITALS</center>

A.     On the date hereof, Pacific Steel is acquiring substantially all of the assets of Pacific Steel Casting Company, a California corporation ("***Debtor***"), pursuant to that certain Asset Purchase Agreement by and between Speyside and Debtor dated as of June 19, 2014, as approved by the Order Approving Motion to Approve Sale of Substantially all Assets Free and Clear of Liens and Related Relief entered by the United States Bankruptcy Court for the Northern District of California (together with any other court having jurisdiction over the Case, the "***Bankruptcy Court***") on July 28, 2014 in Bankruptcy Case Nos. 14-41045-RLE and 14-41048-RLE (the "***Case***") relating to Debtor, as amended by the First Amendment to Asset Purchase Agreement dated as of August 21, 2014, approved by the Order Approving Ex Parte Application to Approve First Amendment to Asset Purchase Agreement entered by the Bankruptcy Court on August 22, 2014.

B.     Lender is willing to provide advances and other financial accommodations to Borrowers on the terms and subject to the conditions of this Agreement.

**1.     LOANS AND LETTERS OF CREDIT.**

**1.1     Amount of Loans / Letters of Credit.**

(a)     **Revolving Loans and Letters of Credit.**  Subject to the terms and conditions contained in this Agreement, including Sections 1.3 and 1.6, Lender will, from time to time prior to the Maturity Date, at Borrowers' request, (i) make revolving loans to Borrowers ("***Revolving Loans***"), and (ii) in Lender's sole discretion, make letters of credit ("***Letters of Credit***") available to Borrowers, ***provided***, that after giving effect to each such Revolving Loan and each such Letter of Credit, (A) the outstanding balance of all Revolving Loans and the Letter of Credit Balance will not exceed the lesser of (x) the Maximum Revolving Facility Amount and (y) the Borrowing Base, and (B) none of the other Loan Limits for Revolving Loans will be exceeded.

(b)     **Term Loan**.  Subject to the terms and conditions contained in this Agreement, including Section 1.6, Lender will make on the date of this Agreement a loan to Borrower in the original principal amount set forth in Section 2(a) of Schedule A (the "Term Loan"). The Term Loan shall be advanced in a single borrowing on the Closing Date, and any principal amounts repaid in respect of the Term Loan may not be reborrowed.

(c)     **Reserved.**

**1.2     Reserves re Revolving Loans / Letters of Credit.**  Lender may, with notice (which may be contemporaneous or promptly after establishment) to Borrower, from time to time establish and revise

Case: 19-04057     Doc# 86-8     Filed: 10/02/20     Entered: 10/02/20 14:29:05     Page 76
of 99
TR_PS_000174704

reserves against the Borrowing Base and/or the Maximum Revolving Facility Amount in such amounts and of such types as Lender deems appropriate in its Permitted Discretion ("*Reserves*"). Without limiting the foregoing, references to Reserves shall include the Dilution Reserve. In no event shall the establishment of a Reserve in respect of a particular actual or contingent liability obligate Lender to make advances to pay such liability or otherwise obligate Lender with respect thereto.

### 1.3    Protective Advances.

Any contrary provision of this Agreement or any other Loan Document notwithstanding, at any time (A) after the occurrence and during the continuance of a Default or an Event of Default, or (B) that any of the other applicable conditions precedent set forth in Section 1.6 or otherwise are not satisfied, Lender hereby is authorized by Borrowers, from time to time, in Lender's sole discretion, to make Revolving Loans to, or for the benefit of, Borrowers, that Lender in its sole discretion deems necessary or desirable (1) to preserve or protect the Collateral, or any portion thereof, or (2) to enhance the likelihood of repayment of the Obligations (the Revolving Loans described in this Section 1.3 shall be referred to as "Protective Advances"). Any contrary provision of this Agreement or any other Loan Document notwithstanding, Lender may direct the proceeds of any Protective Advance to Borrowers or to such other Person as Lender determines in its sole discretion. All Protective Advances shall be payable immediately upon demand.

### 1.4    Notice of Borrowing; Manner of Revolving Loan Borrowing.

Borrowers shall request each Revolving Loan by submitting such request via Passport 6.0 (or, if requested by Lender, by delivering, in writing or via an Approved Electronic Communication, a Notice of Borrowing substantially in the form of Exhibit A hereto) (each such request a "*Notice of Borrowing*"). Subject to the terms and conditions of this Agreement, including Sections 1.1 and 1.6, Lender shall, except as provided in Section 1.3, deliver the amount of the Revolving Loan requested in the Notice of Borrowing for credit to any account of any Borrower at a bank in the United States of America as Borrowers may specify (*provided* that such account must be one identified on Section 3 of the Disclosure Schedule and approved by Lender as an account to be used for funding of loan proceeds) by wire transfer of immediately available funds (i) on the same day if the Notice of Borrowing is received by Lender on or before 1:00 p.m. Eastern Time on a Business Day, or (ii) on the immediately following Business Day if the Notice of Borrowing is received by Lender after 1:00 p.m. Eastern Time on a Business Day, or is received by Lender on any day that is not a Business Day. Lender shall charge to the Revolving Loan Lender's usual and customary fees for the wire transfer of each Loan.

### 1.5    Other Provisions Applicable to Letters of Credit.

Lender may, in its sole discretion and on terms and conditions acceptable to Lender in its sole discretion (including the terms and conditions set forth in Section 1.1 and Section 1.6), make Letters of Credit available to Borrowers either by issuing them, or by causing other financial institutions to issue them supported by Lender's guaranty or indemnification; provided, that after giving effect to each Letter of Credit, the Letter of Credit Balance will not exceed the Letter of Credit Limit. Borrowers agree to execute all documentation required by Lender and/or the issuer of any Letter of Credit in connection with any such Letter of Credit. Borrowers hereby unconditionally and irrevocably agree to, jointly and severally, reimburse Lender and/or the applicable issuer for each payment or disbursement made by Lender and/or the applicable issuer under any Letter of Credit honoring any demand for payment made thereunder, in each case on the date that such payment or disbursement is made. Borrowers' reimbursement obligations hereunder shall be irrevocable and unconditional under all circumstances,

-2-

including (i) any lack of validity or enforceability of any Letter of Credit, this Agreement or any other Loan Document, (ii) the existence of any claim, set-off, defense or other right which any Borrower may have at any time against a beneficiary named in a Letter of Credit, any transferee of any Letter of Credit (or any Person for whom any such transferee may be acting), Lender, the applicable issuer under any Letter or Credit, or any other Person, whether in connection with any Letter of Credit, this Agreement, any other Loan Document, the transactions contemplated herein or any unrelated transactions (including any underlying transaction between any Borrower and the beneficiary named in any Letter of Credit), (iii) any lack of validity, sufficiency or genuineness of any document which Lender or the applicable issuer has determined complies on its face with the terms of the applicable Letter of Credit, even if such document should later prove to have been forged, fraudulent, invalid or insufficient in any respect or any statement therein shall have been untrue or inaccurate in any respect, or (iv) the surrender or impairment of any security for the performance or observance of any of the terms hereof. Any and all amounts paid by Lender in respect of a Letter of Credit will, at the election of Lender, be treated for all purposes as a Revolving Loan, and bear interest, and be payable, in the same manner as a Revolving Loan.

**1.6    Conditions of Making the Loans and Issuing Letters of Credit.** Lender's obligation to make any Loan or issue or cause any Letter of Credit to be issued under this Agreement is subject to the following conditions precedent (as well as any other conditions set forth in this Agreement or any other Loan Document), all of which must be satisfied in a manner acceptable to Lender (and as applicable, pursuant to documentation which in each case is in form and substance acceptable to Lender) as of each day that such Loan is made or such Letter of Credit is issued, as applicable:

(a)    **Loans and Letters of Credit Made and/or Issued on the Closing Date:** With respect to Loans made, and/or Letters of Credit issued, on the Closing Date:

(1) Borrowers shall have duly executed and/or delivered, or, as applicable, shall have caused such other applicable Persons to have duly executed and or delivered, to Lender this Agreement, in form and substance satisfactory to Lender in its reasonable discretion, and such other agreements, instruments, documents, proxies and certificates as Lender may require, and including such other agreements, instruments, documents and/or certificates listed on the closing checklist attached hereto as Exhibit B;

(2) Lender shall have completed its business and legal due diligence pertaining to Borrowers, their respective businesses and assets, with results thereof satisfactory to Lender in its sole discretion;

(3) Lender's obligations and commitments under this Agreement shall have been approved by Lender's Credit Committee;

(4) after giving effect to such Loans and Letters of Credit, closing costs and any book overdraft, Excess Availability plus immediately available unencumbered (other than by Liens in favor of Lender) cash on hand of Borrowers shall be no less than $2,000,000;

(5) Borrowers shall have paid to Lender all fees due on the date hereof, and shall have paid or reimbursed Lender for all of Lender's costs, charges and expenses incurred through the Closing Date (and in

-3-

connection herewith, Borrower hereby irrevocably authorizes Lender to charge such fees, costs, charges and expenses as Revolving Loans);

(6) [Reserved];

(7) Borrowers have delivered evidence that a full physical inventory count was conducted not more than ten (10) days prior to the Closing Date and a valuation of such inventory on a FIFO basis reasonably acceptable to Lender;

(8) Borrowers have delivered to Lender evidence of a satisfactory capitalization of Pacific Steel, including a cash contribution to Pacific Steel of at least $2,500,000 from Speyside and the other members of Pacific Steel;

(9) All conditions for closing under the Acquisition Agreement have been satisfied or waived in writing; and

(10)    The Sale Order has not been stayed or appealed.

