

The following constitutes the Memorandum Decision of the Court.  Signed: August 10, 2022

Roger L. Efremsky
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>PACIFIC STEEL CASTING COMPANY LLC,<br><br>        Debtor.<br>_____<br>SARAH L. LITTLE, Chapter 7 Trustee,<br><br>        Plaintiff,<br><br>   v.<br><br>SPEYSIDE FUND, LLC, a Delaware limited liability company, et al.,<br><br>        Defendants.<br>_____ | Case No. 19-40193<br>Chapter 7<br><br><br><br><br>AP No. 19-4057 |

**Memorandum Decision Granting *Daubert* Motions**

The Speyside Defendants have filed a motion seeking to exclude certain parts of the reports of Plaintiff's expert witness Austin Wade (the "Wade Reports"). Defendant UHY, LLP

*Daubert*                                  -1-

("UHY") has filed a motion seeking to exclude the same parts of the Wade Reports. UHY also seeks to exclude certain parts of the reports of Andrew Mintzer (the "Mintzer Reports"), Plaintiff's expert witness on auditing issues, because Mr. Mintzer relies on the challenged assumptions and opinions expressed by Austin Wade (collectively, the "*Daubert* Motions"). Docket Nos. 184-187 and 190-192. Plaintiff has filed Opposition. Docket Nos. 212-213. Defendants have filed Replies. Docket Nos. 215 and 219. The matter has been fully briefed.

The court assumes the parties' familiarity with the underlying facts, the procedural history, and the issues under consideration.

**I. Background**

    **A. Factual Background**

In 2014, chapter 11 debtor Pacific Steel Casting Company, now known as Second Street, entered into a Bankruptcy Code §363 sale of substantially all of its steel foundry assets to Speyside Fund or its assignee, referred to here as Pacific Steel or the Debtor. The sale was documented with an asset purchase agreement (the "APA") and approved by the court. In connection with the sale, Pacific Steel assumed Second Street's collective bargaining agreement with its union and agreed to contribute to the associated multiemployer pension plan (the "MEP").

Under controlling ERISA law, an asset sale of this type would have been deemed a withdrawal by Second Street from the MEP creating an immediate obligation for it to pay the approximately $27 million withdrawal liability owed at that time unless certain

*Daubert*     -2-

conditions were met.

In order to forestall that immediate obligation, the sale was structured to comply with the provisions of ERISA that permit postponing or entirely avoiding this withdrawal liability under certain conditions (the "Contingent Withdrawal Liability").

More than a year following the closing of the sale, Second Street confirmed its chapter 11 plan. The plan was also structured to conform to the ERISA requirements regarding avoiding the Contingent Withdrawal Liability.

In order to avoid Second Street's immediate obligation to pay the Contingent Withdrawal Liability, Pacific Steel had to remain in compliance with certain provisions of ERISA for a period of five years following the sale. One of these provisions was to post a bond payable to the union's pension trust if Pacific Steel defaulted in its performance of these requirements. In December 2017, the bond provided for the pension trust was canceled by its issuer. This made Second Street's withdrawal liability no longer contingent. Pacific Steel continued to contribute to the MEP for another year and then ceased operating and filed this chapter 7 case.

**B. Procedural Background**

**1. First Amended Complaint**

In the first amended complaint (the "FAC"), Plaintiff alleges that the Speyside Defendants damaged Pacific Steel and its creditors by their improper accounting practices, by making impermissible distributions to its owners, and by breaching their fiduciary duties. Docket No. 70, FAC. Plaintiff also alleges that

*Daubert*                                   -3-

UHY knowingly aided and abetted the Speyside Defendants' breach of their fiduciary duties when it failed to properly audit Pacific Steel's financial statements.

When the sale closed, Pacific Steel accounted for its purchase of the business from Second Street as a "bargain purchase gain." Plaintiff alleges that this accounting for the transaction was improper and Pacific Steel's financial statements were thereafter misleading. Plaintiff alleges that there was no bargain purchase gain and Pacific Steel failed to properly account for the Contingent Withdrawal Liability. Docket No. 70, FAC, ¶¶ 11, 61-62. This theoretical construct fuels the allegations that Pacific Steel was insolvent at inception and continuously thereafter, and management's decisions ensured the company would fail before the five-year period elapsed. She alleges damages of some $40 million.