(b)    **All Loans and/or Letters of Credit:**  With respect to Loans made and/or Letters of Credit issued, on or at any time after the Closing Date, in addition to the conditions specified in clause (a) above and (c) below, as applicable:

(1) Borrowers shall have provided to Lender such information as Lender may require in order to determine the Borrowing Base (including the items set forth in Section 5.15(a)), as of such borrowing or issue date, after giving effect to such Loans and/or Letters of Credit, as applicable;

(2) Borrowers shall have duly executed and/or delivered, or, as applicable, shall have caused such other applicable Persons to have duly executed and or delivered, to Lender such further agreements, instruments, documents, proxies and certificates as Lender may require in connection therewith;

(3) each of the representations and warranties set forth in this Agreement and in the other Loan Documents shall be true and correct in all respects as of the date such Loan is made and/or such Letter of Credit is issued (or to the extent any representations or warranties are expressly made solely as of an earlier date, such representations and warranties shall be true and correct as of such earlier date), both before and after giving effect thereto;; and

(4) no Default or Event of Default shall be in existence, both before and after giving effect thereto.

(c)    **Reserved.**

**1.7    Repayments.**

-4-

(a)  **Revolving Loans / Letters of Credit.**  If at any time (a) the sum of the outstanding balance of all Revolving Loans and the Letter of Credit Balance exceeds the lesser of (i) the Maximum Revolving Facility Amount and (ii) the Borrowing Base, or (b) any of the Loan Limits for Revolving Loans or Letters of Credit are exceeded, then in each case, Borrowers will immediately pay to Lender such amounts (or, with respect to the Letter of Credit Balance, provide cash collateral to Lender in the manner set forth in clause (c) below) as shall cause Borrowers to eliminate such excess.

(b)  **Term Loan.**  Principal of the Term Loan shall be repaid as set forth in Section 2(b) of Schedule A.

(c)  **Maturity Date Payments / Cash Collateral.**  All Obligations shall be due and payable in full on the Maturity Date or, if earlier, the date of any acceleration pursuant to Section 7.2. Without limiting the generality of the foregoing, if, on the Maturity Date, there are any outstanding Letters of Credit, then on such date Borrower shall provide to Lender cash collateral in an amount equal to 110% of the Letter of Credit Balance to secure all of the Obligations (including estimated attorneys' fees and other expenses) relating to said Letters of Credit or such greater percentage or amount as Lender reasonably deems appropriate, pursuant to a cash pledge agreement in form and substance satisfactory to Lender.

**1.8  Prepayments / Voluntary Termination / Application of Prepayments.**

(a)  **Certain Mandatory Prepayment Events.**  Borrowers shall be required to prepay the unpaid principal balance of the Term Loan, and after the Term Loan has been paid in full, Borrowers shall be required to prepay the outstanding balance of the Revolving Loans on the date of each and every Prepayment Event (and on any date thereafter on which proceeds pertaining thereto are received by any Borrower), in each case without any demand or notice from Lender or any other Person, all of which is hereby expressly waived by Borrowers, in the amount of 100% of the proceeds (net of documented reasonable out-of-pocket costs and expenses incurred in connection with the collection of such proceeds, in each case payable to Persons that are not Affiliates of any Borrower) received by Borrowers with respect to such Prepayment Event.

(b)  **Mandatory Prepayment of Term Loan re Equipment Valuation.**  If, at any time, the outstanding balance of the Term Loan exceeds 85% of the forced liquidation value of Eligible Equipment as determined by Lender in its sole discretion, within three (3) Business Days after demand by Lender, Borrower shall be required to prepay the Term Loan in such amount so that after giving effect to such prepayment, the outstanding balance of the Term Loan is less than 85% of the forced liquidation value of Eligible Equipment as determined by Lender in its sole discretion; provided, however, that so long as no Default or Event of Default has occurred and is continuing, (i) Lender shall conduct appraisals and valuations with respect to the Eligible Equipment to determine the forced liquidation value thereof in accordance with this Section 1.8 no more than once per calendar year and (ii) Lender shall not conduct the first such appraisal and valuation with respect to the Eligible Equipment hereunder prior to August 1, 2015.

(c)  **Reserved.**

(d)  **Voluntary Prepayment of Term Loan.**  Borrower may from time to time, on at least one Business Day's written notice or telephonic notice (followed immediately by written confirmation thereof) to Lender not later than 1:00 p.m. Eastern Time on such day, prepay the Term Loan in whole or in part.  Any such partial prepayment shall be in an amount equal to $100,000 or a higher integral multiple of $100,000.

140690.01017/95211127v.5

(e)     **Voluntary Termination of Loan Facilities.**  Borrowers may, on at least thirty days prior written notice received by Lender, permanently terminate the Loan facilities by repaying all of the outstanding Obligations, including all principal, interest and fees with respect to the Revolving Loans and the Term Loan, and an Early Termination Fee in the amount specified in Section (f) of Schedule C.  If, on the date of a voluntary termination pursuant to this Section 1.8(d), there are any outstanding Letters of Credit, then on such date, and as a condition precedent to such termination, Borrower shall provide to Lender cash collateral in an amount equal to 110% of the Letter of Credit Balance to secure all of the Obligations (including estimated attorneys' fees and other expenses) relating to said Letters of Credit or such greater percentage or amount as Lender reasonably deems appropriate, pursuant to a cash pledge agreement in form and substance satisfactory to Lender.  From and after such date of termination, Lender shall have no obligation whatsoever to extend any additional Loans or Letters of Credit.

(f)     **Application of Prepayments.**  All prepayments (whether voluntary or mandatory) of the Term Loan shall be applied in the inverse order to the installments thereof as set forth in Section 2(b) of Schedule A.

(g)     **Termination of Loan Facilities.**  The security interests, liens and rights granted to Lender hereunder shall continue in full force and effect, notwithstanding the termination of this Agreement or the fact that no Obligations may be outstanding, until all Obligations have been indefeasibly paid in full in cash.

**1.9     Obligations Unconditional.**

(a)     The payment and performance of all Obligations shall constitute the absolute and unconditional obligations of Borrowers, and shall be independent of any defense or rights of set-off, recoupment or counterclaim which any Borrower or any other Person might otherwise have against Lender or any other Person.  All payments required (other than by Lender) by this Agreement and/or the other Loan Documents shall be made in Dollars (unless payment in a different currency is expressly provided otherwise in the applicable Loan Document) and paid free of any deductions or withholdings for any taxes or other amounts and without abatement, diminution or set-off.  If Borrowers are required by applicable law to make such a deduction or withholding from a payment under this Agreement or under any other Loan Document, Borrowers shall pay to Lender such additional amount as is necessary to ensure that, after the making of such deduction or withholding, Lender receives (free from any liability in respect of any such deduction or withholding) a net sum equal to the sum which it would have received and so retained had no such deduction or withholding been made or required to be made.  Borrowers shall (i) pay the full amount of any deduction or withholding, which it is required to make by law, to the relevant authority within the payment period set by applicable law, and (ii) promptly after any such payment, deliver to Lender an original (or certified copy) official receipt issued by the relevant authority in respect of the amount withheld or deducted or, if the relevant authority does not issue such official receipts, such other evidence of payment of the amount withheld or deducted as is reasonably acceptable to Lender.

(b)     If, at any time and from time to time after the Closing Date (or at any time before or after the Closing Date with respect to (x) the Dodd-Frank Wall Street Reform and Consumer Protection Act and all requests, rules, regulations, guidelines or directives thereunder or issued in connection therewith, or (y) all requests, rules, guidelines or directives promulgated by the Bank for International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority) or the United States regulatory authorities, in each case for purposes of this clause (y) pursuant to Basel III, regardless of the date enacted, adopted or issued), (i) any change in any existing law, regulation, treaty or directive or in the interpretation or application thereof, (ii) any new law, regulation, treaty or directive enacted or application

140690.01017/95211127v.5

thereof, or (iii) compliance by Lender with any request or directive (whether or not having the force of law) from any Governmental Authority, central bank or comparable agency (A) subjects Lender to any tax, levy, impost, deduction, assessment, charge or withholding of any kind whatsoever with respect to any Loan Document, or changes the basis of taxation of payments to Lender of any amount payable thereunder (except for net income taxes, or franchise taxes imposed in lieu of net income taxes, imposed generally by federal, state, local or other taxing authorities with respect to interest or fees payable hereunder or under any other Loan Document or changes in the rate of tax on the overall net income of Lender or its members), or (B) imposes on Lender any other condition or increased cost in connection with the transactions contemplated thereby or participations therein, and the result of any of the foregoing is to increase the cost to Lender of making or continuing any Loan or Letter of Credit or to reduce any amount receivable hereunder or under any other Loan Documents, then, in any such case, Borrowers shall promptly pay to Lender, when notified to do so by Lender, any additional amounts necessary to compensate Lender, on an after-tax basis, for such additional cost or reduced amount as determined by Lender. Each such notice of additional amounts payable pursuant to this Section 1.9(b) submitted by Lender to Borrowers shall, absent manifest error, be final, conclusive and binding for all purposes.

(c)     This Section 1.9 shall remain operative and in full force and effect regardless of the expiration or any termination of this Agreement.

**1.10   Reversal of Payments.** To the extent that any payment or payments made to or received by Lender pursuant to this Agreement or any other Loan Document are subsequently invalidated, declared to be fraudulent or preferential, set aside, or required to be repaid to any trustee, receiver or other Person under any state, federal or other bankruptcy or other such applicable law, then, to the extent thereof, such amounts (and all Liens, rights and remedies therefore) shall be revived as Obligations (secured by all such Liens) and continue in full force and effect under this Agreement and under the other Loan Documents as if such payment or payments had not been received by Lender. This Section 1.10 shall remain operative and in full force and effect regardless of the expiration or any termination of this Agreement.