### 2. Pending Motions for Partial Summary Judgment

Plaintiff, joined by Second Street, has filed a motion for summary judgment in which she contends, *inter alia*, that (1) the doctrines of judicial and equitable estoppel preclude the Speyside Defendants from taking the position that they are not responsible for paying the Contingent Withdrawal Liability; (2) applying rules of contract interpretation to the APA shows that the Speyside Defendants assumed the Contingent Withdrawal Liability (§2.03(b)), or agreed to indemnify Second Street for it (§7.10(a)); (3) if the APA is deemed ambiguous and the court considers extrinsic evidence, it will show that Plaintiff's interpretation of the APA is correct; (4) the "equities" require

*Daubert* -4-

Plaintiff to prevail. Docket No. 172.

The Speyside Defendants have moved for partial summary judgment as to the fact of their liability for the Contingent Withdrawal Liability. Docket Nos. 176, 180-183. Plaintiff, joined by Second Street, has filed opposition. Docket Nos. 195-199. The Speyside Defendants have also moved for partial summary judgment as to the amount of that liability if the court finds it exists. Docket No. 178. These motions have been fully briefed.

UHY has filed a motion for summary judgment in which it contends that it may not be held liable for knowingly aiding and abetting the breach of fiduciary duty allegedly committed by the Speyside Defendants. Docket Nos. 148-150. The matter is under submission. Docket Nos. 158-159.

### 3. Plaintiff's Experts

Plaintiff has retained two expert witnesses. Austin Wade is identified as her witness for (1) analysis of New Pacific Steel's "accounting books and records;" (2) opining on the solvency of Pacific Steel from 2014 to the 2019 petition date; and (3) the "harm caused to the Debtor's business as a result of management decisions." Docket No. 187, Toral Dec., Ex. 1, Wade Report at 1; Ex. 2, Wade Rebuttal Report. Andrew Mintzer is identified as Plaintiff's expert witness regarding whether Pacific Steel's audited financial statements were prepared in accordance with generally accepted accounting principles ("GAAP") and whether UHY performed its audits in accordance with generally accepted auditing standards ("GAAS"). Docket No. 186, Toral Dec., Ex. 5, Mintzer Report at 1.

## II. Legal Standard

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Plaintiff has the burden of establishing that her experts' testimony is relevant, reliable, and admissible. *Lust ex rel. Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

The court acts as a gatekeeper in this context and must determine that the expert used proper methods, and adequately explained them. *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002) (court considers whether methodology underlying expert's testimony is valid and can be applied to facts in issue; bare qualification alone does not establish admissibility); *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 984 F.Supp.2d 1021, 1026 (C.D. Cal. 2013) (court must assure expert used sufficient data, employed reliable methods, applied them to data in reliable way). The court exercises its discretion here with a degree of flexibility in applying Rule 702 and must consider whether vigorous cross-examination is a preferable way to deal

*Daubert* -6-

with "shaky but admissible" expert testimony. *Daubert*, 509 U.S. at 598. However, if there is too great an "analytical gap" between the expert's data and the offered opinion, the court may exclude the opinion. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

**III. Discussion**

The Speyside Defendants have moved to exclude (1) certain of Mr. Wade's opinions because he and Plaintiff's counsel acknowledged at his deposition that they were beyond his expertise; (2) Mr. Wade's "probability of failure" determinations because they are not based on any discernible methodology and thus are not reliable; (3) Mr. Wade's factual narrative because this sort of "story" - not based on first hand knowledge of any events but on his weighing of the evidence - is not the province of an expert, and he may not opine on the motives or subjective belief of the Defendants. The Speyside Defendants argue that these opinions in the Wade Reports must be excluded as violative of Rule 702 and the *Daubert* standard. UHY argues that the court should exclude these aspects of the Wade Reports and should also exclude the opinions in the Mintzer Reports that rely on Mr. Wade's probability of failure analysis. Docket No. 191, Quadrozzi Dec., Ex. D, Mintzer Report, *inter alia*, ¶¶ 86-93, 113.

In response, Plaintiff contends that both Wade Reports comply with the *Daubert* standard in every respect and Mr. Wade may be challenged on cross-examination to deal with any weakness in his work. Plaintiff also argues that UHY has waived any *Daubert* objection because it failed to do so before its motion

*Daubert* -7-

for summary judgment was fully briefed. (This argument lacks merit and the court dismisses it without further discussion.)

The court will address each challenged category of the Wade Reports in turn.