## 2.     INTEREST AND FEES; LOAN ACCOUNT.

**2.1   Interest.** All Loans and other monetary Obligations shall bear interest at a rate equal to: (a) with respect to Revolving Loans, 3.0% per annum in excess of the Base Rate, and (b) with respect to all other Obligations (including, without limitation, with respect to the Term Loan), 4.0% per annum in excess of the Base Rate, and accrued interest shall be payable (i) on the first day of each month in arrears, (ii) upon a prepayment of such Loan in accordance with Section 1.8, and (iii) on the Maturity Date; *provided*, that after the occurrence and during the continuation of an Event of Default, all Loans and other monetary Obligations shall bear interest at a rate per annum equal to three (3) percentage points in excess of the rate otherwise applicable thereto (the "*Default Rate*"), and all such interest shall be payable on demand. Changes in the interest rate shall be effective as of the date of any change in the Base Rate.

**2.2   Fees.** Borrower shall pay Lender the fees set forth on Schedule C hereto on the dates set forth therein, which fees are in addition to all fees and other sums payable by Borrower or any other Person to Lender under this Agreement or under any other Loan Document, and, in each case are not refundable once paid.

**2.3   Computation of Interest and Fees.** All interest and fees shall be calculated daily on the outstanding monetary Obligations based on the actual number of days elapsed in a year of 360 days.

Case: 19-04057    Doc# 86-8    Filed: 10/02/20    Entered: 10/02/20 14:29:05    Page 82
of 99
TR_PS_000174710

**2.4 Loan Account; Monthly Accountings.** Lender shall maintain a loan account for Borrowers reflecting all outstanding Loans and the Letters of Credit Balance, along with interest accrued thereon and such other items reflected therein (the "*Loan Account*"), and shall provide Borrowers with a monthly accounting reflecting the activity in the Loan Account, viewable by Borrowers on Passport 6.0. Each accounting shall be deemed correct, accurate and binding on Borrowers and an account stated (except for reverses and reapplications of payments made and corrections of errors discovered by Lender), unless Borrowers notify Lender in writing to the contrary within thirty days after such account is rendered, describing the nature of any alleged errors or omissions. However, Lender's failure to maintain the Loan Account or to provide any such accounting shall not affect the legality or binding nature of any of the Obligations. Interest, fees and other monetary Obligations due and owing under this Agreement (including fees and other amounts paid by Lender to issuers of Letters of Credit) may, in Lender's discretion, be charged to the Loan Account, and will thereafter be deemed to be Revolving Loans and will bear interest at the same rate as other Revolving Loans.

**2.5 Further Obligations; Maximum Lawful Rate**. With respect to all monetary Obligations for which the interest rate is not otherwise specified herein (whether such Obligations arise hereunder or under any other Loan Document, or otherwise), such Obligations shall bear interest at the rate(s) in effect from time to time with respect to the Revolving Loans and shall be payable upon demand by Lender. In no event shall the interest charged with respect to any Loan or any other Obligation exceed the maximum amount permitted under applicable law, nor will interest be charged on interest. Notwithstanding anything to the contrary herein or elsewhere, if at any time the rate of interest payable or other amounts hereunder or under any other Loan Document (the "*Stated Rate*") would exceed the highest rate of interest or other amount permitted under any applicable law to be charged (the "*Maximum Lawful Rate*"), then for so long as the Maximum Lawful Rate would be so exceeded, the rate of interest and other amounts payable shall be equal to the Maximum Lawful Rate; *provided*, that if at any time thereafter the Stated Rate is less than the Maximum Lawful Rate, Borrowers shall, to the extent permitted by applicable law, continue to pay interest and such other amounts at the Maximum Lawful Rate until such time as the total interest and other such amounts received is equal to the total interest and other such amounts which would have been received had the Stated Rate been (but for the operation of this provision) the interest rate payable or such other amounts payable. Thereafter, the interest rate and such other amounts payable shall be the Stated Rate unless and until the Stated Rate again would exceed the Maximum Lawful Rate, in which event this provision shall again apply. In no event shall the total interest or other such amounts received by Lender exceed the amount which it could lawfully have received had the interest and other such amounts been calculated for the full term hereof at the Maximum Lawful Rate. If, notwithstanding the prior sentence, Lender has received interest or other such amounts hereunder in excess of the Maximum Lawful Rate, such excess amount shall be applied to the reduction of the principal balance of the Loans or to other Obligations (other than interest) payable hereunder, and if no such principal or other Obligations are then outstanding, such excess or part thereof remaining shall be paid to Borrower. In computing interest payable with reference to the Maximum Lawful Rate applicable to any Lender, such interest shall be calculated at a daily rate equal to the Maximum Lawful Rate divided by the number of days in the year in which such calculation is made.

**3. SECURITY INTEREST GRANT / POSSESSORY COLLATERAL / FURTHER ASSURANCES.**

**3.1 Grant of Security Interest.** To secure the full payment and performance of all of the Obligations, now existing or hereafter arising, each Borrower hereby assigns to Lender and grants to Lender, a continuing security interest in all property of such Borrower, whether now existing or hereafter acquired or arising, whether tangible or intangible, real or personal, and wherever now or hereafter

-8-

located, and whether or not eligible for lending purposes, including, without limitation: (i) all Accounts (whether or not Eligible Accounts) and all Goods whose sale, lease or other disposition by such Borrower has given rise to Accounts and have been returned to, or repossessed or stopped in transit by, such Borrower; (ii) all Chattel Paper (including Electronic Chattel Paper), Instruments, Documents, and General Intangibles (including all patents, patent applications, trademarks, trademark applications, trade names, trade secrets, goodwill, copyrights, copyright applications, registrations, licenses, software, franchises, customer lists, tax refund claims, claims against carriers and shippers, guarantee claims, contracts rights, payment intangibles, security interests, security deposits and rights to indemnification); (iii) all Inventory (whether or not Eligible Inventory); (iv) all Goods (other than Inventory), including Equipment, Farm Products, Health-Care-Insurance Receivables, vehicles, and Fixtures; (v) all Investment Property, including, without limitation, all rights, privileges, authority, and powers of such Borrower as an owner or as a holder of Pledged Equity, including, without limitation, all economic rights, all control rights, authority and powers, and all status rights of such Borrower as a member, equity holder or shareholder, as applicable, of each Issuer; (vi) all Deposit Accounts, bank accounts, deposits and cash; (vii) all Letter-of-Credit Rights; (viii) all Commercial Tort Claims listed in Section 2 of the Disclosure Schedule and all other Commercial Tort Claims of Borrowers now existing or hereafter arising; (ix) all Supporting Obligations; (x) any other property of such Borrower now or hereafter in the possession, custody or control of Lender or any agent or any parent, Affiliate or Subsidiary of Lender or any Participant with Lender in the Loans, for any purpose (whether for safekeeping, deposit, collection, custody, pledge, transmission or otherwise), and (xi) all additions and accessions to, substitutions for, and replacements, products and Proceeds of the foregoing property, including proceeds of all insurance policies insuring the foregoing property, and all of such Borrower's books and records relating to any of the foregoing and to such Borrower's business.

**3.2 Possessory Collateral.** Promptly, but in any event no later than five Business Days after any Borrower's receipt of any portion of the Collateral evidenced by an agreement, Instrument or Document, including any Tangible Chattel Paper and any Investment Property consisting of certificated securities, such Borrower shall deliver the original thereof to Lender together with an appropriate endorsement or other specific evidence of assignment thereof to Lender (in form and substance acceptable to Lender). If an endorsement or assignment of any such items shall not be made for any reason, Lender is hereby irrevocably authorized, as attorney and agent-in-fact (coupled with an interest) for such Borrower, to endorse or assign the same on such Borrower's behalf.

**3.3 Further Assurances**. Each Borrower shall, at its own cost and expense, promptly and duly take, execute, acknowledge and deliver (and/or cause such other applicable Person to take, execute, acknowledge and deliver) all such further acts, documents, agreements and instruments as may from time to time be necessary or desirable or as Lender may from time to time require in order to (a) carry out the intent and purposes of the Loan Documents and the transactions contemplated thereby, (b) establish, create, preserve, protect and perfect a first priority lien (subject only to Permitted Liens) in favor of Lender in all real and personal property (wherever located) from time to time owned by such Borrower and in all capital stock and other equity from time to time owned by such Borrower, (c) cause each Subsidiary of each Borrower to guarantee all of the Obligations, all pursuant to documentation that is in form and substance reasonably satisfactory to Lender, and (d) facilitate the collection of the Collateral. Without limiting the foregoing, each Borrower shall, at its own cost and expense, promptly and duly take, execute, acknowledge and deliver (and/or cause such other applicable Person to take, execute, acknowledge and deliver) to Lender all promissory notes, security agreements, agreements with landlords, mortgagees and processors and other bailees, subordination and intercreditor agreements and other agreements, instruments and documents, in each case in form and substance acceptable to Lender, as Lender may request from time to time to perfect, protect, and maintain Lender's security interests in

-9-

the Collateral, including the required priority thereof, and to fully carry out the transactions contemplated by the Loan Documents.

**3.4    UCC Financing Statements.**  Each Borrower authorizes Lender to file, transmit, or communicate, as applicable, from time to time, Uniform Commercial Code financing statements, along with amendments and modifications thereto, in all filing offices selected by Lender, listing such Borrower as the debtor and Lender as the secured party, and describing the collateral covered thereby in such manner as Lender may elect, including using descriptions such as "all personal property of debtor" or "all assets of debtor" or words of similar effect, in each case without such Borrower's signature.  Each Borrower also hereby ratifies its authorization for Lender to have filed in any filing office any financing statements filed prior to the date hereof.