**A. Opinions Disclaimed at Deposition**

An expert may not testify on topics that the expert and his counsel concede are beyond his expertise. *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, 691 F.Supp.2d 448, 461 n.65 (S.D.N.Y. 2010) (expert may not testify on matters on which expert is not offered); *Madison v. Courtney*, No. 18-cv-00671, 2019 WL 8263428, at *5 (N.D. Tex., Jan. 26, 2011) (expert may not testify on matters disclaimed by counsel). This sensible - and unassailable - rule applies here and limits both the Wade Reports.

The Wade Report starts with the premise that Pacific Steel "assumed via indemnification" the Contingent Withdrawal Liability. The Report says, in the APA "Pacific Steel agreed to indemnify and hold [Second Street] harmless (assume) from any liability of [Second Street] caused by [Pacific Steel's] withdrawal from the pension plans." Docket No. 186, Toral Dec., Ex. 1, Wade Report at 10. This statement is obviously an interpretation of the APA. At his deposition, Mr. Wade and Plaintiff's counsel agreed he was not offered to interpret the APA, acknowledging that it was inappropriate to do so. Docket No. 212, Bagdanov Dec., Ex. 1, Wade Deposition Transcript 17:24-18:1 (hereafter, Wade Tr.).

At his deposition Mr. Wade also backtracked on whether this

*Daubert* -8-

was, in fact, an opinion. He stated it was merely his "understanding" that Pacific Steel "assumed [Second Street's] contingent withdrawal liability via indemnification." Wade Tr. 18:15-19:2. He also said "[i]t was his "general understanding" that "they are on the hook for it." Wade Tr. 20:10-13. Plaintiff's attorney confirmed this as well, interjecting: "his assumptions are that there is an indemnification ... he is not going to opine on the interpretation of the APA." Wade Tr. 18:9-16.

Despite this disclaimer, the Wade Report starts with the opinion that Pacific Steel *assumed* the Contingent Withdrawal Liability by agreeing to *indemnify* Second Street for it under the APA. Wade Report at 10-13. The Report then proceeds to criticize Pacific Steel's financial statements because they do not conform to his premise: "I could find no reference to this indemnification obligation, either by means of disclosure or valuation, nor could I find any justification for the Debtor's failure to identify and quantify this obligation." Wade Report at 11. He states the "contingent indemnification obligation" should have been booked "consistent with GAAP requirements." *Id.* At his deposition, however, he admitted he was not an expert on the relevant GAAP requirements and stated he deferred to Plaintiff's other expert on this issue. Wade Tr. 246:7-23 ("I probably wouldn't represent myself as an expert in GAAP standards"); 208:3-24 ("I never argued in my report that the Debtor needed to book that liability...that's a GAAP issue. That's in Andy's report.").

*Daubert* -9-

The Wade Report also offers an opinion on the operation of ERISA §4204: "Pacific Steel's indemnification obligation and pre-acquisition contingent withdrawal liabilities were liabilities assumed by [Pacific Steel] in the asset sale; when the bond was canceled the contingent withdrawal liability became actual." Wade Report at 40-41. The Wade Report also criticizes the Speyside Defendants' expert: "Defendants' expert does not adequately examine the probability that the withdrawal liability assumed via indemnification would be triggered." Docket No. 186, Toral Dec., Ex. 2, Wade Rebuttal Report at 2.

At his deposition, Mr. Wade and Plaintiff's counsel again backtracked and admitted that Mr. Wade was not offered as an ERISA expert and had no relevant expertise in this area. However, Mr. Wade claimed it was his "understanding and my opinion that when the pension bond was terminated that the contingent liability is going to become real." Wade Tr. 69:16-21. This is not sufficient - his understanding of this legal issue is not the proper subject of an expert's opinion and he has admitted he has no expertise to support this opinion.

Mr. Wade also criticizes the fact that Pacific Steel accounted for its purchase from Second Street as a "bargain purchase gain" and accuses Pacific Steel of, *inter alia*, using this accounting to conceal its "balance sheet insolvency." Wade Report at 1, 10-13. "Had the debtor properly accounted for and disclosed the contingent indemnification obligation ... then it would not have been possible to book the ... bargain purchase gain." Wade Report at 13. This opinion is necessarily premised on

*Daubert* -10-

the application of GAAP standards. Because Mr. Wade disclaimed expertise on application of GAAP standards this opinion does not comport with Rule 702 or *Daubert*. Nonetheless, at his deposition, he persisted: "in my opinion, if it was disclosed properly, it wouldn't have been possible to book the bargain purchase gain." Wade Tr. 208:17-24. This opinion fails to pass the test required for its admissibility. Because he disclaimed expertise on GAAP standards, he may not opine on whether it was "disclosed properly."