**4.    CERTAIN PROVISIONS REGARDING ACCOUNTS, INVENTORY, COLLECTIONS, APPLICATIONS OF PAYMENTS, INSPECTION RIGHTS, AND APPRAISALS.**

**4.1    Lock Boxes and Blocked Accounts.**  Each Borrower hereby represents and warrants that all Deposit Accounts and all other depositary and other accounts maintained by Borrowers as of the Closing Date are described in Section 3 of the Disclosure Schedule, which description includes for each such account the name of the Borrower maintaining such account, the name, of the financial institution at which such account is maintained, the account number, and the purpose of such account.  After the Closing Date, no Borrower shall open any new Deposit Accounts or any other depositary or other accounts without the prior written consent of Lender and without updating Section 3 of the Disclosure Schedule to reflect such Deposit Accounts or other accounts, as applicable.  No Deposit Accounts or other accounts of any Borrower shall at any time constitute a Restricted Account other than accounts expressly indicated on Section 3 of the Disclosure Schedule as being a Restricted Account (and Borrowers hereby represent and warrant that each such account shall at all times meet the requirements set forth in the definition of Restricted Account to qualify as a Restricted Account).  Each Borrower will, at its expense, establish (and revise from time to time as Lender may require) procedures acceptable to Lender, in Lender's reasonable discretion, for the collection of checks, wire transfers and all other proceeds of all of Borrowers' Accounts and other Collateral ("*Collections*"), which shall include (i) directing all Account Debtors to send all Account proceeds directly to a post office box designated by Lender either in the name of Borrowers (but as to which Lender has exclusive access) or, at Lender's option, in the name of Lender (a "*Lock Box*"), and/or (ii) depositing all Collections received by Borrowers into one or more bank accounts maintained in the name of Borrowers (but as to which Lender has exclusive access) or, at Lender's option, in the name of Lender (each, a "*Blocked Account*"), under an arrangement acceptable to Lender with a depository bank acceptable to Lender, pursuant to which all funds deposited into each Blocked Account are to be transferred to Lender in such manner, and with such frequency, as Lender shall specify, and/or (iii) a combination of the foregoing.  Each Borrower agrees to execute, and to cause its depository banks and other account holders to execute, such Lock Box and Blocked Account control agreements and other documentation as Lender shall require from time to time in connection with the foregoing, all in form and substance acceptable to Lender, and in any event such arrangements and documents must be in place on the date hereof with respect to accounts in existence on the date hereof, or prior to any such account being opened with respect to any such account opened after the date hereof, in each case excluding Restricted Accounts.  Prior to the Closing Date, Borrowers shall deliver to Lender a complete and executed Authorized Accounts form regarding Borrowers' operating account(s) into which the proceeds of Loans are to be paid in the form of Exhibit D annexed hereto.

**4.2    Application of Payments.**  All amounts paid to or received by Lender in respect of the monetary Obligations, from whatever source (whether from any Borrower or any Guarantor pursuant to

-10-

such Guarantor's guaranty of the Obligations, any realization upon any Collateral, or otherwise) shall, unless otherwise directed by Borrowers with respect to any particular payment (unless an Event of Default shall then be continuing, in which event Lender may disregard Borrowers' direction), be applied by Lender to the Obligations in such order as Lender may elect, and absent such election shall be applied as follows:

       (i)   **FIRST**, to reimburse Lender for all out-of-pocket costs and expenses, and all indemnified losses, incurred by Lender which are reimbursable to Lender in accordance with this Agreement and/or any of the other Loan Documents,

       (ii)   **SECOND**, to any accrued but unpaid interest on any Protective Advances,

       (iii)   **THIRD**, to the outstanding principal of any Protective Advances,

       (iv)   **FOURTH**, to any accrued but unpaid fees owing to Lender under this Agreement and/or any other Loan Documents,

       (v)   **FIFTH**, to any unpaid accrued interest on the Obligations,

       (vi)   **SIXTH**, to the outstanding principal of the Revolving Loans and, to the extent required by Lender, to cash collateralize the Letter of Credit Balance, and

       (vii)   **SEVENTH,** to the outstanding principal balance of the Term Loan;

       (viii)   **EIGHTH**, to the payment of any other outstanding Obligations; and after payment in full in cash of all of the outstanding monetary Obligations, any further amounts paid to or received by Lender in respect of the Obligations (so long as no monetary Obligations are outstanding) shall be paid over to Borrower or such other Person(s) as may be legally entitled thereto.

For purposes of determining the Borrowing Base, such amounts will be credited to the Loan Account and the Collateral balances to which they relate upon Lender's receipt of an advice from Lender's Bank (set forth in Section 5 of Schedule A) that such items have been credited to Lender's account at Lender's Bank (or upon Lender's deposit thereof at Lender's Bank in the case of payments received by Lender in kind), in each case subject to final payment and collection. However, for purposes of computing interest on the Obligations, such items shall be deemed applied by Lender two (2) Business Days after Lender's receipt of advice of deposit thereof at Lender's Bank.

       **4.3   Notification; Verification.**  Lender or its designee may, from time to time, whether or not a Default or Event of Default has occurred:  (i) verify directly with the Account Debtors of any Borrower (or by any manner and through any medium Lender considers advisable) the validity, amount and other matters relating to the Accounts and Chattel Paper of Borrowers, by means of mail, telephone or otherwise, either in the name of any Borrower or Lender or such other name as Lender may choose; (ii) notify Account Debtors of any Borrower that Lender has a security interest in the Accounts of such Borrower and direct such Account Debtors to make payment thereof directly to Lender; each such notification to be sent on the letterhead of Borrower and substantially in the form of Exhibit E annexed hereto; and (iii) demand, collect or enforce payment of any Accounts and Chattel Paper (but without any duty to do so). Each Borrower hereby authorizes Account Debtors to make payments directly to Lender and to rely on notice from Lender without further inquiry. Lender may on behalf of each Borrower endorse all items of payment received by Lender that are payable to any Borrower for the purposes described above.

-11-

Case: 19-04057   Doc# 86-8   Filed: 10/02/20   Entered: 10/02/20 14:29:05   Page 86
of 99
TR_PS_000174714

**4.4** **Power of Attorney.** Each Borrower hereby grants to Lender an irrevocable power of attorney, coupled with an interest, authorizing and permitting Lender (acting through any of its officers, employees, attorneys or agents), at any time (whether or not a Default or Event of Default has occurred and is continuing, except as expressly provided below), at Lender's option, but without obligation, with or without notice to such Borrower, and at each Borrower's expense, to do any or all of the following, in such Borrower's name or otherwise: (i) execute on behalf of such Borrower any documents that Lender may, in its sole discretion, deem advisable in order to perfect, protect and maintain Lender's security interests, and priority thereof, in the Collateral and/or to fully consummate all the transactions contemplated by this Agreement and the other Loan Documents (including such financing statements and continuation financing statements, and amendments or other modifications thereto, as Lender shall deem necessary or appropriate); (ii) in connection with the exercise by Lender of any remedies hereunder or under any other Loan Document in connection with an Event of Default, execute on behalf of such Borrower any document exercising, transferring or assigning any option to purchase, sell or otherwise dispose of or lease (as lessor or lessee) any real or personal property which is part of the Collateral or in which Lender has an interest; (iii) at any time after an Event of Default, execute on behalf of such Borrower any invoices relating to any Accounts, any draft against any Account Debtor, any proof of claim in bankruptcy, any notice of Lien or claim, and any assignment or satisfaction of mechanic's, materialman's or other Lien; (iv) at any time after an Event of Default, execute on behalf of such Borrower any notice to any Account Debtor; (v) receive and otherwise take control in any manner of any cash or non-cash items of payment or Proceeds of Collateral; (vi) endorse such Borrower's name on all checks and other forms of remittances received by Lender; (vii) at any time after an Event of Default, pay, contest or settle any Lien, charge, encumbrance, security interest and adverse claim in or to any of the Collateral, or any judgment based thereon, or otherwise take any action to terminate or discharge the same; (viii) after the occurrence of a Default or Event of Default, grant extensions of time to pay, compromise claims relating to, and settle Accounts, Chattel Paper and General Intangibles for less than face value and execute all releases and other documents in connection therewith; (ix) pay any sums required on account of such Borrower's taxes or to secure the release of any Liens therefor; (x) pay any amounts necessary to obtain, or maintain in effect, any of the insurance described in Section 5.14; (xi) settle and adjust, and give releases of, any insurance claim that relates to any of the Collateral and obtain payment therefor; (xii) instruct any third party having custody or control of any Collateral or books or records belonging to, or relating to, such Borrower to give Lender the same rights of access and other rights with respect thereto as Lender has under this Agreement or any other Loan Document; (xiii) after the occurrence of a Default or Event of Default, change the address for delivery of such Borrower's mail and receive and open all mail addressed to such Borrower; (xiv) after the occurrence of a Default or Event of Default, vote any right or interest with respect to any Investment Property; (xv) endorse or assign to Lender on such Borrower's behalf any portion of Collateral evidenced by an agreement, Instrument or Document if an endorsement or assignment of any such items is not made by such Borrower pursuant to Section 3.2; and (xvi) instruct any Account Debtor to make all payments due to any Borrower directly to Lender. Any and all sums paid, and any and all costs, expenses, liabilities, obligations and reasonable attorneys' fees incurred, by Lender with respect to the foregoing shall be added to and become part of the Obligations, shall be payable on demand, and shall bear interest at a rate equal to the highest interest rate applicable to any of the Obligations. Each Borrower agrees that Lender's rights under the foregoing power of attorney and/or any of Lender's other rights under this Agreement or the other Loan Documents shall not be construed to indicate that Lender is in control of the business, management or properties of such Borrower.