In defense of Mr. Wade's opinion regarding the propriety of booking this bargain purchase gain, despite his stated lack of expertise regarding GAAP, Plaintiff argues that "his conclusion on that issue is not being offered as an opinion *per se* but as part of his critical analysis of key Debtor documents he considered in performing his insolvency analysis." Docket No. 212, Oppo. at 25. This is singularly unhelpful, it clarifies nothing, and it fails to rebut Defendants' arguments.

The Wade Reports also offer the opinion that UHY's audits were inadequate and the disclosures regarding the Contingent Withdrawal Liability in Pacific Steel financial statements were inadequate or materially misleading as a result of UHY's alleged failings as an auditor. Wade Report at 33-37. Mr. Wade claims UHY's disclosures "related solely to going forward liabilities ... but did not include any disclosure or valuation of [Pacific Steel's] agreement to indemnify [Second Street] for [Second Street's] pre-acquisition withdrawal liabilities or [Pacific Steel's] obligation to post a bond." Wade Report at 12-13. He

*Daubert*                           -11-

also opines that "the UHY audit work papers indicate that the UHY audit was grossly inadequate." Wade Report at 45-46.

At his deposition, Mr. Wade admitted he was not an expert on auditing issues and Plaintiff's counsel confirmed that Plaintiff's other expert, Andrew Mintzer, was designated for auditing issues. Wade Tr. 234:11-19 (typically wouldn't opine on audit standards); 235:11-13 (will stipulate Wade not an audit expert); 238:15-16 (we will not proffer him as an UHY audit expert).

In opposition to this motion, Plaintiff again tries to disavow her disavowal. She now contends that Mr. Wade's opinions on "potential defects" in the UHY audits are admissible because these are not opinions on "complex audit issues" and Defendants "overlook the nuance involved in Mr. Wade's analysis." Oppo. at 27. Mr. Wade "observed" that the auditors "did not adequately test inventory or adequately disclose a large contingent liability," and because he is a certified fraud examiner, it is "perfectly reasonable" for him to opine on how Pacific Steel's financial statements "were manipulated despite being audited." Oppo. at 27. Plaintiff digs herself deeper into this unfortunate hole by claiming that Mr. Wade's opinions on UHY's audit work are merely offered to support his insolvency analysis and are not offered as an "ultimate opinion on the robustness of an audit" and he is not offering a "formal opinion" on UHY. *Id.*

Mr. Wade stated he was not an expert on auditing standards. Plaintiff's counsel stated Mr. Wade would not testify regarding UHY's auditing. It is not "perfectly reasonable" to backtrack in

*Daubert* -12-

this fashion; it is not "perfectly reasonable" for Mr. Wade to opine on whether the audits involved "adequate testing" or "adequate disclosure" which then permitted "manipulated" financial statements.

The court agrees with Defendants that Mr. Wade may not offer opinions on UHY's audits - whether they are described as ultimate or formal - he has disclaimed his expertise on this topic and may not now reverse that. The Wade Reports' opinions on auditing issues are inadmissible.

Plaintiff also claims Mr. Wade may offer his opinions as an "experiential expert" citing *United States v. Wilson*, 484 F.3d 267 (4th Cir. 2007). This simply does not work here in light of the fact that Andrew Mintzer is Plaintiff's expert on auditing issues and Mr. Wade's experience as an accountant - in and of itself - does not make his statements relevant or reliable.

The court finds inadmissible the opinions Mr. Wade and Plaintiff's counsel stated were beyond his expertise. These include (1) the application of GAAP standards, including the propriety of accounting for the purchase as a bargain purchase gain, and the GAAP rules for accounting for contingent liabilities; (2) applicable auditing standards, their performance or the failure of performance; (3) the interpretation or meaning of any provisions of the APA; and (4) the operation of ERISA as it pertains to the APA.

**B. Probability Determinations**

The Speyside Defendants describe a key issue in this case as follows: "Assuming Pacific Steel bore the Second Street seller

*Daubert* -13-

withdrawal liability, the particular likelihood of it becoming non-contingent at key measurement dates in 2014, 2015, and 2016." Docket No. 184, Motion at 14.