**4.5** **Disputes.** Each Borrower shall promptly notify Lender of all disputes or claims relating to its Accounts and Chattel Paper to the extent such claims or disputes are in excess of $50,000 individually or in the aggregate. Each Borrower agrees that it will not, without Lender's prior written

-12-

consent, compromise or settle any of its Accounts or Chattel Paper for less than the full amount thereof, grant any extension of time for payment of any of its Accounts or Chattel Paper, release (in whole or in part) any Account Debtor or other person liable for the payment of any of its Accounts or Chattel Paper or grant any credits, discounts, allowances, deductions, return authorizations or the like with respect to any of its Accounts or Chattel Paper; except (unless otherwise directed by Lender during the existence of a Default or an Event of Default) Borrowers may take any of such actions in the ordinary course of its business consistent with past practices, ***provided*** that Borrowers promptly reports the same to Lender.

**4.6    Invoices.**  At Lender's request, Borrowers will cause all invoices and statements which they send to Account Debtors or other third parties to be marked, in a manner satisfactory to Lender, to reflect Lender's security interest therein and payment instructions.

**4.7    Inventory.**

(a)    **Returns.**  No Borrower will accept returns of any Inventory from any Account Debtor except in the ordinary course of its business or as otherwise provided for by written agreement with customers or in the UCC.  In the event the value of returned  Inventory in any one calendar month exceeds $200,000 (collectively for Borrowers), Borrowers will immediately notify Lender (which notice shall specify the value of all such returned Inventory, the reasons for such returns, and the locations and the condition of such returned Inventory).

(b)    **Third Party Locations.**  No Borrower will, without Lender's prior written consent, at any time, store any Inventory with any warehouseman or other third party other than as set forth in Sections 1(c) and 1(d) of the Disclosure Schedule.

(c)    **Sale on Return, etc.**  No Borrower will, without Lender's prior written consent, at any time, sell any Inventory on a sale-or-return, guaranteed sale, consignment, or other contingent basis.

(d)    **Fair Labor Standards Act.**  Each Borrower represents and warrants, and covenants that as of the Closing Date and at all times thereafter, all of the Inventory of such Borrower is and will be, produced only in accordance with the Fair Labor Standards Act of 1938 and all rules, regulations and orders promulgated thereunder.

**4.8    Access to Collateral, Books and Records.**  At reasonable times, and in the absence of an Event of Default, no more than once per quarter, Lender and/or its representatives or agents shall have the right to inspect the Collateral, and the right to examine and copy each Borrower's books and records. Each Borrower agrees to give Lender access to any or all of such Borrower's, and each of its Subsidiaries', premises to enable Lender to conduct such inspections and examinations.  Such inspections and examinations shall be at Borrower's expense and the charge therefor shall be $1,000 per person per day (or such higher amount as shall represent Lender's then current standard charge), plus out-of-pocket expenses.  Lender may, at Borrowers' expense, use Borrowers' personnel, computer and other equipment, programs, printed output and computer readable media, supplies and premises for the collection, sale or other disposition of Collateral to the extent Lender, in its sole discretion, deems appropriate.  Each Borrower hereby irrevocably authorizes all accountants and third parties to disclose and deliver to Lender, at Borrowers' expense, all financial information, books and records, work papers, management reports and other information in their possession regarding Borrowers.

**4.9    Appraisals.**  Borrowers will permit Lender and each of its representatives or agents to conduct appraisals and valuations of the Collateral at such times and intervals as Lender may designate. Such appraisals and valuations shall be at Borrowers' expense; <u>provided</u>, that so long as no Event of

-13-

Default has occurred and is continuing, subject to appraisals and valuations conducted in accordance with Section 1.8(b) with respect to Eligible Equipment, Borrowers shall not be liable for the expense of such appraisals and valuations more than twice per calendar year.

## 5. REPRESENTATIONS, WARRANTIES AND COVENANTS.

To induce Lender to enter into this Agreement, each Borrower represents, warrants and covenants as follows (it being understood and agreed that (a) each such representation and warranty (i) will be made as of the date hereof and be deemed remade as of each date on which any Loan is made or Letter of Credit is issued (except to the extent any such representation or warranty expressly relates only to any earlier and/or specified date), and (ii) shall not be affected by any knowledge of, or any investigation by, Lender, and (b) each such covenant shall continuously apply with respect to all times commencing on the date hereof and continuing until all of the Obligations are paid in full in cash and all of Lender's commitments under this Agreement have been terminated):

**5.1 Existence and Authority.** Each Borrower is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization (which jurisdiction is identified in Section 1(a) of the Disclosure Schedule) and is qualified to do business in each jurisdiction in which the operation of its business requires that it be qualified (which each such jurisdiction is identified in Section 1(a) of the Disclosure Schedule). Each Borrower has all requisite power and authority to own and operate its properties, to carry on its business as now conducted and as proposed to be conducted, to enter into the Loan Documents to which it is a party and to carry out the transactions contemplated thereby. The execution, delivery and performance by each Borrower of this Agreement and all of the other Loan Documents to which Borrower is a party have been duly and validly authorized, do not violate such Borrower's Organic Documents, or any law or any agreement or instrument or any court order which is binding upon any such Borrower or its property, do not constitute grounds for acceleration of any Indebtedness or obligation under any agreement or instrument which is binding upon such Borrower or its property, and do not require the consent of any Person. Other than the approval of the Bankruptcy Court required for the transactions contemplated by the Sale Order, no Borrower is required to obtain any government approval, consent, or authorization from, or to file any declaration or statement with, any Governmental Authority in connection with or as a condition to the execution, delivery or performance of any of the Loan Documents. This Agreement and each of the other Loan Documents have been duly executed and delivered by, and are enforceable against, each Borrower in accordance with their respective terms. Section 1(f) of the Disclosure Schedule sets forth the ownership of each Borrower and its Subsidiaries.

**5.2 Names; Trade Names and Styles.** The name of each Borrower set forth on Section 1(b) of the Disclosure Schedule is its correct and complete legal name as of the date hereof, and no Borrower has used any other name at any time in the past five years, or at any time will use any other name, in any tax filing made in any jurisdiction. Listed in Section 1(b) of the Disclosure Schedule are all prior names used by Borrowers at any time in the past five years and all of the present and prior trade names used by Borrowers at any time in the past five years. Borrowers shall give Lender at least thirty days' prior written notice (and will deliver an updated Section 1(b) of the Disclosure Schedule to reflect the same) before any Borrower changes its legal name or does business under any other name.

**5.3 Title to Collateral; Third Party Locations; Permitted Liens.** Each Borrower has, and at all times will continue to have, good and marketable title to all of the Collateral. The Collateral now is, and at all times will remain, free and clear of any and all Liens, except for Permitted Liens. Lender now has, and will at all times continue to have, a first-priority perfected and enforceable security interest in all

-14-

of the Collateral, subject only to the Permitted Liens, and each Borrower will at all times defend Lender and the Collateral against all claims of others. None of the Collateral which is Equipment is, or will at any time, be affixed to any real property in such a manner, or with such intent, as to become a fixture (except to the extent it constitutes a fixture on real property that is Collateral). Except for leases or subleases as to which Borrowers have delivered to Lender a landlord's waiver in form and substance satisfactory to Lender, no Borrower is nor will it be a lessee or sublessee under any real property lease or sublease. Except for warehouses as to which Borrowers have delivered to Lender a warehouseman's waiver in form and substance satisfactory to Lender, no Borrower is nor will it at any time be a bailor of any Goods at any warehouse or otherwise. Prior to causing or permitting any Collateral to at any time be located upon premises in which any third party (including any landlord, warehouseman, or otherwise) has an interest, Borrowers shall notify Lender and Borrowers shall cause each such third party to execute and deliver to Lender, in form and substance acceptable to Lender, such waivers, collateral access agreements, and subordinations as Lender shall specify, so as to, among other things, ensure that Lender's rights in the Collateral are, and will at all times continue to be, superior to the rights of any such third party and that Lender has access to such Collateral. Borrowers will keep at all times in full force and effect, and will comply at all times with all the terms of, any lease of real property where any of the Collateral now or in the future may be located.

**5.4     Accounts and Chattel Paper.** As of each date reported by Borrowers, all Accounts which Borrowers have then reported to Lender as then being Eligible Accounts comply in all respects with the criteria for eligibility set forth in the definition of Eligible Accounts. All such Accounts and Chattel Paper are genuine and in all respects what they purport to be, arise out of a completed, bona fide and unconditional and non-contingent sale and delivery of goods or rendition of services by Borrowers in the ordinary course of its business and in accordance with the terms and conditions of all purchase orders, contracts or other documents relating thereto, each Account Debtor thereunder had the capacity to contract at the time any contract or other document giving rise to such Accounts and Chattel Paper were executed, and the transactions giving rise to such Accounts and Chattel Paper comply with all applicable laws and governmental rules and regulations.

**5.5     Electronic Chattel Paper.** To the extent that Borrowers obtain or maintain any Electronic Chattel Paper, Borrowers shall at all times create, store and assign the record or records comprising the Electronic Chattel Paper in such a manner that (i) a single authoritative copy of the record or records exists which is unique, identifiable and except as otherwise provided below, unalterable, (ii) the authoritative copy identifies Lender as the assignee of the record or records, (iii) the authoritative copy is communicated to and maintained by Lender or its designated custodian, (iv) copies or revisions that add or change an identified assignee of the authoritative copy can only be made with the participation of Lender, (v) each copy of the authoritative copy and any copy of a copy is readily identifiable as a copy that is not the authoritative copy and (vi) any revision of the authoritative copy is readily identifiable as an authorized or unauthorized revision.

**5.6     Capitalization; Investment Property.**

(a)     No Borrower directly or indirectly, owns nor at any time shall it own, any capital stock or other equity interests of any other Person except as set forth in Sections 1(f) and 1(g) of the Disclosure Schedule, which such Sections of the Disclosure Schedule list all Investment Property owned by each Borrower.