This question is relevant for two issues: the accuracy of Pacific Steel's financial statements and its solvency at different measurement dates. Painting with an extremely broad brush, under GAAP, contingent liabilities must be *disclosed* on financial statements if they are reasonably possible and their fair value must be *booked* if they are probable. Plaintiff's other expert Andrew Mintzer and Defendants' expert Jimmy Pappas agreed that in this context, probable means 70%. *See* Mintzer Report at 19 n.94.

For accounting purposes, the fair value of a contingent liability is determined by reducing its gross amount according to its probability. *Matter of Xonics Photochemical, Inc.,* 841 F.2d 198, 200 (7th Cir. 1988). For solvency analysis purposes, the fair value of a contingent liability is determined in the same way. *In re Imagine Fulfillment Servs., LLC*, No. Adv. 12-1514, 2014 WL 3867531, *5 (9th Cir. BAP Aug. 6, 2014) (amount of contingent claim is determined by probability contingency will occur; final state court judgment was noncontingent debt for purposes of assessing solvency).

In his Reports, Mr. Wade opines on this probability question in his analysis of Pacific Steel's solvency. He starts by assuming that Pacific Steel "took on" a $26.7 million contingent withdrawal liability through the APA and the contingency period was five years. Wade Report 40-42. (The Wade Reports describe

*Daubert* -14-

this as a 70-month period. ERISA §4204(a)(1)(B) and (C) refer to "five plan years." The court understands this contingency period to have run to June 30, 2022.) "For solvency analysis balance sheet test purposes, I added a contingent liability to the balance sheet with fair value calculated at the estimated contingent liability gross amount multiplied by the estimated chance of business failure within the first 70 months." Wade Report at 41. He then posits a probability range for the likelihood of business failure - from 50% at inception in 2014 to 100% by the end of 2017 - to calculate the fair value of the alleged contingent indemnification obligation. Wade Report at 41 (50% in 8/14, 60% by 12/14, 70% by 4/15, 80% by 12/15, 90% by 2016, 100% by end of 2017). He claims this probability range of 50% to 100% is appropriate because "approximately 50% of businesses fail with the first five years" and "most importantly, the business did in fact fail within 70 months." Wade Report at 41, 42 n.2 (listing 12 factors he used to calculate "the fair value of this indemnification obligation").

The Speyside Defendants and UHY contend this opinion is inadmissible under Rule 702 because Mr. Wade applied no discernable methodology for his probability analysis. *NetFuel, Inc. v. Cisco Sys., Inc.*, No. 18-cv-02352, 2020 WL 1274985, at *7 (N.D. Cal. Mar. 17, 2020 (noting experts must follow some discernable methodology and courts' condemnation of percentages plucked out of thin air); *Rondor Music Int'l Inc. v. TVT Recs. LLC*, No. CV 05-2902, 2006 WL 5105272, at *3-5 (C.D. Cal. Aug. 21, 2006) (excluding opinion where methodology difficult to

*Daubert* -15-

ascertain); *Castagna v. Newmar Corp.*, No. 15-cv-249, 2020 WL 525936, at *3-4 (N.D.Ind. Feb.3, 2020 (report excluded where opinion formed in black box without explanation of how factors were evaluated).

In fact, Mr. Wade admitted his probability determinations were arrived at "shooting from the cuff" and were based on common knowledge and his years of experience as a forensic accountant rather than any testable criteria. Wade Tr. 36:5-25 (common knowledge, general understanding new businesses fail); 47:20-48:15 (shooting from the cuff). The Report identifies a number of factors that contributed to this increasing likelihood-of-failure analysis but Mr. Wade could not identify how each factor contributed to each of the incremental increases he applied. Wade Tr. 53:10-16 (confirms used no testable criteria). Mr. Wade also admitted he did not do - and could not do - the industry-recognized tests employed by the Speyside Defendants' expert. *See* Report of the Speyside Defendants' expert Jimmy Pappas employing industry-standard methodologies known as synthetic credit score test and Altman Z Score analysis. Docket No. 187, Pappas Report.