-15-

(b)     None of the Pledged Equity has been issued or otherwise transferred in violation of the Securities Act, or other applicable laws of any jurisdiction to which such issuance or transfer may be subject.

(c)     The Pledged Equity pledged by Borrowers hereunder constitutes all of the issued and outstanding equity interests of each Issuer owned by Borrowers.

(d)     All of the Pledged Equity has been duly and validly issued and is fully paid and non-assessable, and the holders thereof are not entitled to any preemptive, first refusal, or other similar rights. There are no outstanding options, warrants or similar agreements, documents, or instruments with respect to any of the Pledged Equity.

(e)     Each Borrower has caused each Issuer to amend or to otherwise modify its Organic Documents, books, records, and related agreements, documents, and instruments, as applicable, to reflect the rights and interests of Lender hereunder, and to the extent required to enable and empower Lender to exercise and enforce its rights and remedies hereunder in respect of the Pledged Equity and other Investment Property.

(f)     Borrowers will take any and all actions required or requested by Lender, from time to time, to (i) cause Lender to obtain exclusive control of any Investment Property in a manner acceptable to Lender and (ii) obtain from any Issuers and such other Persons as Lender shall specify, for the benefit of Lender, written confirmation of Lender's exclusive control over such Investment Property and take such other actions as Lender may request to perfect Lender's security interest in any Investment Property.  For purposes of this Section 5.6, Lender shall have exclusive control of Investment Property if (A) pursuant to Section 3.2, such Investment Property consists of certificated securities and Borrowers deliver such certificated securities to Lender (with all appropriate endorsements); (B) such Investment Property consists of uncertificated securities and either (x) Borrowers deliver such uncertificated securities to Lender or (y) the Issuer thereof agrees, pursuant to documentation in form and substance satisfactory to Lender, that it will comply with instructions originated by Lender without further consent by Borrowers, and (C) such Investment Property consists of security entitlements and either (x) Lender becomes the entitlement holder thereof or (y) the appropriate securities intermediary agrees, pursuant to documentation in form and substance satisfactory to Lender, that it will comply with entitlement orders originated by Lender without further consent by Borrowers.  Each Borrower that is a limited liability company or a partnership hereby represents and warrants that it has not, and at no time will, elect pursuant to the provisions of Section 8-103 of the UCC to provide that its equity interests are securities governed by Article 8 of the UCC.

(g)     No Borrower owns, nor does it have any present intention of acquiring, any "margin security" or any "margin stock" within the meaning of Regulations T, U or X of the Board of Governors of the Federal Reserve System (herein called "margin security" and "margin stock").  None of the proceeds of the Loans will be used, directly or indirectly, for the purpose of purchasing or carrying, or for the purpose of reducing or retiring any Indebtedness which was originally incurred to purchase or carry, any margin security or margin stock or for any other purpose which might constitute the transactions contemplated hereby a "purpose credit" within the meaning of said Regulations T, U or X, or cause this Agreement to violate any other regulation of the Board of Governors of the Federal Reserve System or the Exchange Act, or any rules or regulations promulgated under such statutes.

(h)     Borrowers shall not vote to enable, or take any other action to cause or to permit, any Issuer to issue any equity interests of any nature, or to issue any other securities or interests convertible into or granting the right to purchase or exchange for any equity interests of any nature of any Issuer.

140690.01017/95211127v.5

Case: 19-04057     Doc# 86-8     Filed: 10/02/20     Entered: 10/02/20 14:29:05     Page 91 of 99

TR_PS_000174719

(i)    Borrowers shall not take, or fail to take, any action that would in any manner impair the value or the enforceability of Lender's Lien on any of the Investment Property, or any of Lender's rights or remedies under this Agreement or any other Loan Document with respect to any of the Investment Property.

(j)    In the case of any Borrower which is an Issuer, such Issuer agrees that the terms of Section 7.3(g)(iii) of this Agreement shall apply to such Borrower with respect to all actions that may be required of it pursuant to such Section 7.3(g)(iii) regarding the Investment Property issued by it.

5.7    **Commercial Tort Claims.**  No Borrower has any Commercial Tort Claims pending other than those listed in Section 2 of the Disclosure Schedule, and Borrowers shall promptly (but in any case no later than five Business Days thereafter) notify Lender in writing upon incurring or otherwise obtaining a Commercial Tort Claim after the date hereof against any third party.  Such notice shall constitute Borrowers' authorization to amend such Section 2 to add such Commercial Tort Claim and shall automatically be deemed to amend such Section 2 to include such Commercial Tort Claim.

5.8    **State of Organization; Location of Collateral.**  Sections 1(c) and 1(d) of the Disclosure Schedule set forth (i) each place of business of Borrowers (including their chief executive office), (ii) all locations where all Inventory, Equipment, and other Collateral owned by Borrowers is kept, and (iii) whether each such Collateral location and/or place of business (including Borrowers' chief executive office) is owned by Borrowers or leased (and if leased, specifies the complete name and notice address of each lessor).  No Collateral is located outside the United States or in the possession of any lessor, bailee, warehouseman or consignee, except as expressly indicated in Sections 1(c) and 1(d) of the Disclosure Schedule.  Borrowers will give Lender at least thirty days' prior written notice before changing any Borrower's state of organization, opening any additional place of business, changing any Borrower's chief executive office or the location of its books and records, or moving any of the Collateral to a location other than one of the locations set forth in Sections 1(c) and 1(d) of the Disclosure Schedule, and will execute and deliver all financing statements, landlord waivers, collateral access agreements, mortgages, and all other agreements, instruments and documents which Lender shall require in connection therewith prior to making such change, all in form and substance satisfactory to Lender.  Without the prior written consent of Lender, no Borrower will at any time (x) change its state of organization or (y) allow any Collateral to be located outside of the continental United States of America.

5.9    **Financial Statements and Reports; Solvency.**

(a)    All financial statements delivered to Lender by or on behalf of Borrowers have been, and at all times will be, prepared in conformity with GAAP and completely and fairly reflect the financial condition of Borrowers covered thereby, at the times and for the periods therein stated.

(b)    As of the date hereof (after giving effect to the Loans and Letters of Credit to be made or issued on the date hereof, and the consummation of the transactions contemplated hereby), and as of each other day that any Loan or Letter of Credit is made or issued (after giving effect thereof), (i) the fair saleable value of all of the assets and properties of Borrowers on a consolidated basis, exceeds the aggregate liabilities and Indebtedness of Borrowers (including contingent liabilities), (ii) Borrowers, on a consolidated basis, are solvent and able to pay their debts as they come due, (iii) Borrowers, on a consolidated basis, have sufficient capital to carry on their business as now conducted and as proposed to be conducted, (iv) no Borrower is contemplating either the liquidation of all or any substantial portion of its assets or property, or the filing of any petition under any state, federal, or other bankruptcy or insolvency law, and (v) no Borrower has knowledge of any Person contemplating the filing of any such petition against any Borrower.

-17-

Case: 19-04057    Doc# 86-8    Filed: 10/02/20    Entered: 10/02/20 14:29:05    Page 92
of 99
TR_PS_000174720

**5.10  Tax Returns and Payments; Pension Contributions.**

(a)    Each Borrower has timely filed all tax returns and reports required by applicable law, has timely paid all applicable Taxes, assessments, deposits and contributions owing by such Borrower and will timely pay all such items in the future as they became due and payable.  Each Borrower may, however, defer payment of any contested taxes; *provided*, that such Borrower (i) in good faith contests its obligation to pay such Taxes by appropriate proceedings promptly and diligently instituted and conducted; (ii) notifies Lender in writing of the commencement of, and any material development in, the proceedings; (iii) posts bonds or takes any other steps required to keep the contested taxes from becoming a Lien upon any of the Collateral and (iv) maintains adequate reserves therefor in conformity with GAAP.  No Borrower is aware of any claims or adjustments proposed for any prior tax years that could result in additional taxes becoming due and payable by any Borrower.

(b)    Each Plan is in compliance in all material respects with the applicable provisions of ERISA, the Code and other applicable laws.  Each Plan that is intended to be a qualified plan under Section 401(a) of the Code has received a favorable determination letter or opinion letter from the Internal Revenue Service to the effect that the form of such Plan is qualified under Section 401(a) of the Code and the trust related thereto has been determined by the Internal Revenue Service to be exempt from federal income tax under Section 501(a) of the Code, or an application for such a letter is currently being processed by the Internal Revenue Service.  To the best knowledge of Borrowers, nothing has occurred that would prevent or cause the loss of such tax-qualified status.  There are no pending or, to the best knowledge of Borrowers, threatened claims, actions or lawsuits, or action by any Governmental Authority, with respect to any Plan that could reasonably be expected to result in liabilities to any Borrower.  There has been no prohibited transaction or violation of the fiduciary responsibility rules with respect to any Plan that has resulted or could reasonably be expected to result in liabilities to Borrowers.

(c)    No ERISA Event has occurred, and no Borrower is aware of any fact, event or circumstance that could reasonably be expected to constitute or result in an ERISA Event with respect to any Pension Plan, in each case that could reasonably be expected to result in liabilities to Borrowers.  Each Borrower and each ERISA Affiliate has met all applicable requirements under the Pension Funding Rules in respect of each Pension Plan, and no waiver of the minimum funding standards under the Pension Funding Rules has been applied for or obtained, in each case except as could not reasonably be expected to result in liabilities to Borrowers.  As of the most recent valuation date for any Pension Plan, the funding target attainment percentage (as defined in Section 430(d)(2) of the Code) is 60% or higher and Borrowers do not know of any facts or circumstances that could reasonably be expected to cause the funding target attainment percentage for any such plan to drop below 60% as of the most recent valuation date.