UHY also contends that the opinions in the Mintzer Reports that adopt Wade's unreliable opinions regarding probability of failure must also be excluded. *Pavo Sols., LLC v. Kingston Tech. Co., Inc.*, 2019 WL 8138163, at *3 (C.D. Cal. Nov. 20, 2019). At his deposition, Mr. Mintzer admitted he relied on these opinions - business failure 50% likely at inception in 2014 and increasing incrementally until it reached 100% likely in 2017 and did then fail - with no testing and such testing would have been beyond

*Daubert*                                                    -16-

his expertise. Docket No. 191, Quadrozzi Dec., Ex. E, Mintzer Deposition Tr. 51:3-5, 63-65, 149.

In response to the Defendants' arguments, Plaintiff insists Mr. Wade may opine as he has done because he identifies all the facts he considered and he uses Pacific Steel's business records to "tell a story of what actually happened." Oppo. at 13. Plaintiff claims that the Speyside Defendants unfairly forced Mr. Wade to try to assign percentages to each of the factors he identified in his analysis but he explained this was impossible to do. Oppo. at 16.

Plaintiff's response is not convincing. Mr. Wade's probability-of-failure determinations may have been based on his review of thousands of documents but they were not based on any reliable principles or discernable methods. They do appear to emerge from a black box which means they are too unreliable and subjective to be of any assistance to the court. Accordingly, they must be excluded. The Mintzer Report opinions that adopt and rely on the Wade Report's probability of failure opinions are also excluded.

**C. Factual Narrative and Interpretations**

The Speyside Defendants and UHY also object to the parts of the Wade Reports that they contend are factual characterizations presented in the guise of independent expertise. *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F.Supp.2d 461, 469 (S.D.N.Y. 2005) (excluding factual narrative covering lay matters); *In re Lyondell Chem. Co.*, 558 B.R. 661, 668-69 (Bankr. S.D.N.Y. 2016) (excluding chronology and editorialized excerpts from emails).

*Daubert*                                -17-

They also object to the Wade Reports' use of a factual narrative to opine on the subjective belief of the Defendants or their motivations or intent. *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No.17-cv-205, 2020 WL 2553181, at *6 (S.D. Cal. May 20, 2020), (expert testimony regarding intent impermissible), *aff'd,* 9 F.4th 1102 (9th Cir. 2021); *Lippe v. Bairnco. Corp.*, 288 B.R. 678, 687 (Bankr. S.D.N.Y. 2003) (expert may not offer personal evaluation of testimony or credibility of others), *aff'd*, 99 F.App'x 274 (2d Cir. 2004).

The Speyside Defendants cite several places in the Wade Reports that they claim offend these principles. Examples include the factual characterizations in the "Timeline of Significant Events" (Wade Report at 6-7, Rebuttal Report at 9); his statement that "overstatement [of inventory value] was intentional" and "designed to mislead" (Wade Report at 22); his statement that the insiders damaged the Debtor because the Debtor materially misrepresented its financials (*Id.* 44); his analysis of deposition testimony to opine on the reasons for Debtor's ownership structure (*Id.* 14). The Speyside Defendants argue that this is not the province of an expert and Mr. Wade may not opine on or offer his interpretation of the motivations or state of mind of the Speyside Defendants.

In opposition, Plaintiff argues Mr. Wade is just "telling a story of what actually happened" based on his review of Debtor's books and records and publicly available sources. Oppo. at 17. "What actually happened" will be determined at trial. This sort of recitation is not appropriate for expert testimony. The Wade

*Daubert*                                   -18-

Reports will be limited to exclude this sort of impermissible content which is not limited to the illustrative examples cited.

## IV. Conclusion

The court has carefully considered whether any arguable flaws in the Wade Reports should be dealt with by cross-examination rather than exclusion but finds this is not appropriate on this record. Accordingly, the parts of both Wade Reports opining on GAAP standards, auditing standards under GAAS, the interpretation of the APA, including indemnification issues and contingent withdrawal liability issues, and the operation of ERISA are excluded. The Wade Reports' analysis and opinions regarding the probability of failure is also unreliable and therefore excluded. To the extent the Mintzer Reports are based on these excluded aspects of the Wade Reports, they are also excluded. Finally, the inappropriate factual narratives and opinions regarding Defendants' motivations or intentions in the Wade Reports are also excluded.

The court requests that Defendants submit orders granting their respective *Daubert* Motions.

\* \* \* \* \* \*   End of Memorandum Decision   \* \* \* \* \* \*

Court Service List

None required.

*Daubert* −20−