(d)    Neither Borrowers nor any ERISA Affiliate has incurred any liability to the PBGC other than for the payment of premiums, and there are no premium payments which have become due that are unpaid, except as could not reasonably be expected to result in liabilities individually or in the aggregate to Borrowers in excess of $10,000.  Neither Borrower nor any ERISA Affiliate has engaged in a transaction that could be subject to Section 4069 or Section 4212(c) of ERISA except as could not reasonably be expected to result in liabilities individually or in the aggregate to Borrowers in excess of $10,000.  No Pension Plan has been terminated by the plan administrator thereof nor by the PBGC, and no event or circumstance has occurred or exists that could reasonably be expected to cause the PBGC to institute proceedings under Title IV of ERISA to terminate any Pension Plan except as could not reasonably be expected to result in liabilities individually or in the aggregate to Borrowers in excess of $10,000.

**5.11  Compliance with Laws; Intellectual Property; Licenses.**

(a)     Borrowers have complied, and will continue at all times to comply, in all material respects with all provisions of all applicable laws and regulations, including those relating to the ownership of real or personal property, the conduct and licensing of Borrowers' business, the payment and withholding of Taxes, ERISA and other employee matters, and safety and environmental matters (except as disclosed in the Disclosure Schedule).

(b)     No Borrower has received written notice of default or violation, nor is any Borrower in default or violation, with respect to any judgment, order, writ, injunction, decree, demand or assessment issued by any court or any federal, state, local, municipal or other Governmental Authority relating to any aspect of such Borrower's business, affairs, properties or assets.  No Borrower has received written notice of or been charged with, or is, to the knowledge of any Borrower, under investigation with respect to, any violation in any material respect of any provision of any applicable law.

(c)     Borrowers do not own any Intellectual Property, except as set forth in Section 4 of the Disclosure Schedule.  Except as set forth in Section 4 of the Disclosure Schedule, none of the Intellectual Property owned by Borrowers is the subject of any licensing or franchise agreement pursuant to which any Borrower is the licensor or franchisor.  Borrowers shall promptly (but in any event within thirty (30) days thereafter) notify Lender in writing of any additional Intellectual Property rights acquired or arising after the Closing Date and shall submit to Lender a supplement to Section 4 of the Disclosure Schedule to reflect such additional rights (*provided* that Borrowers' failure to do so shall not impair Lender's security interest therein).  Borrowers shall execute a separate security agreement granting Lender a security interest in such Intellectual Property (whether owned on the Closing Date or thereafter), in form and substance acceptable to Lender and suitable for registering such security interest in such Intellectual Property with the United States Patent and Trademark Office and/or United States Copyright Office, as applicable (*provided* that Borrowers' failure to do so shall not impair Lender's security interest therein).  Borrowers own or have, and will at all times continue to own or have, the valid right to use all material patents, trademarks, copyrights, software, computer programs, equipment designs, network designs, equipment configurations, technology and other Intellectual Property used, marketed and sold in Borrowers' business, and Borrowers are in compliance, and will continue at all times to comply, in all material respects with all licenses, user agreements and other such agreements regarding the use of Intellectual Property.  Borrower does not have any knowledge that, or has received any notice claiming that, any of such Intellectual Property infringes upon or violates the rights of any other Person.

(d)     Borrowers have and will continue at all times to have, all federal, state, local and other licenses and permits required to be maintained in connection with Borrowers' business operations, and all such licenses and permits are valid and in full force and effect.  Borrowers have, and will continue at all times to have, complied with the requirements of such licenses and permits in all material respects, and has received no written notice of any pending or threatened proceedings for the suspension, termination, revocation or limitation thereof.  No Borrower is aware of any facts or conditions that could reasonably be expected to cause or permit any of such licenses or permits to be voided, revoked or withdrawn.

**5.12  Litigation.**  Section 1(e) of the Disclosure Schedule discloses all claims, proceedings, litigation or investigations pending or (to the best of Borrowers' knowledge) threatened against any Borrower as of the Closing Date.  There is no claim, suit, litigation, proceeding or investigation pending or (to the best of Borrower's knowledge) threatened by or against or affecting any Borrower in any court or before any Governmental Authority (or any basis therefor known to Borrower) which may result, either separately or in the aggregate, in liability in excess of $25,000 for the Borrowers, in any Material

-19-

Adverse Effect, or in any material impairment in the ability of Borrowers to carry on their business in substantially the same manner as it is now being conducted.

**5.13 Use of Proceeds.** All of the Loans are solely for commercial purposes of Borrowers and all proceeds of all Loans and Letters of Credit shall be used by Borrowers solely (i) with respect to Loans made on the Closing Date, to pay a portion of the purchase price under the Acquisition Agreement, (ii) to pay the fees, costs, and expenses incurred in connection with this Agreement, the other Loan Documents, and the transactions contemplated hereby and thereby, (iii) for Borrower's working capital purposes, and (iv) for such other purposes as specifically permitted pursuant to the terms of this Agreement. All proceeds of all Loans and Letters of Credit will be used solely for lawful business purposes.

**5.14 Insurance.**

(a) Borrowers will at all times carry property, liability and other insurance, with insurers acceptable to Lender, in such form and amounts, and with such deductibles and other provisions, as Lender shall require, and Borrowers will provide Lender with evidence satisfactory to Lender that such insurance is, at all times, in full force and effect. A true and complete listing of such insurance as of the Closing Date, including issuers, coverages and deductibles, is set forth in Section 5 of the Disclosure Schedule. Each property insurance policy shall name Lender as loss payee and shall contain a lender's loss payable endorsement in form acceptable to Lender, each liability insurance policy shall name Lender as an additional insured, and each business interruption insurance policy shall be collaterally assigned to Lender, all in form and substance satisfactory to Lender. All policies of insurance shall provide that they may not be cancelled or changed without at least thirty days' prior written notice to Lender, and shall otherwise be in form and substance satisfactory to Lender. Borrowers shall advise Lender promptly of any policy cancellation, non-renewal, reduction, or material amendment with respect to any insurance policies maintained by any Loan Party or any receipt by Borrowers of notice from any insurance carrier regarding any intended or threatened cancellation, non-renewal, reduction or material amendment of any of such policies, and Borrowers shall promptly deliver to Lender copies of all notices and related documentation received by Borrowers in connection with the same.

(b) Borrowers shall deliver to Lender no later than fifteen (15) days prior to expiration of any then current insurance policies, insurance certificates evidencing renewal of all such insurance policies required by Section 5.14 of this Agreement. Borrowers shall deliver to Lender, upon Lender's request, certificates evidencing such insurance coverage in such form as Lender shall specify. If Borrowers fail to provide Lender with a certificate of insurance or other evidence of the continuing insurance coverage required by this Agreement within three (3) Business Days of Lender's written request, Lender may purchase insurance required by this Agreement at Borrowers' expense. This insurance may, but need not, protect Borrowers' interests.

**5.15 Financial, Collateral and Other Reporting / Notices.** Borrowers have kept and will at all times keep adequate records and books of account with respect to their business activities and the Collateral in which proper entries are made in accordance with GAAP reflecting all their financial transactions. Borrowers will cause to be prepared and furnished to Lender, in each case in a form and in such detail as is acceptable to Lender the following items (the items to be provided under this Section 5.15 shall be delivered to the Lender by posting on Passport 6.0 (or, if requested by the Lender, by another form of Approved Electronic Communication or in writing)).

-20-

(a) **Borrowing Base / Collateral Reports / Insurance Certificates / Disclosure Schedules / Other Items.** The items described on Schedule D hereto by the respective dates set forth therein;

(b) **Annual Financial Statements.** Not later than ninety days after the close of each Fiscal Year, audited annual financial statements of Borrowers and each of their Subsidiaries as of the end of such year, including balance sheet, income statement, and statement of cash flow, on a consolidated and consolidating basis (including management discussion and analysis of such results), certified by a firm of independent certified public accountants of recognized standing selected by Borrowers but acceptable to Lender, together with a copy of any management letter issued in connection therewith. Concurrently with the delivery of such financial statements, Borrower shall deliver to Lender a Compliance Certificate, indicating whether (i) Borrower is in compliance with each of the covenants specified in Section 5.25, and setting forth a detailed calculation of such covenants, and (ii) any Default or Event of Default is then in existence.

(c) **Interim Financial Statements.** Not later than thirty days after the end of each month hereafter, including the last month of each Fiscal Year, unaudited interim financial statements of Borrowers as of the end of such month and of the portion of such Fiscal Year then elapsed, including balance sheet, income statement, and statement of cash flow, on a consolidated and consolidating basis, certified by the principal financial officer of Borrowers as prepared in accordance with GAAP and fairly presenting the consolidated financial position and results of operations (including management discussion and analysis of such results) of Borrowers for such month and period subject only to changes from ordinary course year-end audit adjustments and except that such statements need not contain footnotes. Concurrently with the delivery of such financial statements, Borrowers shall deliver to Lender a Compliance Certificate, indicating whether (i) Borrowers are in compliance with each of the covenants specified in Section 5.25, and setting forth a detailed calculation of such covenants, and (ii) any Default or Event of Default is then in existence;

(d) **Projections, Etc.** Not later than thirty days prior to the end of each Fiscal Year, monthly business projections for the following Fiscal Year for Borrowers on a consolidated and consolidating basis, which projections shall include for each such period Borrowing Base projections, profit and loss projections, balance sheet projections, income statement projections and cash flow projections;

(e) **Shareholder Reports, Etc.** Promptly after the sending or filing thereof, as the case may be, copies of any proxy statements, financial statements or reports which Borrowers have made available to its shareholders and copies of any regular, periodic and special reports or registration statements which Borrowers file with the Securities and Exchange Commission or any Governmental Authority which may be substituted therefor, or any national securities exchange;

(f) **ERISA Reports.** Copies of any annual report to be filed pursuant to the requirements of ERISA in connection with each plan subject thereto promptly upon request by Lender and in addition, Borrowers shall promptly notify Lender upon having knowledge of any ERISA Event; and

(g) **Tax Returns.** Each federal and state income tax return filed by any Borrower promptly (but in no event later than ten days following the filing of such return), together with such supporting documentation as is supplied to the applicable tax authority with such return and proof of payment of any amounts owing with respect to such return.

-21-

Case: 19-04057    Doc# 86-8    Filed: 10/02/20    Entered: 10/02/20 14:29:05    Page 96 of 99
TR_PS_000174724

(h)    **Notification of Certain Changes**.  Borrowers will promptly (and in no case later than the earlier of (i) three Business Days after the occurrence of any of the following and (ii) such other date that such information is required to be delivered pursuant to this Agreement or any other Loan Document) notify Lender in writing of: (i) the occurrence of any Default or Event of Default, (ii) the occurrence of any event that has had, or may have, a Material Adverse Effect, (iii) any change in Borrowers' officers or directors, (iv) any investigation, action, suit, proceeding or claim (or any material development with respect to any existing investigation, action, suit, proceeding or claim) relating to any Borrower, any officer or director of any Borrower, the Collateral or which may result in an adverse impact upon any Borrower's business, assets or financial condition, (v) any material loss or damage to the Collateral, (vi) any event or the existence of any circumstance that has resulted in, or could reasonably be expected to result in, any material adverse change in the business or financial affairs of any Borrower, any Default, or any Event of Default, or which would make any representation or warranty previously made by any Borrower to Lender untrue in any material respect or constitute a material breach if such representation or warranty was then being made, (vii) any actual or alleged breaches of any Material Contract or termination or threat to terminate any Material Contract or any material amendment to or modification of a Material Contract, or the execution of any new Material Contract by any Borrower, and (viii) any change in Borrowers' certified accountant.  In the event of each such notice under this Section 5.15(h), Borrowers shall give notice to Lender of the action or actions that Borrowers have taken, are taking, or propose to take with respect to the event or events giving rise to such notice obligation.

(i)    **Other Information**.  Promptly upon request, such other data and information (financial and otherwise) as Lender, from time to time, may reasonably request, bearing upon or related to the Collateral or Borrowers' business or financial condition or results of operations.

**5.16  Litigation Cooperation.**  Should any third-party suit, regulatory action, or any other judicial, administrative, or similar proceeding be instituted by or against Lender with respect to any Collateral or in any manner relating to any Borrower, this Agreement, any other Loan Document or transactions contemplated hereby, Borrowers shall, without expense to Lender, make available each Borrower, such Borrower's officers, employees and agents, and any Borrower's books and records, without charge, to the extent that Lender may deem them reasonably necessary in order to prosecute or defend any such suit or proceeding.

**5.17  Maintenance of Collateral, Etc.**  Borrowers will maintain all of the Collateral in good working condition, ordinary wear and tear excepted, and Borrowers will not use the Collateral for any unlawful purpose.

**5.18  Material Contracts.**  Except as expressly disclosed in Section 1(h) of the Disclosure Schedule, no Borrower is (a) a party to any contract which has had or could reasonably be expected to have a Material Adverse Effect or (b) in default in the performance, observance or fulfillment of any of the obligations, covenants or conditions contained in (x) any contract to which it is a party or by which any of its assets or properties is bound, which default, individually or in the aggregate, could reasonably be expected to have a Material Adverse Effect or result in liabilities in excess of $25,000 or (y) any Material Contract.  Except for the contracts and other agreements listed in Section 1(h) of the Disclosure Schedule, no Borrower is a party, as of the Closing Date, to any (i) employment agreements covering the management of any Borrower, (ii) collective bargaining agreements or other labor agreements covering any employees of any Borrower, (iii) agreements for managerial, consulting or similar services, (iv) agreements regarding its assets or operations or any investment therein to which any of its equity holders is a party, (v) patent licenses, trademark licenses, copyright licenses or other lease or license agreements to which any Borrower is a party, either as lessor or lessee, or as licensor or licensee, (vi) distribution,

-22-

Case: 19-04057    Doc# 86-8    Filed: 10/02/20    Entered: 10/02/20 14:29:05    Page 97
of 99

TR_PS_000174725

marketing or supply agreements, (vii) customer agreements (in each case with respect to any contract of the type described in the preceding clauses (i), (iii), (iv), (v), (vi) and (vii) requiring payments of more than $25,000 in the aggregate in any Fiscal Year), (viii) partnership agreements, limited liability company agreements, or joint venture agreements, (ix) real estate leases, or (x) any other contract, in each case with respect to this clause (x) the breach, nonperformance or cancellation of which, could reasonably be expected to have a Material Adverse Effect; (each such contract and agreement, described in the preceding clauses (i) to (x), a "*Material Contract*").

     **5.19  No Default.**  No Default or Event of Default has occurred and is continuing.

     **5.20  No Material Adverse Change.**  Since the Closing Date, there has been no material adverse change in the financial condition, business, prospects, operations, or properties of any Borrower.

     **5.21  Full Disclosure.**  No report, notice, certificate, information or other statement  delivered or made (including, in electronic form) by or on behalf of any Borrower or any of their respective Affiliates to Lender in connection with this Agreement or any other Loan Document contains or will at any time contain any untrue statement of a material fact, or omits or will at any time omit to state any material fact necessary to make any statements contained herein or therein not misleading.  Except for matters of a general economic or political nature which do not affect Borrowers uniquely, there is no fact presently known to Borrowers which has not been disclosed to Lender, which has had or could reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

     **5.22  Sensitive Payments.**  No Borrower (a) has made nor will at any time make any contributions, payments or gifts to or for the private use of any governmental official, employee or agent where either the payment or the purpose of such contribution, payment or gift is illegal under the applicable laws of the United States or the jurisdiction in which made or any other applicable jurisdiction, (b) has established or maintained nor will it at any time establish or maintain any unrecorded fund or asset for any purpose or made any false or artificial entries on its books, (c) has made or will at any time make any payments to any Person with the intention that any part of such payment was to be used for any purpose other than that described in the documents supporting the payment, or (d) has engaged in or will at any time engage in any "trading with the enemy" or other transactions violating any rules or regulations of the Office of Foreign Assets Control or any similar applicable laws, rules or regulations.

     **5.23  Reserved.**

     **5.24  Negative Covenants.**  No Borrower shall, and Borrowers shall not permit any Subsidiary to, without Lender's prior written consent:

          (a)  merge or consolidate with another Person, form any new Subsidiary or acquire any interest in any Person;

          (b)  acquire any assets except (i) in the ordinary course of business, (ii) acquisitions of capital assets in an aggregate amount not to exceed $1,000,000 in any fiscal year and (iii) as otherwise expressly permitted by this Agreement;

          (c)  enter into any transaction outside the ordinary course of business that is not expressly permitted by this Agreement;

-23-

(d)    sell, transfer, return, or dispose of any Collateral or other assets with an aggregate value in excess of $10,000 in any calendar month, except that Borrowers may sell finished goods Inventory in the ordinary course of its business;

(e)    make any loans to, or investments in, any Affiliate or other Person in the form of money or other assets;

(f)    incur any Indebtedness other than the Obligations and Permitted Indebtedness;

(g)    create, incur, assume or suffer to exist any Lien or other encumbrance of any nature whatsoever, other than in favor of Lender to secure the Obligations, on any of its assets whether now or hereafter owned, other than Permitted Liens;

(h)    guaranty or otherwise become liable with respect to the obligations (other than the Obligations) of another party or entity;

(i)    pay or declare any dividends or other distributions on Borrowers' stock or other equity interest (except for dividends payable solely in capital stock or other equity interests of a Borrower); provided, that notwithstanding the foregoing, (i) so long as no Default or Event of Default exists or would result therefrom, Pacific Steel may make "Tax Burden Distributions" under and as defined in the Operating Agreement and (ii) so long as (v) no Default or Event of Default exists or would result therefrom, (w) Lender has received Borrowers' audited financial statements for the most recently ended fiscal year, (x) Borrowers have a Fixed Charge Coverage Ratio of not less than 1.10 to 1.00 on a pro forma basis, measured on a trailing twelve (12) month basis as of the last day of the most recently ended fiscal quarter for which financial statements have been delivered to Lender, giving effect to such distribution as if such distribution was made on the last day of such fiscal quarter, (y) as of the date such distribution is declared and after giving effect thereto,  Excess Availability as of such date and as of the date such distribution is made and the average Excess Availability for the thirty (30) day period ending on and as of such date, in each case, is not less than $2,000,000 and (z) Borrowers have delivered to Lender a certificate executed by the Chief Financial Officer or President of the Borrowers certifying as to clauses (v), (w), (x) and (y) above are true and correct as of the date of such proposed distribution, Pacific Steel may make distributions of cash to its equity holders once annually within the later of (A) ninety (90) days after the end of each fiscal year and (B) ten (10) days after the delivery of the financial statements required pursuant to Section 5.15(b) above;

(j)    redeem, retire, purchase or otherwise acquire, directly or indirectly, any of Borrower's capital stock or other equity interests;

(k)    make any change in any Borrower's capital structure other than equity transfers not resulting in a Default under Section 7.1(l) hereof;

(l)    dissolve or elect to dissolve;

(m)    engage, directly or indirectly, in a business other than the line of business which is being conducted on the date hereof and otherwise reasonably related thereto, wind up its business operations or cease substantially all, or any material portion, of its normal business operations, or suffer any material disruption, interruption or discontinuance of a material portion of its normal business operations;

(n)    pay any principal or other amount on any debt that is contractually subordinated to Lender in violation of the applicable subordination or intercreditor agreement;

-24-